JOSHUA D. N. HESS (SBN 244115)
joshua.hess@dechert.com
BRIAN RAPHEL (SBN 293788)
brian.raphel@dechert.com
DECHERT LLP
One Bush Street, Suite 1600
San Francisco, CA 94111-3513
Telephone: (415) 262-4500
Facsimile: (415) 262-4555

DAVID A. KOTLER*
david.kotler@dechert.com
SAMANTHA ROSA*
samantha.rosa@dechert.com
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*admitted *pro hac vice*

Attorneys for Defendant Charles Schwab & Co., Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Philip Pinkert, individually and on behalf of a Class of similarly situated individuals, and on behalf of the general public,,<br><br>Plaintiff,<br><br>v.<br><br>Schwab Charitable Fund, Charles Schwab & Co., Schwab Charitable Board of Directors, and Schwab Charitable Investment Oversight Committee,<br><br>Defendants. | Case No. 20-7657<br><br>**DEFENDANT CHARLES SCHWAB & CO. INC.'S NOTICE OF MOTION, MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Complaint Filed:  October 30, 2020<br><br>Hearing Date: March 25, 2021<br>Time:  9:30 a.m.<br>Courtroom: B<br>Judge:  Hon. Laurel Beeler |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO DISMISS ................................................. 1

STATEMENT OF RELIEF REQUESTED ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.  INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF ISSUES TO BE DECIDED .................................................. 3

III.  FACTUAL BACKGROUND .............................................................................. 4

    A.  The Fund Is A Nonprofit Corporation That Pays CS&Co. For Financial Services. ........................................................................................................ 4

    B.  Pinkert Donated To Schwab Charitable And Lost Title To The Donated Funds At That Time. ................................................................................... 5

    C.  Pinkert Seeks Disgorgement Of Fees Received By CS&Co. Years After His Donation To Schwab Charitable. ......................................................... 5

    D.  The Complaint Contains No Allegation That Pinkert Made A Demand On The Fund's Board To Assert Claims Against CS&Co. Or That Such A Demand Would Be Futile. ........................................................................... 7

IV.  ARGUMENT ....................................................................................................... 7

    A.  Pinkert's Claims Against CS&Co. Fail Because He Fails To Plead Any Underlying Claim Against The Charitable Defendants. ............................... 7

    B.  Pinkert Cannot Assert Any Claims Against CS&Co. Because Any Such Claims Belong To The Fund And Pinkert Lacks Standing To Assert Those Claims On Its Behalf. ................................................................................. 8

        1.  Pinkert's Claims Belong To The Fund And He Cannot Usurp Them. ............................................................................................. 8

        2.  Pinkert Does Not Have Standing To Assert A Derivative Claim On Behalf Of The Fund Against CS&Co. ................................... 11

        3.  Even If Donors Could Seek To Assert Derivative Claims On Behalf Of The Fund, Pinkert Still Fails To Allege Any Of The Statutory Prerequisites For Asserting A Derivative Claim. ................... 13

    C.  Even If Pinkert Could Assert A Claim On The Fund's Behalf, The Third Party Contribution Claim Is Not Ripe. ...................................................... 14

    D.  Pinkert Fails To State A UCL Claim Against CS&Co. ............................. 15

        1.  Pinkert Fails To Allege Any Predicate Claim Against CS&Co. ...... 15

        2.  Pinkert Fails To Allege Any Personal Loss Of Money Or Property To Support His UCL Claim. .......................................................... 16

        3.  Pinkert's UCL Claim Is Time-Barred. .......................................... 18

V.  CONCLUSION .................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Ctr. For Educ., Inc. v. Cavnar,*
  80 Cal. App. 3d 476 (1978) ................................................................................ 12

*Aryeh v. Canon Bus. Sols., Inc.,*
  55 Cal. 4th 1185 (2013) .................................................................................... 18

*Avikian v. WTC Fin. Corp.,*
  98 Cal. App. 4th 1108 (2002) ............................................................................ 11

*Bader v. Anderson,*
  179 Cal. App. 4th 775 (2009) ................................................................. 1, 10, 11

*Beaver v. Tarsadia Hotels,*
  29 F. Supp. 3d 1294 (S.D. Cal. 2014) ................................................................ 18

*Bower v. AT&T Mobility, LLC,*
  196 Cal. App. 4th 1545 (2011) .......................................................................... 17

*In re Brocade Commc'ns. Sys., Inc. Derivative Litig.,*
  615 F. Supp. 2d 1018 (N.D. Cal. 2009) ............................................................. 14

*Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
  20 Cal. 4th 163 (1999) ...................................................................................... 15

*Coca-Cola Bottling Co. v. Lucky Stores, Inc.,*
  11 Cal. App. 4th 1372 (1992) ..................................................................... 10, 15

*Connelly v. Bank of Am. Nat'l Tr. & Sav. Ass'n,*
  138 Cal. App. 2d 303 (1956) ............................................................................. 17

*In re Facebook, Inc., Consumer Priv. User Profile Litig.,*
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................... 16

*Fairbairn v. Fidelity Investments Charitable Gift Fund,*
  2018 WL 6199684 (N.D. Cal. Nov. 28, 2018) ............................................. 12, 13

*Glen K. Jackson, Inc. v. Roe,*
  273 F.3d 1192 (9th Cir. 2001) ........................................................................... 15

*Grosset v. Wenaas,*
  42 Cal. 4th 1100 (2008) ................................................................................. 9, 10

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ............................................................................... 8

*Henry v. Tyler*,
   2020 WL 353483 (N.D. Cal. Jan. 21, 2020) ...................................................... 14

*Horn v. Azusa Pac. Univ.*,
   2019 WL 9044606 (C.D. Cal. Jan. 14, 2019) .................................................... 12

*Indiana Elec. Workers Pension Tr. Fund, IBEW v. Dunn*,
   352 F. App'x 157 (9th Cir. 2009) ...................................................................... 14

*Kong v. Trader Joe's Co.*,
   2020 WL 5814102 (C.D. Cal. Sept. 24, 2020) ................................................... 8

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ..................................................................................... 17

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ................................................................................. 16, 17

*Mayron v. Google LLC*,
   54 Cal. App. 5th 566 (2020) .............................................................................. 16

*Nat'l Union Fire Ins. Co. of Pittsburgh PA v. Res. Dev. Servs., Inc.*,
   2011 WL 13153239 (N.D. Cal. Dec. 7, 2011) .................................................. 14

*Pareto v. F.D.I.C.*,
   139 F.3d 696 (9th Cir. 1998) ........................................................................ 10, 11

*In re Paypal Holdings, Inc. S'holder Derivative Litig.*,
   2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ..................................................... 14

*Pirozzi v. Apple, Inc.*,
   966 F. Supp. 2d 909 (N.D. Cal. 2013) .............................................................. 15

*Potter v. Hughes*,
   546 F.3d 1051 (9th Cir. 2008) ........................................................................... 14

*River Garden Farms, Inc. v. Superior Court*,
   26 Cal. App.3d 986 (1972) ................................................................................ 10

*RK Ventures, Inc. v. Seattle*,
   307 F. 3d 1045 (9th Cir. 2002) .......................................................................... 11

*Schuster v. Gardner*,
   127 Cal. App. 4th 305 (2005) ............................................................................ 11

*St. Paul Mercury Ins. Co. v. CorVel Corp.*,
   2018 WL 8131218 (C.D. Cal. Sept. 28, 2018) ................................................. 14

*Towers v. Iger*,
   912 F.3d 523 (9th Cir. 2018) ................................................................9

*W. Scott Fetzer Co. v. Braden Partners, LP*,
   2006 WL 2263827 (N.D. Cal. Aug. 7, 2016) ........................................14

*White v. Chevron Corp.*,
   2017 WL 2352137 (N.D. Cal. May 31, 2017) .......................................8

**Statutes**

Cal. Bus. & Prof. Code § 17204 ................................................................16

Cal. Code Civ. Proc. § 875 .......................................................... 2, 10, 14

Cal. Corp. Code § 800(b) ...........................................................................9

Cal. Corp. Code §5056 ..................................................................... 11, 12

Cal. Corp. Code §5710 .........................................................2, 9, 11, 13

**Other Authorities**

Fed. R Civ. Proc. 23.1 ...............................................................................13

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2      PLEASE TAKE NOTICE that on March 25, 2021, at 9:30 a.m. in Courtroom B of the

3  United States District Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, before

4  the Honorable Laurel Beeler, Defendant Charles Schwab & Co., Inc. ("CS&Co.")[1] will and hereby

5  does respectfully move to dismiss the complaint of Plaintiff Philip Pinkert ("Pinkert") pursuant to

6  Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based on this

7  Notice of Motion and Motion and the accompanying Memorandum of Points and Authorities, and

8  such other authorities and arguments as may be submitted in any reply at or before the hearing.

9

## STATEMENT OF RELIEF REQUESTED

10      Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), CS&Co. hereby moves

11 to dismiss Pinkert's complaint in its entirety.

12

## MEMORANDUM OF POINTS AND AUTHORITIES

13 **I.     INTRODUCTION**

14      Pinkert has asserted a hypothetical "third party contribution" claim against CS&Co. that

15 does not and *cannot* belong to him under California law. Specifically, Pinkert asks this Court to

16 compel CS&Co. to disgorge certain fees that it indirectly received from Defendant Schwab

17 Charitable Fund (the "Fund"), a California nonprofit public benefit corporation. Those fees would

18 be returned not to Pinkert or the purported class of donors he seeks to represent, but to the Fund

19 itself. Such a claim, even if it had any merit whatsoever, would be a claim that *belongs to the*

20 *Fund*—not to Pinkert—and thus it is the Fund's right as a matter of law to decide whether pursuing

21 this claim is in its best interests.

22      Under long-settled California law, a claim is derivative in nature and belongs to the

23 corporation when the claim arises out of an alleged "injury to the corporation" or it "seeks to recover

24 assets for the corporation." *Bader v. Anderson*, 179 Cal. App. 4th 775, 793 (2009). That is precisely

25 the case here. In fact, by pursuing a contribution claim, Pinkert is asserting a claim that can be

26

27 [1] The Court entered an order stipulated to by the parties to substitute Charles Schwab & Co., Inc. for the Charles Schwab Corporation. Stip. & Order to Amend Caption & Subst. Parties, ECF No.

28 44. References to Charles Schwab Corporation in the Complaint are now presumed to be references to Charles Schwab & Co., Inc.

asserted *only* by *a defendant* in this case because a contribution claim under California law is a claim that only can be asserted by one joint tortfeasor against another in order to allocate a joint liability. *See* Cal. Code Civ. Proc. § 875.

The California Corporations Code makes clear that only the corporation or a "member" of the corporation can initiate litigation on behalf of the corporation, and even then only after meeting statutory prerequisites. Cal. Corp. Code § 5710(b)(1). Pinkert is not a "member" of the Fund and he does not allege otherwise. But even if *donors* could conceivably assert derivative claims on behalf of a nonprofit public benefit corporation against a third party, despite the lack of statutory authorization to do so, Pinkert's claim still fails because he has not alleged that he followed any of the procedural requirements for asserting a derivative claim. As a matter of law, to bring a derivative claim, a person must allege that he made a demand on the corporation's board that was improperly denied or allege with particularity why such demand would be futile. Pinkert has done neither. Pinkert simply does not have standing to usurp the Fund's right to determine whether litigation is in its best interests; his claims against CS&Co. should be dismissed.

Separate from these threshold standing issues, there are numerous additional bases to dismiss Pinkert's claims against CS&Co.:

*First*, the "third-party contribution" claim by Pinkert against CS&Co. is not a proper cause of action. A "contribution" claim seeks to allocate a common liability among joint tortfeasors and such a claim can be asserted by a joint tortfeasor only *after* a judgment is issued against one or more defendants. To be sure, Pinkert does not allege that a judgment has been entered against him for which CS&Co. would bear joint liability. As such, the claim only makes sense if it purportedly is brought on the Fund's behalf. Even if Pinkert were permitted to usurp such a claim from the Fund, which he cannot, his contribution claim is not ripe because no liability has been established against any Defendant.

*Second*, Pinkert cannot save his deficient contribution claim by recasting it as a claim under California's Unfair Competition Law ("UCL"), citing the alleged "contribution" as the predicate violation. The UCL claim must fail not only for the same reasons that the underlying contribution

claim fails, but also because Pinkert fails to allege any loss of money or property, which is an essential element under the UCL.  Pinkert fails to allege any damages cognizable under the UCL and his request for disgorgement—on the Fund's behalf—is a remedy that is prohibited under the UCL.

*Third*, as the claims against CS&Co. are all dependent on the claims brought against the Charitable Defendants,[2] they also fail because Pinkert cannot assert any claim against the Charitable Defendants as articulated in their separate motion to dismiss.

For good reason, the Fund, alone, must decide if and when it chooses to litigate any claim it might have against any third party.  Pinkert has no basis to usurp that right, thus embroiling a nonprofit public benefit corporation in unnecessary litigation that may be in *his* interest, but is not necessarily in the best interests of the Fund.  Otherwise, any donor to a charity would be granted free license to bring vexatious and costly litigation of its own choosing "on the charity's behalf," but with no consideration for its mission, stakeholders, finances, operations, and reputation. Charities thus would be afforded far fewer protections in this regard than those given to for-profit companies.  This cannot be—and, indeed, is not—the law.

Pinkert's claims against CS&Co. should be dismissed with prejudice.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.      When a donor fails to allege any personal economic harm and only seeks disgorgement of fees paid by the Fund, a nonprofit public benefit corporation, does the claim arise out of an alleged injury to the Fund, making the claims derivative in nature?

2.      If the claims are derivative in nature, does an individual donor, who is not a member, shareholder, director, or officer of the Fund, have standing to assert claims on the Fund's behalf against CS&Co. even though the California Corporations Code excludes donors from the list of persons who may assert such a claim?

3.      Given that a "third party contribution" claim is a procedural mechanism for one defendant to seek contribution from another defendant related to a judgment for which they are

---

[2] The "Charitable Defendants" are Schwab Charitable Fund, the Schwab Charitable Board of Directors, and the Schwab Charitable Investment Oversight Committee.

jointly liable, is such a claim ripe before any judgment has been entered?

4.      If the "third party contribution claim" is dismissed, can Pinkert nevertheless maintain a UCL claim against CS&Co. that is predicated on the "third party contribution" claim?

5.      Has Pinkert adequately pleaded a UCL claim against CS&Co. when Pinkert fails to allege any personal loss of money or property caused by CS&Co.?

6.      Is Pinkert's UCL claim time-barred under the four-year statute of limitations?

## III.      FACTUAL BACKGROUND

### A.      The Fund Is A Nonprofit Corporation That Pays CS&Co. For Financial Services.

The Fund is nonprofit public benefit corporation established under, and governed by, Section 5110 *et seq.* of the California Corporations Code. It is the sponsoring entity for a donor-advised fund ("DAF") with accounts that range from $5,000 to more than $500 million, and the Fund is currently one of the ten largest charities in the United States. Class Action Complaint ("Compl.") ¶ 15, ECF No. 1.

Unlike the Fund, CS&Co. is a for-profit commercial enterprise that provides a full range of financial and banking services to many funds and investors. Compl. ¶¶ 16-17. One of the services that CS&Co. provides to its clients is access to its OneSource platform. OneSource is a mutual fund "supermarket" that provides CS&Co.'s clients with the ability to invest in over 4,200 high-quality mutual funds in one convenient location and without any commissions or transaction fees. *Id.* ¶ 70. Clients who invest in mutual funds through OneSource pay those funds certain fees. *Id.* ¶ 71. The funds, in turn, pay portions of those fees to CS&Co. for access to OneSource (and CS&Co.'s large investor client base). *Id.* ¶ 72. Thus, the Fund does not pay CS&Co. directly for access to the OneSource platform, nor does any other investor. Any fee CS&Co. might obtain from investments made through the OneSource platform would come indirectly through the funds available on that platform. *Id.* ¶ 101.

The Fund and CS&Co. are legally independent entities. Compl. ¶ 17. CS&Co. does not receive donations or contributions for the Fund, nor does it receive any suggestions from donors as

to how investments should be made or what grants should be issued. *Id*. ¶¶ 65-69. Nor does it select the investments for the Fund's assets. *Id*. The administrative and investment services provided by CS&Co. to the Fund are governed by specific contracts, just as is true with any CS&Co. client relationship, and are overseen by the Fund's directors and senior management. *Id*. ¶ 22.

**B.   Pinkert Donated To Schwab Charitable And Lost Title To The Donated Funds At That Time.**

When an individual makes a donation to the DAF, in exchange for a present-year tax deduction for the entire amount, he or she relinquishes legal title to the contributed assets, only retaining the privilege to make non-binding recommendations as to how the assets should be invested, among options pre-selected by the Fund, and donated, which the DAF is free to accept or reject. *Id*. ¶ 5. Thus, after a donor contributes assets to a DAF account, the sponsoring organization assumes legal title of such assets and all contributions are irrevocable. *Id*. ¶ 45. Once the donation has been made, and the donor's legal title to those funds is extinguished, the donor does not realize any gains or losses on the donation.

Pinkert opened his account with the Fund in 2007, which has been invested in the Schwab Treasury Inflation Protected Securities Index Fund, one of the pre-selected investment pools made available by the Fund, for at least the last five years. *Id*. ¶ 29. Although he does not specify in the Complaint whether he contributed funds to this account at any point after 2007, or plead the amount of any donation, he agrees that he fully relinquished any ownership interest he previously had to the donated funds at the time of each donation. *Id*. ¶¶ 47-50. In fact, he is expressly prohibited from "retain[ing] legal title to the funds." *Id*. ¶ 47. He retains only certain advisory privileges that permit him to provide only "noncompulsory recommendations" that the Fund may accept or reject. *Id*. ¶ 7.

**C.   Pinkert Seeks Disgorgement Of Fees Received By CS&Co. Years After His Donation To Schwab Charitable.**

Pinkert filed his complaint on October 30, 2020, asserting claims of breaches of common law fiduciary duties, third-party contribution, and unlawful conduct in violation of California's

Unfair Competition Law. Compl., ECF No. 1. Against CS&Co., he asserts only a "third party contribution" claim, as well as an ancillary UCL claim premised exclusively on the same third party contribution claim. Compl. ¶¶ 124-130 (alleging that CS&Co.'s alleged "[t]hird–[p]arty [c]ontribution" is a "violation of the UCL"). The Complaint does not allege that CS&Co. had any duty to Pinkert, nor does it allege that Pinkert has suffered any economic injury as the result of actions by any Defendant.

Pinkert's complaint purportedly arises out of the Fund's decisions to invest funds held by the DAF primarily, but not entirely, in mutual funds on the OneSource platform even though, according to Pinkert, similar funds that charge lower fees may have been available. *Id.* ¶ 75.[3] Pinkert further alleges that the decisions to invest in funds other than those with the lowest administrative fees has resulted in a financial injury *to the Fund*. *Id.* ¶ 18 (alleging that administrative fees "come at the direct expense of the 'charitable purpose' that Schwab Charitable was supposedly established to promote").

In an effort to manufacture a personal injury where none exists, Pinkert erroneously suggests throughout the Complaint that it was actually the donors, not the Fund, that paid fees to CS&Co. *See, e.g.*, *Id.* ¶ 21 ("Schwab Charitable caused *donors* to pay excessive administrative fees to [CS&Co.]") (emphasis added). Such naked assertions cannot be reconciled with other allegations in the Complaint that make clear that donors do not pay any fees at all to CS&Co.[4] Pinkert concedes that "Schwab Charitable is responsible for selecting the investments underlying each investment pool" and "[e]*ach investment pool . . . assumes all fees and expenses associated with the underlying fund.*" *Id.* ¶ 68 (emphasis added). In other words, it is the DAF itself that pays fees and expenses associated with its investments, using donated funds to which the donors have irrevocably relinquished any ownership interest. *Id.* ¶ 7.

---

[3] The Fund allows donors to make recommendations about the investment of assets in one or more of fourteen investment pools, each of which invests in a single underlying mutual fund. Compl. ¶ 68. Pinkert agrees that some of these investment pools invest in underlying mutual funds that are *not* available on the OneSource platform. *Id.* ¶ 75.

[4] Pinkert does not even attempt to quantify the fees he purportedly personally paid to CS&Co., which makes sense because he never paid *any* fee to CS&Co.

### D. The Complaint Contains No Allegation That Pinkert Made A Demand On The Fund's Board To Assert Claims Against CS&Co. Or That Such A Demand Would Be Futile.

Notwithstanding the fact that Pinkert seeks to assert a claim on behalf of the Fund, his Complaint contains no allegation that either he made a demand on the Fund's Board that it initiate such litigation itself (much less that such a demand improperly was denied), or that such a demand would be futile. Indeed, the Complaint contains only one allegation that seeks to impugn the independence of the Fund's directors. The Complaint alleges without further detail only that "several" of the Fund's directors (not even a majority of them) are "affiliated with" or previously "worked [at]" CS&Co. *Id.* ¶ 17. This is not even close to enough, even if it were true.

## IV. ARGUMENT

### A. Pinkert's Claims Against CS&Co. Fail Because He Fails To Plead Any Underlying Claim Against The Charitable Defendants.

Pinkert asserts only two claims against CS&Co.: (1) a "[t]hird-[p]arty [c]ontribution" claim that alleges that CS&Co. was "a knowing contributor to and beneficiary of Schwab Charitable's [purported] fiduciary breaches and unlawful conduct" (Compl. ¶¶ 124-25); and (2) an ancillary claim under California's UCL that relies on the same "third party contribution" claim (Compl. ¶¶ 128-130). Accordingly, Pinkert's claims against CS&Co. are entirely dependent on his breach of fiduciary duty claim against the Charitable Defendants and fail for the same reasons that the breach of fiduciary duty claim must fail, as set forth in detail in the Charitable Defendants' contemporaneously filed motion to dismiss.

Specifically, as demonstrated by the Charitable Defendants, Pinkert lacks standing to assert any claim against the Defendants for two reasons. First, Pinkert fails to allege any injury to himself sufficient to confer Article III standing upon him to assert any claim presented in his Complaint. Second, Pinkert does not meet the statutory standing requirements to sue a California public benefit corporation or its directors because he is not a member of the Fund, nor does he hold any reversionary, contractual, or property interest in the monies he voluntarily donated to the Fund.

Even if Pinkert possessed standing to sue the Charitable Defendants, his breach of fiduciary

duty claim still would fail because he fails to plead any action by the Charitable Defendants that is not protected by the business judgment rule and would constitute a breach of fiduciary duty. It was well within the Charitable Defendants' business judgment to determine independently how to invest the funds that had been donated to the Fund and they had no obligation to make those decisions based solely on which investment opportunities offered the lowest fees. To the contrary, the Charitable Defendants were permitted—and expected—to consider factors other than price when selecting investment options, and were not required to "scour the market to find and offer the cheapest possible fund." *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009); *White v. Chevron Corp.*, 2017 WL 2352137, at *12, *14 (N.D. Cal. May 31, 2017); *Kong v. Trader Joe's Co.*, 2020 WL 5814102, at *4 (C.D. Cal. Sept. 24, 2020). Since Pinkert's claims turn entirely on the erroneous theory that the Charitable Defendants had a duty to invest Fund assets in investments with the lowest fees, his claims must fail as a matter of law.

Because no claim can stand against the Charitable Defendants, the secondary claims brought against CS&Co. must also be dismissed with prejudice as well.

**B.      Pinkert Cannot Assert Any Claims Against CS&Co. Because Any Such Claims Belong To The Fund And Pinkert Lacks Standing To Assert Those Claims On Its Behalf.**

Both Pinkert's primary claim for "contribution" against CS&Co. and his ancillary UCL claim suffer from the same fatal flaw: these claims seek to vindicate injuries to the Fund and therefore belong exclusively to the Fund and must be brought, if at all, in its name. Pinkert has not—and cannot—allege that he has the requisite standing to usurp those claims from the Fund and assert them *in his own name*.

**1.      Pinkert's Claims Belong To The Fund And He Cannot Usurp Them.**

Pinkert's Complaint concedes that he is seeking to remedy an alleged harm to the Fund, in that he seeks to disgorge fees from CS&Co. and return them to the Fund. Compl. ¶ 127. Clearly aware of his lack of any independent personal injury, Pinkert attempts to allege vaguely that there is some incidental injury to his "reputation" (Compl. ¶ 30) or his so-called "advisory privileges" (*id.* ¶ 137) because CS&Co.'s collection of fees from a portion of the mutual funds in which the

1  Fund invests has purportedly reduced the amount of money the Fund can donate to charitable

2  causes. Such inchoate "injuries" – which, in any event, are not legally cognizable – would be

3  plainly derivative of the core injury alleged here that the *Fund* has purportedly suffered a financial

4  injury due, in part, to CS&Co.'s actions. As a result, the claims he presses against CS&Co. belong

5  to the Fund and not to him, and he has alleged no basis to assert them himself.

6        The Fund is a nonprofit public benefit corporation formed under Section 5110 *et. seq.* of

7  the California Corporations Code. Section 5710 of the Corporations Code mandates that "[n]o

8  action may be instituted or maintained in the right of any corporation" unless "the plaintiff alleges

9  in the complaint that plaintiff was a member [of the corporation] at the time of the transaction or

10  any part thereof of which plaintiff complains" *and* the plaintiff alleges "with particularity" his

11  "efforts to secure from the board such action as plaintiff desires, or the reasons for not making such

12  effort" *and* the plaintiff alleges that he has notified the corporation in writing of the claims the

13  plaintiff intends to assert. Cal. Corp. Code § 5710(b). This limitation on the ability of a nonprofit

14  public benefit corporation's members to assert claims on behalf of the corporation is consistent

15  with restrictions placed on shareholders of any other corporation to assert claims on behalf of the

16  corporation. *See* Cal. Corp. Code § 800(b) ("No action may be instituted or maintained in right of

17  any domestic or foreign corporation by any holder of shares or voting trust certificates of the

18  corporation" unless similar "conditions exist"). Such requirements exist because "[i]t is

19  fundamental that a corporation is a legal entity that is distinct from its shareholders" and members,

20  and "[t]he authority to manage the business and affairs of a corporation is vested in its board of

21  directors, not its shareholders" or members. *Grosset v. Wenaas*, 42 Cal. 4th 1100, 1108 (2008).[5]

22  "This includes the authority to commence, defend, and control actions on behalf of the

23  corporation." *Id.* "Because a corporation exists as a separate legal entity, the shareholders [or

24

25  ─────────────────────
   [5] As recognized by the Ninth Circuit, demand requirements support "the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should

26  be made by the board of directors or the majority of shareholders." *Towers v. Iger*, 912 F.3d 523, 528 (9th Cir. 2018) (quotation omitted). Indeed, "[b]y its very nature the derivative action impinges

27  on the managerial freedom of directors. Hence, the demand requirement exists as a threshold, first to ensure the stockholder exhausts his intercorporate remedies, and then to provide a safeguard

28  against strike suits." *Id.* (quotation omitted).

members] have no direct cause of action or right of recovery against those who have harmed it." *Id.*

To determine whether a plaintiff is seeking to maintain a claim "in the . . . right" of a corporation, California courts consider "if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation to prevent the dissipation of its assets." *Bader*, 179 Cal. App. 4th at 793 (quoting *Jones v. H.F. Ahmanson & Co.*, 1 Cal. 3d 93, 106 (1969)); *accord Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Here, the Complaint confirms that Pinkert is attempting to assert a claim against CS&Co. that belongs to the Fund for at least three reasons.

*First*, Pinkert's "contribution" claim is a claim that can be asserted *only* by one of the defendants in this matter, namely the Fund, because "a right of contribution" exists *only* "where a money judgment has been rendered jointly against two or more defendants." Cal. Code Civ. Proc. § 875. Such a claim can exist only between two joint tortfeasors. *See, e.g., Coca-Cola Bottling Co. v. Lucky Stores, Inc.*, 11 Cal. App. 4th 1372, 1378 (1992) ("Contribution . . . is a creature of statute and distributes the loss[es] equally among all tortfeasors."); *River Garden Farms, Inc. v. Superior Court*, 26 Cal. App.3d 986, 992 (1972) ("The contribution statutes establish no right of contribution before judgment, *but only a right of contribution among joint judgment debtors*.") (emphasis added). A contribution claim is *not* one for a plaintiff to assert against a defendant's alleged joint tortfeasor because the sole purpose of this claim is to allocate responsibility for whatever damages plaintiff may prove at trial. If the Charitable Defendants ultimately were held liable to Pinkert for any amount of damages, then it is *the Fund* that would have the statutory right to pursue contribution from any third party that it believed bore some responsibility. Pinkert cannot assert a contribution claim personally against CS&Co. because Pinkert does not allege that he and CS&Co. are jointly liable for any judgment.

*Second*, the sole remedy that Pinkert seeks on his contribution claim is disgorgement of funds *paid by the Fund to CS&Co.* Compl. ¶ 127 (seeking "disgorgement of all profits received by

CS&Co. on account of the fiduciary breaches and unlawful conduct that it contributed to and/or benefited from.").  In so doing, Pinkert seeks to "recover assets for the corporation," which is the hallmark of a derivative claim.  *Bader*, 179 Cal. App. 4th at 793; *see also RK Ventures, Inc. v. Seattle*, 307 F. 3d 1045, 1057 (9th Cir. 2002) ("[i]njury to the corporation is not cognizable as injury to the shareholders, for purposes of the standing requirements") (quotation omitted).  Pinkert does not allege that he is entitled to any disgorgement of fees *to himself or any other donor*, nor could he because he acknowledges that legal title to the funds in his account passed irrevocably to the Fund at the time of his donation.  Compl. ¶ 7.

*Third*, Pinkert's fundamental claim that the Fund's directors and CS&Co. mismanaged the Fund's assets by investing them in a manner that generated excessive costs and fees is paradigmatically a derivative claim.  *See, e.g.*, *Avikian v. WTC Fin. Corp.*, 98 Cal. App. 4th 1108, 1115 (2002) (affirming dismissal of derivative claims where "appellants' core claim is that defendants mismanaged [the company], and entered into self-serving deals to sell [corporate] assets to third parties.  Those assertions—both the improper selling and purchasing of assets—amount of a claim of injury to [the company] itself."); *see also Pareto*, 139 F.3d at 699 (allegations that bank's directors were "mismanaging its operation . . . describe a direct injury to the bank, not the individual stockholders.").  Stated differently, "[u]nder California law, a shareholder *cannot* bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth)."  *Schuster v. Gardner*, 127 Cal. App. 4th 305, 312 (2005) (emphasis in original) (citing *Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2003) ¶ 6:601.1)*. The same logic applies with equal, if not greater force, to members of a nonprofit public benefit corporation.

> **2. Pinkert Does Not Have Standing To Assert A Derivative Claim On Behalf Of The Fund Against CS&Co.**

Because the contribution claim that Pinkert attempts to allege in his complaint is a derivative claim that belongs to the Fund, the California Corporations Code imposes strict limitations on who may assert that claim on the Fund's behalf.  Under Section 5710, only a "member" of a nonprofit

public benefit corporation may attempt to assert a derivative claim on behalf of the corporation. Cal. Corp. Code § 5710(b)(1) (derivative plaintiff must plead that he "was a member at the time of the transaction or any part thereof of which plaintiff complains"). Under California Corporations Code section 5056, a "[m]ember" of a California corporation:

> [M]eans any person who, pursuant to a specific provision of a corporation's articles or bylaws, has the right to vote for the election of a director or directors or on a disposition of all or substantially all of the assets of a corporation or on a merger or on a dissolution unless the provision granting such right to vote is only effective as a result of paragraph (2) of subdivision (a) of Section 7132. "Member" also means any person who is designated in the articles or bylaws as a member and, pursuant to a specific provision of a corporation's articles or bylaws, has the right to vote on changes to the articles or bylaws.

Pinkert has not alleged that he meets any of these conditions. Nor could he, as the Fund's Amended Articles of Incorporation state that it has no members.[6]

Instead, Pinkert hangs his right to bring suit on the Fund's behalf on his status as a donor. Compl. ¶¶ 30-31. But no statute recognizes donors as among the class of individuals who can assert derivative claims. *Am. Ctr. For Educ., Inc. v. Cavnar*, 80 Cal. App. 3d 476, 498-99 (1978) (*superseded by statute on other grounds*) is instructive. There, the founder of a nonprofit corporation who no longer served as an officer, director, or employee of the corporation attempted to file a lawsuit on its behalf against its remaining directors. The court, however, dismissed his claims, holding that he had "no authority to institute legal proceedings in the name of the corporation." *Id.* The court further observed that such a lawsuit could be brought by a limited set of persons, including the Attorney General, "[b]ut other persons, *even including donors*, cannot maintain such actions." *Id.* (emphasis added). No authority recognizes that Pinkert's decision to donate money to the Fund years ago authorizes him to now pursue litigation on the Fund's behalf to recover certain fees paid by it indirectly to CS&Co.

Pinkert's reliance on *Fairbairn v. Fidelity Investments Charitable Gift Fund*, 2018 WL

---

[6] *See* July 19, 2007 Amendment to Articles of Incorporation, *available at* https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=02129372-6317715 ¶ 4 ("The corporation has no members"). The Court can take judicial notice of the Fund's articles of incorporation because they are filed with a state agency. *See Horn v. Azusa Pac. Univ.*, 2019 WL 9044606, at *5 (C.D. Cal. Jan. 14, 2019) (taking judicial notice of nonprofit organization's articles of incorporation filed with the California Secretary of State).

6199684 (N.D. Cal. Nov. 28, 2018) has no relevance to the claims he attempts to assert on behalf of the Fund against CS&Co. In *Fairbairn*, donors to a DAF were permitted to assert breach of contract and negligence claims against a DAF's sponsoring organization—a Massachusetts trust— for allegedly selling shares plaintiffs donated in a manner contrary to promises made to the plaintiffs in soliciting their donation. *Id.* at *2. *Fairbairn* said *nothing* about whether those same donors would have standing to assert claims, either personally or on behalf of a *California* public benefit corporation, against *a third party* that purportedly has "contributed" towards causing an injury to the corporation. In fact, *Fairbairn* contains no discussion whatsoever of whether donors have any right to usurp a public benefit corporation's rights to sue third parties or decide whether such litigation is beneficial to the corporation's charitable goals, as Pinkert attempts to do here.[7]

### 3. Even If Donors Could Seek To Assert Derivative Claims On Behalf Of The Fund, Pinkert Still Fails To Allege Any Of The Statutory Prerequisites For Asserting A Derivative Claim.

Even if donors were among the class of persons who could assert a derivative claim on behalf of a nonprofit public benefit corporation, despite the exclusion of donors from the list of persons who may assert such a claim, Pinkert's claims against CS&Co. still would be fatally flawed because Pinkert has not followed any of the procedural requirements for asserting a derivative claim.

As is set forth in Section 5710 of the Corporations Code, in order to allege a derivative claim on behalf of a nonprofit public benefit corporation, Pinkert must allege "with particularity" the following: "plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and … further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file." Cal. Corp. Code §5710(b)(2). Similarly, Federal Rule of Civil Procedure 23.1 requires a

---

[7] For the reasons set forth in the accompanying motion from the Charitable Defendants, *Fairbairn* should not be read to provide any basis for concluding that Pinkert has standing to assert any claim against the Charitable Defendants. But even if this Court concludes that standing does exist for Pinkert to sue the Charitable Defendants, this Court still can and should conclude that standing does not exist to assert claims that belong to the Fund against CS&Co.

plaintiff asserting a derivative action to plead, among other things, that he was a "shareholder or member" of the corporation at the time of suit and allege "with particularity" "any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and [ ] the reasons for not obtaining the action or not making the effort." The Complaint is devoid of any such allegations.

Pinkert fails to allege that he made any effort to convince the directors of the Fund to pursue any claim against CS&Co. He further fails to identify any reason why he was unable to do so or any basis for believing that such efforts would have been futile. Courts routinely dismiss derivative claims where the plaintiff has failed to meet the demand requirements of the Corporations Code and Rule 23.1. *See, e.g.*, *Indiana Elec. Workers Pension Tr. Fund, IBEW v. Dunn*, 352 F. App'x 157, 161 (9th Cir. 2009) (affirming district court's dismissal of derivative claim where plaintiff failed to allege such demand would be futile); *accord Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008); *In re Paypal Holdings, Inc. S'holder Derivative Litig.*, 2018 WL 466527, at *2, *7 (N.D. Cal. Jan. 18, 2018); *Henry v. Tyler*, 2020 WL 353483, at *5 (N.D. Cal. Jan. 21, 2020).

### C.      Even If Pinkert Could Assert A Claim On The Fund's Behalf, The Third Party Contribution Claim Is Not Ripe.

Under California law, a contribution claim can exist only *after* "a money judgment has been rendered jointly against two or more defendants." Cal. Code Civ. Proc. § 875(a). Courts routinely dismiss contribution claims as unripe where, as here, a party attempts to seek contribution before any money judgment has been rendered. *See, e.g.*, *St. Paul Mercury Ins. Co. v. CorVel Corp.*, 2018 WL 8131218, at *6 (C.D. Cal. Sept. 28, 2018) ("[U]nder the common law, a right to contribution arises only if there is a judgment in which two or more parties are found liable in a tort action" because a "final judgment . . . is a necessary element of a contribution claim."); *Nat'l Union Fire Ins. Co. of Pittsburgh PA v. Res. Dev. Servs., Inc.*, 2011 WL 13153239, at *6 (N.D. Cal. Dec. 7, 2011) (dismissing plaintiff's contribution as not yet ripe for adjudication); *In re Brocade Commc'ns. Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1049 (N.D. Cal. 2009) ("As there is no final judgment in that case, the claim for contribution is not ripe and is hereby dismissed without

prejudice."); *W. Scott Fetzer Co. v. Braden Partners, LP*, 2006 WL 2263827, at *9 (N.D. Cal. Aug. 7, 2016) (dismissing defendant's contribution claim brought in a counterclaim because there was yet no final judgment entered against defendant); *see also Coca-Cola Bottling Co.*, 11 Cal. App. 4th at 1380 ("After the judgment in favor of plaintiff . . . and against both defendants had been entered and fully satisfied by Coca-Cola, *then and only then was a claim for contribution ripe*.") (emphasis added).

Pinkert, of course, does not and cannot allege that any judgment has been entered in his or the Fund's favor for which CS&Co. might have any conceivable obligation to contribute. Accordingly, any contribution claim is not yet ripe for adjudication, even if Pinkert had any basis to assert such a claim in the first place.

### D.   Pinkert Fails To State A UCL Claim Against CS&Co.

#### 1.   Pinkert Fails To Allege Any Predicate Claim Against CS&Co.

Pinkert's UCL claim is equally unavailing and must be dismissed as both unsupported and unfounded. The UCL authorizes injured consumers to "borrow" violations of other laws for purposes of establishing UCL liability, but the underlying claim must be cognizable for the UCL claim to survive a motion to dismiss. *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 920 (N.D. Cal. 2013); *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). In other words, the UCL cannot be invoked to create a cause of action where the underlying cause of action would fail. *See Glen K. Jackson, Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) ("[B]readth of § 17200 does not give a plaintiff license to 'plead around' the absolute bars to relief contained in other possible causes of action by recasting those causes of action . . . for unfair competition.").

Here, the only predicate claim pleaded against CS&Co. is the facially deficient claim for "Third-Party Contribution." As discussed in detail in Section IV.B above, Pinkert has no right to bring a derivative third-party contribution claim, and the third-party contribution claims is unripe. Thus, the dismissal of any third-party contribution claim also mandates dismissal of the UCL claim against CS&Co.

1

### 2. Pinkert Fails To Allege Any Personal Loss Of Money Or Property To Support His UCL Claim.

2   Pinkert's UCL claim also warrants dismissal given another glaring deficiency of his

3   Complaint—his failure to allege any personal loss of money or property. To state a UCL claim, a

4   plaintiff must allege that he, personally, "suffered injury in fact and has lost money or property as

5   a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. This injury requirement is

6   substantially narrower than the injury requirement for Article III standing. *See, e.g.*, *Kwikset Corp.*

7   *v. Superior Court*, 51 Cal. 4th 310, 324 (2011) ("requirement that injury be economic renders

8   standing under section 17204 substantially narrower than federal standing under Article III");

9   *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 576 (2020) ("federal Article III standing is far

10  broader than the standing requirement contained in section 17200, which expressly requires a

11  financial loss caused by the defendant's conduct."); *In re Facebook, Inc., Consumer Priv. User*

12  *Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019) (dismissing UCL claim for failure to plead

13  that plaintiffs "lost money or property" as a result of Facebook's conduct; "Facebook may have

14  gained money through its sharing or use of the plaintiffs' information, but that's different from

15  saying the plaintiffs lost money"). Therefore, "the relevant inquiry for standing purposes is whether

16  a defendant's [alleged] unlawful conduct caused the plaintiff to part with money." *Mayron*, 54 Cal.

17  App. 5th at 575.

18  Pinkert plainly does not allege that any breach of fiduciary duty caused him to "part with

19  money." The funds at issue in the Complaint did not belong to Pinkert at the time of the alleged

20  breach and Pinkert does not allege that he *personally* lost even a single cent as a result of the alleged

21  breach of fiduciary duty. *Kwikset Corp.*, 51 Cal. 4th at 323 ("a private plaintiff filing suit . . . must

22  establish that he or she has *personally* suffered [economic] harm") (emphasis added). Upon

23  donation, legal title to Pinkert's contribution passed to the Fund. Compl. ¶¶ 5, 90. All Pinkert

24  maintained thereafter was the mere ability to make non-binding suggestions as to how his donation

25  should be invested. Compl. ¶¶ 49-50. Because the economic harm alleged must be personal to

26  Pinkert, his failure to allege his own loss of money or property is fatal to his UCL claim.

27  Pinkert's attempts to circumvent this clear pleading requirement are unavailing. The

28

alleged harm to his purported advisory privileges does not save his UCL claim. Compl. ¶ 137. Pinkert does not – and cannot – explain how his ability to "provide *noncompulsory* recommendations, suggestions or consultative advice" about the use of funds he donated to the Fund resulted in his personal loss of money. *Id*. ¶ 7 (emphasis added). His noncompulsory advisory rights continue to exist regardless of the amount of money in his account. Pinkert is still able to make recommendations and the Fund is still free to accept or reject them. The normal operation of the Fund does not diminish his advisory rights in any way.

More importantly, reduced advisory rights are not a cognizable injury to "money or property" under the UCL. *See Kwikset Corp.*, 51 Cal. 4th at 323 (listing cognizable injuries).[8] Pinkert attaches no economic value to these "rights" to make non-binding suggestions to the Fund. Absent economic value, diminution of such rights—which did not occur—cannot be considered any form of economic harm. *See Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1554 (2011) (affirming dismissal of UCL claim where alleged economic injury was "conjectural or hypothetical," rather than "concrete and particularized").

The UCL's strict requirement that Pinkert allege an actual *financial* loss caused by the purported misconduct is further reinforced by the limited remedies available to a litigant under the UCL, which generally include *only* "injunctive relief and restitution." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). A "nonrestitutionary disgorgement of profits is not an available remedy in an individual action under the UCL." *Id.* at 1152. The California Supreme Court prohibited the plaintiff in *Korea Supply Co.* from seeking such relief "because plaintiff does not have an ownership interest in the money it seeks to recover from defendants." *Id.* at 1149. The same is true here. Although Pinkert had no ownership interest in any money used to pay fees to CS&Co., directly or indirectly, he nevertheless seeks nonrestitutionary disgorgement of such fees that were paid *by the Fund. See* Compl. ¶ 127; Prayer for Relief G. Such relief is not available under the UCL. *Korea Supply Co.*, 29 Cal. 4th at 1148

---

[8] Notably, *Connelly v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 138 Cal. App. 2d 303, 307 (1956), which Pinkert cites as purported support for his position that he has retained some property interest in his donation, actually says no such thing. Indeed, nothing in *Connelly* suggests that Pinkert can donate funds to a charity and then claim a property interest in those funds post-donation.

("This court has never approved of nonrestitutionary disgorgement of profits as a remedy under the UCL."). Accordingly, any damages here would be limited only to restitution for the purportedly diminished value of Pinkert's advisory rights, which are not alleged to have any economic value whatsoever. Moreover, the fact that Pinkert seeks the disgorgement of funds *that belonged to the Fund* further demonstrates that Pinkert is seeking to assert claims that do not belong to him.

### 3.   Pinkert's UCL Claim Is Time-Barred.

Pinkert's UCL claim also fails because it is time-barred. UCL claims are subject to a four-year limitations period. *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1309 (S.D. Cal. 2014), *aff'd*, 816 F.3d 1170 (9th Cir. 2016). The limitations period would have begun when "a reasonable person would have discovered the factual basis for a claim." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198 (2013).

As stated above, a UCL claim can *only* arise out of a personal, financial injury. Here, the only instance where Pinkert alleges that he took any action that resulted in him *personally* parting with any amount of money is when he made his donations to the Fund, which is alleged to have occurred in 2007. But the alleged conduct about which he complains necessarily followed his donation. Moreover, although he now seeks to second-guess the Charitable Defendants' investment decisions, he does not allege that the Charitable Defendants' investment practices were unknown or unknowable, nor does he allege any failure to disclose that the Fund made investments on the OneSource platform, nor does he allege any failure to disclose the fees that would be charged to the Fund for those investments. He does not allege that his claims arise out of any new development, such as a change in investment policy that purportedly occurred within the four year period prior to the filing of the Complaint. To the contrary, the natural implication from the Complaint is that Pinkert is now seeking to assert claims that belong to the Fund based on investment practices that were known or knowable for more than four years.[9]

Thus, even if Pinkert tried to characterize his initial investment as a financial "loss" that

---

[9] As set forth previously and throughout, Pinkert is attempting to litigate claims that belong to the Fund, if anyone. There can be no question that the Fund was fully aware of how the Charitable Defendants were investing Fund assets at all times.

1  might support a UCL claim, such "loss" would have occurred more than four years ago, Compl.

2  ¶ 29, and any claim based on that event would be time-barred.

3  **V.      CONCLUSION**

4        The Complaint should be dismissed in its entirety with prejudice.

5

6

7  Dated: January 22, 2021                */s/ Joshua D. N. Hess*
                         Joshua D. N. Hess

8                           Brian Raphel
                         DECHERT LLP

9                           One Bush Street, Suite 1600
                         San Francisco, CA 94111-3513

10                          Telephone:  (415) 262-4500
                         Facsimile:  (415) 262-4555

11                          joshua.hess@dechert.com
                         brian.raphel@dechert.com

12                          David A. Kotler

13                          Samantha Rosa
                         DECHERT LLP

14                          1095 Avenue of the Americas
                         New York, NY 10036

15                          Telephone:  (212) 698-3500
                         Facsimile:  (212) 698-3599

16                          david.kotler@dechert.com
                         samantha.rosa@dechert.com

17                          *Counsel for Defendant Charles Schwab & Co., Inc.*

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

The undersigned certifies that on January 22, 2021, the foregoing document was

3

electronically filed with the Clerk of the Court for the United States District Court, Northern

4

District of California, using the Court's Electronic Case Filing (ECF) system. The ECF system

5

routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to

6

accept this notice as service of this document by electronic means. Any party not receiving the

7

Court's electronic notification will be sent a copy of the foregoing document.

8

Dated: January 22, 2021                    DECHERT LLP

9

10

By:      /s/ *Joshua D. N. Hess*
                  Joshua D. N. Hess

11

*Counsel for Defendant Charles Schwab & Co., Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28