JOSHUA D. N. HESS (SBN 244115)
joshua.hess@dechert.com
BRIAN RAPHEL (SBN 293788)
brian.raphel@dechert.com
DECHERT LLP
One Bush Street, Suite 1600
San Francisco, CA 94111-3513
Telephone: (415) 262-4500
Facsimile: (415) 262-4555

DAVID A. KOTLER*
david.kotler@dechert.com
SAMANTHA ROSA*
samantha.rosa@dechert.com
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*admitted *pro hac vice*

Attorneys for Defendant Charles Schwab & Co., Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

Philip Pinkert, individually and on behalf
of a Class of similarly situated individuals,
and on behalf of the general public,

Plaintiff,

v.

Schwab Charitable Fund, Charles Schwab
& Co., Schwab Charitable Board of
Directors, and Schwab Charitable
Investment Oversight Committee,

Defendants.

Case No. 20-7657

**DEFENDANT CHARLES SCHWAB & CO., INC.'S NOTICE OF MOTION, MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES**

Amended Complaint Filed: February 5, 2021

Hearing Date: May 13, 2021
Time: 9:30 a.m.
Courtroom: B
Judge: Hon. Laurel Beeler

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................. 1

STATEMENT OF RELIEF REQUESTED ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.      INTRODUCTION .................................................................................................. 1

II.     STATEMENT OF ISSUES TO BE DECIDED ......................................................... 3

III.    FACTUAL BACKGROUND ................................................................................... 4

        A.      The Fund Is A Nonprofit Corporation That Pays CS&Co. For Financial
                Services. ........................................................................................................ 4

        B.      Pinkert Donated To Schwab Charitable And Ceded Title To The Donated
                Funds. ............................................................................................................ 4

        C.      Pinkert Seeks Disgorgement Of Fees CS&Co. Received Years After His
                Donations. ..................................................................................................... 5

        D.      The FAC Does Not Allege Pinkert Made A Demand On The Fund's Board
                To Assert Claims Against CS&Co. Or That Such A Demand Would Be
                Futile. ............................................................................................................ 6

IV.     ARGUMENT ........................................................................................................ 7

        A.      Pinkert's Claims Against CS&Co. Fail Because He Fails To Plead Any
                Underlying Claim Against The Charitable Defendants. ................................... 7

        B.      Pinkert Lacks Standing To Assert Any Claims That Belong To The Fund,
                Including His Claims Against CS&Co. ............................................................ 8

                1.      The Fund's Rights And Duties Are Governed By The California
                        Corporations Code, Not Common Law. ............................................... 8

                2.      Pinkert's Claims Belong To The Fund. ............................................... 10

                3.      Pinkert Does Not Have Standing To Assert Derivative Claims On
                        Behalf Of The Fund. .......................................................................... 13

                4.      Even If Donors Could Seek To Assert Derivative Claims On Behalf
                        Of The Fund, Pinkert Fails To Meet The Statutory Prerequisites For
                        Asserting His Derivative Claims Against CS&Co. ............................... 14

        C.      Even If Pinkert Could Assert A Claim On The Fund's Behalf, He Fails
                Adequately To Allege Aiding and Abetting Breach of Fiduciary Duty. ........... 15

                1.      Pinkert Fails To Allege Adequately That Charitable Defendants
                        Breached Their Fiduciary Duty. ......................................................... 16

                2.      Pinkert Fails To Allege CS&Co. Knew Of Any Breach. ...................... 17

                3.      Pinkert Fails To Allege CS&Co. Substantially Assisted In Any
                        Breach. .............................................................................................. 19

                4.      Pinkert's Claim For Aiding And Abetting Is Time-Barred. .................. 21

        D.      Pinkert Fails To State A UCL Claim Against CS&Co. ................................... 22

                1.      Pinkert Fails To Allege Any Predicate Claim Against CS&Co. ............ 22

2.   Pinkert Fails To Allege Any Personal Loss Of Money Or Property To Support His UCL Claim. ...................................................................22

3.   Pinkert's UCL Claim Is Time-Barred. ...................................................25

V.   CONCLUSION...........................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
   225 Cal. App. 4th 1451 (2014) .................................................................15, 16, 21

*American Center for Education, Inc. v. Cavnar*,
   80 Cal. App. 3d 476 (1978) ........................................................................ 13, 14

*AngioScore, Inc. v. TriReme Med., LLC*,
   70 F. Supp. 3d 951 (N.D. Cal. 2014) ................................................................ 19

*Aryeh v. Canon Bus. Sols., Inc.*,
   55 Cal. 4th 1185 (2013) ....................................................................................25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................15

*Avikian v. WTC Fin. Corp.*,
   98 Cal. App. 4th 1108 (2002) ...........................................................................12

*Bader v. Anderson*,
   179 Cal. App. 4th 775 (2009) ................................................................ 1, 11, 12

*Beaver v. Tarsadia Hotels*,
   29 F. Supp. 3d 1294 (S.D. Cal. 2014) ...............................................................25

*Bower v. AT&T Mobility, LLC*,
   196 Cal. App. 4th 1545 (2011) .........................................................................24

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ............................................................................17

*Casey v. U.S. Bank Nat. Assn.*,
   127 Cal. App. 4th 1138 (2005) ...................................................................*passim*

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ......................................................................................22

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   68 Cal. App. 4th 445 (1998) ................................................................. 9, 10, 20

*Copart, Inc. v. Sparta Consulting, Inc.*,
   277 F. Supp. 3d 1127 (E.D. Cal. 2017) ...............................................................8

*Davis v. Salesforce.com, Inc.*,
  2020 WL 5893405 (N.D. Cal. Oct. 5, 2020) ...................................................................... 17

*Dorman v. Charles Schwab Corp.*,
  2018 WL 6803738 (N.D. Cal. Sept. 20, 2018) .................................................................. 17

*In re Eventbrite, Inc. Sec. Litig.*,
  2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ...................................................................... 6

*F.D.I.C. v. Ching*,
  2014 WL 3361974 (E.D. Cal. July 8, 2014) ................................................................... 8, 9

*Fairbairn v. Fidelity Investments Charitable Gift Fund*,
  2018 WL 6199684 (N.D. Cal. Nov. 28, 2018) .................................................................. 14

*Glen K. Jackson Inc. v. Roe*,
  273 F.3d 1192 (9th Cir. 2001) ........................................................................................ 22

*Goonewardene v. ADP, LLC*,
  5 Cal. App. 5th 154 (2016) ................................................................................. 16, 19, 20

*Grosset v. Wenaas*,
  42 Cal. 4th 1100 (2008) .................................................................................................. 11

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ............................................................................................ 8

*Henry v. Tyler*,
  2020 WL 353483 (N.D. Cal. Jan. 21, 2020) .................................................................... 15

*Horn v. Azusa Pac. Univ.*,
  2019 WL 9044606 (C.D. Cal. Jan. 14, 2019) .................................................................. 13

*Hurtado Lucero v. IRA Servs., Inc.*,
  2020 WL 553941 (N.D. Cal. Feb. 3, 2020) ............................................................. *passim*

*Ind. Elec. Workers Pension Tr. Fund, IBEW v. Dunn*,
  352 F. App'x 157 (9th Cir. 2009) .................................................................................... 15

*Jones v. H.F. Ahmanson & Co.*,
  1 Cal. 3d 93 (1969) ......................................................................................................... 11

*Kong v. Trader Joe's Co.*,
  2020 WL 5814102 (C.D. Cal. Sept. 24, 2020) .................................................................. 8

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .................................................................................................. 24

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ....................................................................................... 22, 23, 24

*L.B. Research & Education Foundation v. UCLA Foundation*,
   130 Cal. App. 4th 171 (2005) ................................................................. 10

*Loomis v. Exelon Corp.*,
   658 F.3d 667 (7th Cir. 2011) ................................................................. 17

*Mayron v. Google LLC*,
   54 Cal. App. 5th 566 (2020) ............................................................. 22, 23

*McFall v. Stacy & Witbeck, Inc.*,
   2016 WL 6248882 (N.D. Cal. Oct. 26, 2016) ...................................... 18, 21

*Navarrete v. Meyer*,
   237 Cal. App. 4th 1276 (2015) ............................................................... 20

*Pac. Scene, Inc. v. Penasquitos, Inc.*,
   46 Cal. 3d 407 (1988) .............................................................................. 9

*Pareto v. F.D.I.C.*,
   139 F.3d 696 (9th Cir. 1998) .............................................................. 11, 12

*Patton v. Sherwood*,
   152 Cal. App. 4th 339 (2007) ................................................................. 10

*In re Paypal Holdings, Inc. S'holder Derivative Litig.*,
   2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ............................................ 15

*Pirozzi v. Apple, Inc.*,
   966 F. Supp. 2d 909 (N.D. Cal. 2013) .................................................... 22

*Potter v. Hughes*,
   546 F.3d 1051 (9th Cir. 2008) ................................................................ 15

*Ret. Sys. v. Jobs*,
   593 F.3d 1018 (9th Cir. 2010) ................................................................ 11

*RK Ventures, Inc. v. City of Seattle*,
   307 F. 3d 1045 (9th Cir. 2002) ............................................................... 12

*San Diego Unified Port Dist. v. Monsanto Co.*,
   2020 WL 1479071 (S.D. Cal. Mar. 26, 2020) ........................................... 8

*Schuster v. Gardner*,
   127 Cal. App. 4th 305 (2005) ................................................................. 12

*In re Sharp Intern. Corp.*,
   281 B.R. 506 (Bankr. E.D.N.Y. 2002) ................................................. 18, 19

*Tibble v. Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013) ................................................................... 17, 18

*Towers v. Iger*,
    912 F.3d 523 (9th Cir. 2018) ........................................................................... 11

*WA Sw. 2, LLC v. First Am. Title Ins. Co.*,
    240 Cal. App. 4th 148 (2015) ......................................................................... 21

*White v. Chevron Corp.*,
    2017 WL 2352137 (N.D. Cal. May 31, 2017) .................................................. 8

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008) ............................................................. 21

**Statutes**

Cal. Bus. & Prof. Code § 17204 ........................................................................... 22

Cal. Corp. Code § 800(b) ..................................................................................... 11

Cal. Corp. Code § 5056 ........................................................................................ 13

Cal. Corp. Code § 5231 .......................................................................................... 8

Cal. Corp. Code § 5710 ................................................................................. *passim*

Cal. Gov. Code § 27100.1 ..................................................................................... 10

Cal. Prob. Code § 18501 ................................................................................... 7, 22

UCL § 17200 ......................................................................................................... 22

**Rules**

Fed. R. Civ. Proc. 23.1 .................................................................................... 14, 15

**Other Authorities**

Amendment to the Articles of Incorporation,
    https://bit.ly/3drHzBw ................................................................................... 13

ASSEMBLY SELECT COMMITTEE ON REVISION OF THE NONPROFIT CORPORATIONS
    CODE, REPORT OF THE ASSEMBLY SELECT COMMITTEE ON REVISION OF THE
    NONPROFIT CORPORATIONS CODE (Cal. 1979), https://bit.ly/2LUiO5I .................... 9

*Prospectus, Schwab Bond Funds*, SEC.gov (Dec. 16, 2014),
    https://bit.ly/2NfYWL9 .................................................................................. 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on May 13, 2021, at 9:30 a.m. in Courtroom B of the United States District Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Laurel Beeler, Defendant Charles Schwab & Co., Inc. ("CS&Co.") will and hereby does respectfully move to dismiss the first amended complaint of Plaintiff Philip Pinkert ("Pinkert") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based on this Notice of Motion and Motion and the accompanying Memorandum of Points and Authorities, and such other authorities and arguments as may be submitted in any reply at or before the hearing.

### STATEMENT OF RELIEF REQUESTED

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), CS&Co. hereby moves to dismiss Pinkert's first amended complaint in its entirety, with prejudice.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Pinkert has asserted amended claims against CS&Co. that still do not and *cannot* belong to him under California law. Specifically, Pinkert asks this Court to compel CS&Co. to disgorge certain fees that it directly and indirectly received from Defendant Schwab Charitable Fund (the "Fund"), a California nonprofit public benefit corporation. Even had Pinkert pleaded a viable basis to require the disgorgement of those fees (which he has not), the fees would be returned not to Pinkert, the purported class of donors, or even "the general public" he seeks to represent, but to the Fund itself. Such a claim, therefore, *belongs to the Fund*—not to Pinkert. Thus, it is the Fund's right as a matter of law—not Pinkert's—to decide whether to pursue these claims.

Under long-settled California law, a claim is derivative in nature and belongs to a corporation when the claim arises out of an alleged "injury to the corporation" or "seeks to recover assets for the corporation." *Bader v. Anderson*, 179 Cal. App. 4th 775, 793 (2009). That is precisely the case here. The California Corporations Code makes clear that only the corporation or a "member" of the corporation can initiate litigation on behalf of a public benefit corporation. In the

case of a member, he or she may do so only after meeting statutory prerequisites. Cal. Corp. Code § 5710(b)(1). As a donor to the Fund, Pinkert is neither the Fund nor a "member" of the Fund. But even if donors could assert derivative claims on behalf of a nonprofit public benefit corporation against a third party, Pinkert's claims still fail because he has not alleged that he followed any of the required procedures for doing so. As a matter of law, to bring a derivative claim, the plaintiff must either allege that it made a demand on the corporation's board that was improperly denied or allege with particularity why such demand would be futile. Pinkert has done neither. His claims against CS&Co. fail for this reason alone.

Pinkert's lack of standing to determine whether litigation is in the Fund's best interests is grounded in sound policy. Permitting Pinkert to usurp that right from the Fund would allow him to embroil a nonprofit public benefit corporation—a charity—in unnecessary litigation that is not necessarily in the Fund's best interest. Indeed, under Pinkert's approach, any donor to a charity would be granted free license to bring vexatious and costly litigation "on the charity's behalf," but with no consideration for its mission, stakeholders, finances, operations, and reputation. Charities thus would be afforded far fewer protections in this regard than those given to for-profit companies. This cannot be—and, indeed, is not—the law.

Separate from his lack of standing, Pinkert's claims against CS&Co.:

*First*, Pinkert fails to state an aiding-and-abetting claim. To survive a motion to dismiss, Pinkert must allege that CS&Co. both knew of and substantially assisted in a specific tort. *Hurtado Lucero v. IRA Servs., Inc.*, 2020 WL 553941, at *4 (N.D. Cal. Feb. 3, 2020). Pinkert alleges only that CS&Co. knew there were cheaper investment vehicles available to the Fund than those that it selected. But a decision not to purchase the cheapest available product is not a breach of fiduciary duty, so CS&Co.'s mere knowledge and execution of the Fund's investment decisions cannot constitute aiding and abetting. Moreover, Pinkert's aiding-and-abetting claim accrued over four years ago and is therefore time-barred.

*Second*, Pinkert cannot save his deficient aiding-and-abetting claim by recasting it as a claim under California's Unfair Competition Law ("UCL"). His UCL claim fails for the same reasons

the underlying aiding-and-abetting claim fails, and also because Pinkert fails to allege any loss of money or property as is required to state a UCL claim. Furthermore, Pinkert fails to allege any damages cognizable under the UCL. He requests only disgorgement, a remedy the UCL does not allow.

*Third*, because the claims against CS&Co. are all dependent on the claims against the Charitable Defendants,[1] they fail for the reasons articulated in their separate motion to dismiss.

The first amended complaint should be dismissed with prejudice.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.    Can a donor sue on behalf of a nonprofit public benefit corporation formed under § 5110 *et. seq.* of the California Corporations Code under common law when the State expressly provides for who may sue on such a corporation's behalf, and the requirements they must meet to do so, in the Corporations Code?

2.    When a donor fails to allege any specific, personal economic harm and seeks the disgorgement of fees paid by a nonprofit public benefit corporation, does the claim arise out of an alleged injury to the corporation, making the claim derivative in nature?

3.    Does an individual donor, who is not a member, shareholder, director, or officer of the corporation, have standing to assert claims on the corporation's behalf even though the California Corporations Code does not allow donors to assert such a claim?

4.    Does knowledge of and assistance in a fiduciary's selection of an investment vehicle that does not have the lowest fees alone support a claim for aiding and abetting a breach of fiduciary duty?

5.    Is an aiding-and-abetting claim time-barred under a four-year statute of limitations when the plaintiff brought suit over four years after he had notice of the predicate tort?

6.    Can a plaintiff sustain a UCL claim when he fails to allege personal loss of money or property?

---

[1] The "Charitable Defendants" are Schwab Charitable Fund, the Schwab Charitable Board of Directors, and the Schwab Charitable Investment Oversight Committee.

III.   **FACTUAL BACKGROUND**

    A.    **The Fund Is A Nonprofit Corporation That Pays CS&Co. For Financial Services.**

        The Fund is nonprofit public benefit corporation established under, and governed by, § 5110 *et seq.* of the California Corporations Code. It is the sponsoring entity for a donor-advised fund ("DAF") and is currently one of the ten largest charities in the United States. First Amended Complaint ("FAC") ¶ 13, ECF No. 50.

        Unlike the Fund, CS&Co. is a for-profit, commercial enterprise that provides a full range of financial and banking services to many funds and investors. *Id.* ¶¶ 14-15. One of the services CS&Co. provides is access to its OneSource platform. OneSource is a mutual fund "supermarket" that provides CS&Co.'s clients access to over 4,200 high-quality mutual funds in one convenient location without any commissions or transaction fees. *Id.* ¶ 69. Clients who invest in mutual funds through OneSource pay those funds certain fees. *Id.* ¶ 70. The funds, in turn, pay portions of those fees to CS&Co. for access to OneSource (and CS&Co.'s large investor client base). *Id.* ¶ 71. Thus, neither the Fund nor any other investor pays CS&Co. directly for access to OneSource. Any fee CS&Co. might obtain from investments made through OneSource would come indirectly through the funds available on that platform. *Id.* ¶ 104.

        The Fund and CS&Co. are legally independent entities. *Id.* ¶ 15. CS&Co. does not receive donations or contributions for the Fund or receive any suggestions from donors as to how investments should be made or what grants should be issued. *Id.* ¶¶ 53-57. Nor does it select the investments for the Fund's assets. *Id.* The administrative and investment services CS&Co. provides the Fund are governed by specific contracts, *id.* ¶ 15, which are overseen by the Fund's directors and senior management, *id.* ¶ 31.

    B.    **Pinkert Donated To Schwab Charitable And Ceded Title To The Donated Funds.**

        When an individual donates to the DAF, he or she receives a present-year tax deduction for the entire amount; in return, the individual relinquishes legal title to the contributed assets, retaining only the option to make non-binding recommendations as to how the assets should be donated and

1   invested (among options pre-selected by the Fund), which the DAF is free to accept or reject. *Id.*

2   ¶ 5. Thus, after a donor contributes assets to a DAF account, the sponsoring organization assumes

3   legal title of such assets, and all contributions are irrevocable. *Id.* ¶ 35. Once the donation is made,

4   and the donor's title therefore is extinguished, the donor realizes no gains or losses on the donation.

5       Pinkert opened his account with the Fund in 2007, and, for at least the last five years, his

6   investment was contributed in part to the Schwab Treasury Inflation Protected Securities Index

7   Fund, a pre-selected investment pool. *Id.* ¶ 27. Pinkert agrees he fully relinquished any ownership

8   interest he previously had to the donated funds at the time of each donation. *Id.* ¶¶ 59, 61, 65. In

9   fact, he is prohibited from "retain[ing] legal title to the funds." *Id.* ¶ 59. He retains only certain

10  advisory privileges and may provide only "noncompulsory recommendations" that the Fund may

11  accept or reject. *Id.* ¶ 7.

12      Pinkert alleges that to make up for the Fund's administrative and investment fees, he "must

13  contribute more to his Schwab DAF to achieve his charitable goals." *Id.* ¶ 29. But he fails to allege

14  the specific amount or date of any such donation, nor does he allege his numerical "charitable goal"

15  for any time period or how much he claims to have donated to bridge any purported shortfall.

16  **C.    Pinkert Seeks Disgorgement Of Fees CS&Co. Received Years After His**

17  **Donations.**

18      Pinkert filed the FAC on February 5, 2021, asserting claims of breaches of common-law

19  fiduciary duties, aiding and abetting, and unlawful conduct in violation of California's Unfair

20  Competition Law and Uniform Prudent Management of Institutional Funds Act. *Id.*[2] Against

21  CS&Co., he asserts an aiding-and-abetting claim, as well as a UCL claim premised exclusively on

22  the same aiding-and-abetting allegations. *Id.* ¶¶ 138-39. The FAC does not allege that CS&Co.

23  had any duty to Pinkert or that Pinkert has suffered any individual economic injury.

24      Pinkert alleges that the Fund invested in certain retail-class mutual funds through

25  OneSource even though it might have been eligible for comparable institutional-class mutual funds

26

27

28  [2] Pinkert filed the FAC in response to CS&Co.'s motion to dismiss his initial complaint. *See* Def.
    CS&Co. Motion to Dismiss, ECF No. 46.

with lower fees. *Id.* ¶ 108.[3]  Pinkert further alleges that the decisions to invest in funds other than those with the lowest administrative fees has resulted in a financial injury *to the Fund*. *Id.* ¶ 16 (alleging that administrative fees "come at the direct expense of the 'charitable purpose' that Schwab Charitable was supposedly established to promote").

In an effort to manufacture a personal injury where none exists, Pinkert erroneously suggests that it was the donors, not the Fund, who paid fees to CS&Co. *See, e.g.*, *id.* ¶ 19 ("Schwab Charitable caused *donors* to pay excessive administrative fees to [CS&Co.]" (emphasis added)). But other allegations properly concede that donors do not pay any fees at all to CS&Co., *e.g.*, that "Schwab Charitable is responsible for selecting the investments underlying each investment pool," and that "[e]ach investment pool . . . assumes all fees and expenses associated with the underlying fund." *Id.* ¶ 56.  In other words, it is the Fund itself that pays fees and expenses associated with its investments, using donated funds to which the donors irrevocably have relinquished any ownership interest. *Id.* ¶ 7.

**D.    The FAC Does Not Allege Pinkert Made A Demand On The Fund's Board To Assert Claims Against CS&Co. Or That Such A Demand Would Be Futile.**

Notwithstanding that Pinkert seeks to assert a claim on behalf of the Fund, the FAC does not allege that he made a demand on the Fund's Board that it initiate such litigation itself and that the Board improperly denied the demand, or that such a demand would be futile.  Indeed, the FAC contains only one allegation that seeks to impugn the independence of the Fund's directors to consider such a demand.  The FAC alleges only that "several" of the Fund's directors (not even a majority of them) are "affiliated with" or previously "worked [at]" CS&Co. *Id.* ¶ 15.  This is false,[4]

---

[3] The Fund allows donors to recommend investments in one or more of fourteen investment pools, each of which invests in a single underlying mutual fund.  FAC ¶ 56.  Pinkert agrees that some of these underlying mutual funds are *not* available on the OneSource platform. *Id.* ¶ 74.

[4] Only one of the Fund's seven directors, Carrie Pomerantz-Schwab, who is the only director the FAC identifies by name, is employed by or "affiliated with" CS&Co.  The biographies of the directors of the Fund are publicly available on the Fund's website (https://www.schwabcharitable.org/about-schwab-charitable/board-of-directors).  These biographies can be incorporated by reference on this motion, as the FAC makes numerous citations to the Fund's website.  FAC ¶¶ 22, 45, 49, 55, 66, 69, 75, 81, 94, 96-97; *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020) (document may be incorporated by reference into a complaint, and be considered true in its entirety for purposes of a motion to dismiss,

1  and even if it were true, it would not be enough.

2  **IV.    ARGUMENT**

3       **A.    Pinkert's Claims Against CS&Co. Fail Because He Fails To Plead Any
              Underlying Claim Against The Charitable Defendants.**

4

5       Pinkert asserts two claims against CS&Co.: (1) an aiding-and-abetting claim that alleges

6  that CS&Co. was "a knowing contributor to and beneficiary of Schwab Charitable's fiduciary

7  breaches and unlawful conduct," FAC ¶¶ 128-32, and (2) an ancillary claim under California's

8  UCL that relies on the same aiding-and-abetting claim, *id*. ¶¶ 138-39, and on an alleged violation

9  of the Uniform Prudent Management of Institutional Funds Act ("UPMIFA"), Cal. Prob. Code

10 § 18501 *et seq.*, *see* FAC ¶¶ 146-47.  Accordingly, Pinkert's claims against CS&Co. are entirely

11 dependent on his claims against the Charitable Defendants and fail for the same reasons those

12 claims fail, as set forth in detail in the Charitable Defendants' motion to dismiss.

13      Specifically, as demonstrated by the Charitable Defendants, Pinkert lacks standing to assert

14 any claim against all Defendants for two reasons. First, Pinkert fails to allege any injury to himself

15 sufficient to confer Article III standing to assert any claim presented in the FAC. Second, Pinkert

16 does not meet the statutory standing requirements to sue a California public benefit corporation or

17 its directors for alleged mismanagement of the corporation's assets because he is not a member of

18 the Fund and does not hold any reversionary, contractual, or property interest in his donations.[5]

19      Even if Pinkert had standing, his breach of fiduciary duty claims would fail because he fails

20 to plead the Charitable Defendants took any action that is not protected by the business judgment

21 rule and that constitutes a breach of an applicable fiduciary duty. It was well within the Charitable

22 Defendants' business judgment to determine independently how to invest the money that had been

23 donated to the Fund, and they had no obligation to make those decisions based solely on which

24 investment opportunities offered the lowest fees. To the contrary, the Charitable Defendants were

25

26 where the plaintiff refers extensively to it).

27 [5] Pinkert's claims against the Fund's directors, like those against CS&Co., are derivative and belong
   to the Fund for the same reasons outlined in this Motion and in the Charitable Defendants' motion
28 to dismiss filed on February 26, 2021.

permitted—and expected—to consider factors other than price when selecting investment options, and they were not required to "scour the market to find and offer the cheapest possible fund." *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009); *see also White v. Chevron Corp.*, 2017 WL 2352137, at *12, *14 (N.D. Cal. May 31, 2017); *Kong v. Trader Joe's Co.*, 2020 WL 5814102, at *4 (C.D. Cal. Sept. 24, 2020). Since Pinkert's claims turn entirely on the erroneous theory that the Charitable Defendants had a duty to invest in products with the lowest fees, his claims against all of the Defendants fail as a matter of law.

### B.   Pinkert Lacks Standing To Assert Any Claims That Belong To The Fund, Including His Claims Against CS&Co.

Pinkert's claims against CS&Co. suffer another fatal flaw: they each seek to vindicate injuries to the Fund, not to him. These clams therefore belong exclusively to the Fund and must be brought, if at all, in its name. Pinkert does not allege that he may usurp those claims and assert them in his own name.

### 1.   The Fund's Rights And Duties Are Governed By The California Corporations Code, Not Common Law.

The Fund is a creature of statute, not common law, and its rights and duties—as well as those of its directors—are governed by statute. The Fund is a nonprofit public benefit corporation formed under § 5110 *et. seq.* of the California Corporations Code, which sets forth in express detail the rights and duties of the Fund and its directors, Cal. Corp. Code § 5231, as well as its rights to pursue litigation on its behalf, in its own name, *id.* § 5710. Indeed, the "course of conduct, parties, things affected, limitations and exceptions" that apply to a California public benefit corporation like the Fund "are minutely described" by the Corporations Code, such that it necessarily preempts the common law. *San Diego Unified Port Dist. v. Monsanto Co.*, 2020 WL 1479071, at *14 (S.D. Cal. Mar. 26, 2020); *F.D.I.C. v. Ching*, 2014 WL 3361974, at *4 (E.D. Cal. July 8, 2014).

As a result, the appropriate reference for the Charitable Defendants' duties and rights is the Corporations Code, not the common law. *See, e.g., Monsanto Co.*, 2020 WL 1479071, at *14 (holding that the "general rule" is that statutes supplant common law if it appears that the legislature

intended to cover the entire subject); *see also Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1156 (E.D. Cal. 2017) (same); *Pac. Scene, Inc. v. Penasquitos, Inc.*, 46 Cal. 3d 407, 409-10 (1988) (concluding that the legislature "had generally occupied the field with respect to the remedies available to the former shareholders of dissolved corporations" in various sections of the Corporations Code, thus "preempting antecedent common law causes of action."); *Ching*, 2014 WL 3361974, at *5 (holding that the Corporations Code preempted common-law principles where the legislature had delineated the duties of directors to fiduciaries when making a distribution and the duties of directors to creditors in various sections of the Code).

Here, there is no question that the California State Legislature sought to preempt common-law principles.  The statutory scheme at issue here was drafted for the purpose of "eliminat[ing] ambiguities, conflicting and redundant provisions, and to present the New Law in a clear and logical manner," as it was to represent "a comprehensive revision of the Nonprofit Corporation Law." ASSEMBLY SELECT COMMITTEE ON REVISION OF THE NONPROFIT CORPORATIONS CODE, REPORT OF THE ASSEMBLY SELECT COMMITTEE ON REVISION OF THE NONPROFIT CORPORATIONS CODE 1 (Cal. 1979), https://bit.ly/2LUiO5I.  Thus, the drafters intended this statutory scheme to cover the entire subject of nonprofit corporate law, setting forth "in one division of the Corporations Code, the principles of corporate law that apply to the formation, internal governance and dissolution of nonprofit corporations and to answer some of the unique questions such corporations present." *Id.* at 2.

Pinkert cannot evade the Corporations Code by retreating into common law.  The Legislature left no room for the common law to exist in this space, and any attempt to invoke common-law principles runs afoul of the Legislature's intent to draft an overriding statutory scheme and of well-settled legal principles that specifically address this conflict.  Further, as a practical matter, granting credence to Pinkert's theory would suggest that all legislation around nonprofit public benefit corporations is rendered meaningless by the common law when dealing with charities.  That cannot have been the intended result of this statutory regime.  Thus, the Fund's rights and duties are governed solely by the California Corporations Code.

1    Pinkert relies in the FAC on *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith,*

2   *Inc.*, 68 Cal. App. 4th 445 (1998), for the proposition that common-law standards should apply over

3   a well-settled statutory regime and permit a donor to sue a third party directly for aiding and abetting

4   a trustee's (or director's) breach of fiduciary duty. *See* FAC ¶¶ 10, 110.  But *Atascedero* did not

5   involve a nonprofit public benefit corporation governed by the Corporations Code; it addressed a

6   statutory investment trust operated by a county and formed under a different statute that does not,

7   in contrast to the Corporations Code, provide a reticulated mechanism for suing third parties on

8   such entity's behalf. *Atascadero*, 68 Cal. App. 4th at 460-61; Cal. Gov. Code § 27100.1.

9    The FAC also relies on *L.B. Research & Education Foundation v. UCLA Foundation*, 130

10  Cal. App. 4th 171 (2005), for the same proposition, but it, too, is inapposite.  Although *L.B.*

11  *Research* did involve a nonprofit public benefit corporation, it addressed a contractual relationship

12  through which the plaintiff donor retained a reversionary interest over his donations.  The defendant

13  ignored the donor's instructions, breaching a freestanding contract. *Id.* at 175.  The court upheld

14  the case on a breach-of-contract theory.  The court then went on to state that although there was no

15  charitable trust, had one existed, the donor could have enforced it because of the special interest

16  created by the specific contractual interests and conditions that accompanied the donation.  *Id.* at

17  180-81.  This latter part of the court's discussion was "dicta," as California courts subsequently

18  have noted. *Patton v. Sherwood*, 152 Cal. App. 4th 339, 343 (2007).  Additionally, and importantly,

19  *L.B. Research* says *nothing* about who directs a claim against a third party that belongs to the public

20  benefit corporation.

21            **2.     Pinkert's Claims Belong To The Fund.**

22    The FAC concedes that Pinkert is seeking to remedy an alleged harm to the Fund, in that he

23  seeks to disgorge fees from CS&Co.  FAC ¶ 132.  The Corporations Code delineates those who

24  may assert a claim on behalf of the Fund.  Section 5710 of the Corporations Code mandates that

25  "[n]o action may be instituted or maintained in the right of any corporation" unless the plaintiff

26  alleges: (1) "that plaintiff was a member [of the corporation] at the time of the transaction or any

27  part thereof of which plaintiff complains;" (2) "with particularity," his "efforts to secure from the

28

board such action as plaintiff desires, or the reasons for not making such effort;" and (3) that he has notified the corporation in writing of the claims the plaintiff intends to assert. Cal. Corp. Code § 5710(b)(2). This limitation is consistent with restrictions placed on shareholders of other corporations to assert claims for the corporations. *See id.* § 800(b). Such requirements exist because "[i]t is fundamental that a corporation is a legal entity that is distinct from its shareholders" and members, and "[t]he authority to manage the business and affairs of a corporation is vested in its board of directors, not its shareholders" or members. *Grosset v. Wenaas*, 42 Cal. 4th 1100, 1108 (2008).[6] "This includes the authority to commence, defend, and control actions on behalf of the corporation." *Id.* "Because a corporation exists as a separate legal entity, the shareholders [or members] have no direct cause of action or right of recovery against those who have harmed it." *Id.*

To determine whether a plaintiff is seeking to maintain a claim "in the . . . right" of a corporation, California courts consider "if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation to prevent the dissipation of its assets." *Bader*, 179 Cal. App. 4th at 793 (quoting *Jones v. H.F. Ahmanson & Co.*, 1 Cal. 3d 93, 106 (1969)); *accord Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The Ninth Circuit, applying California law, has held that the appropriate inquiry is "[w]ho suffered the alleged harm . . . and who would receive the benefit of the recovery or other remedy." *N.Y. City Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010) (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004)). Moreover, to establish a direct action, the "claimed direct injury must be independent of any alleged injury to the corporation," the plaintiff "must demonstrate that the duty breached was owed to" him or her, "and that he or she can prevail

---

[6] As recognized by the Ninth Circuit, demand requirements support "the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." *Towers v. Iger*, 912 F.3d 523, 528 (9th Cir. 2018) (internal quotation marks omitted). Indeed, "[b]y its very nature the derivative action impinges on the managerial freedom of directors. Hence, the demand requirement exists as a threshold, first to insure the stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits." *Id.* (internal quotation marks omitted).

without showing an injury to the corporation." *Id*. Here, the FAC confirms that Pinkert is attempting to assert a claim against CS&Co. that belongs to the Fund.

*First*, the sole remedy that Pinkert seeks on his aiding-and-abetting claim is disgorgement of funds *paid by the Fund to CS&Co.* FAC ¶ 132 (seeking "disgorgement of all profits received by CS&Co."). In so doing, Pinkert seeks to "recover assets for the corporation," which is the hallmark of a derivative claim. *Bader*, 179 Cal. App. 4th at 793; *see also RK Ventures, Inc. v. City of Seattle*, 307 F. 3d 1045, 1057 (9th Cir. 2002) ("[i]njury to the corporation is not cognizable as injury to the shareholders, for purposes of the standing requirements" (citation and internal quotation marks omitted)). Pinkert acknowledges that legal title to the funds in his account passed irrevocably to the Fund at the time of his donation. FAC ¶ 7.

*Second*, Pinkert's fundamental claim that the Fund's directors and CS&Co. mismanaged the Fund's assets by investing them in a manner that generated excessive costs and fees is paradigmatically a derivative claim. *See, e.g.*, *Avikian v. WTC Fin. Corp.*, 98 Cal. App. 4th 1108, 1115 (2002) (affirming dismissal of derivative claims where "appellants' core claim is that defendants mismanaged [the company], and entered into self-serving deals to sell [corporate] assets to third parties"); *see also Pareto*, 139 F.3d at 699 (allegations that bank's directors were "mismanaging its operation . . . describe a direct injury to the bank, not the individual stockholders"). Stated differently, "[u]nder California law, a shareholder *cannot* bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth)." *Schuster v. Gardner*, 127 Cal. App. 4th 305, 312 (2005) (emphasis in original) (citing *Friedman,* Cal. Practice Guide: Corporations ¶ 6:601.1 (2003)). The same logic applies with equal if not greater force to members of a nonprofit public benefit corporation.

By contrast, to the extent they are even legally redressable, the purported shortcomings to "achieve [Pinkert's] charitable goals," *id*. ¶ 29, are incidental to the alleged harm to the Fund corpus. *See Shuster*, 127 Cal. App. 4th at 313 ("An individual cause of action exists only if damages of the shareholders were not incidental to damages to the corporation."). At best, Pinkert's alleged

1   harm is speculative and boils down to a theory that Pinkert needs to contribute more money (in an
2   unspecified amount) into his account to help build *the Fund's assets* to make up for the money *the*
3   *Fund* loses through these expenses so that *the Fund* can make more charitable gifts. Such
4   "injuries"—even if they were legally cognizable—would be plainly derivative of the *Fund's*
5   ostensible financial injury. As a result, the claims Pinkert asserts against CS&Co. belong to the
6   Fund.

7            **3.      Pinkert Does Not Have Standing To Assert Derivative Claims On Behalf
8                      Of The Fund.**

9            The California Corporations Code imposes strict limitations on who may assert a claim on
10   the Fund's behalf. Only a "member" of a nonprofit public benefit corporation may assert a
11   derivative claim on behalf of the corporation. Cal. Corp. Code § 5710(b)(1). Under California
12   Corporations Code § 5056, a "[m]ember" of a California corporation is

13            any person who, pursuant to a specific provision of a corporation's articles or
              bylaws, has the right to vote for the election of a director or directors or on a
14            disposition of all or substantially all of the assets of a corporation or on a merger or
              on a dissolution unless the provision granting such right to vote is only effective as
15            a result of paragraph (2) of subdivision (a) of Section 7132. "Member" also means
              any person who is designated in the articles or bylaws as a member and, pursuant
16            to a specific provision of a corporation's articles or bylaws, has the right to vote on
              changes to the articles or bylaws.
17

18   *Id.* § 5056(a). Pinkert has not alleged that he meets any of these conditions. Nor could he, as the
19   Fund's Amended Articles of Incorporation state that it has no members.[7]

20            Instead, Pinkert hangs his right to bring suit on the Fund's behalf on his status as a donor.
21   FAC ¶¶ 28-29. But no statute recognizes donors as among the class of individuals who can assert
22   derivative claims. *American Center for Education, Inc. v. Cavnar*, 80 Cal. App. 3d 476 (1978), is
23   instructive. There, the founder of a nonprofit corporation who no longer served as an officer,
24   director, or employee sued the corporation's directors on the corporation's behalf. The court

25   _____

26   [7] *See* July 19, 2007 Amendment to Articles of Incorporation, ¶ 4, https://bit.ly/3drHzBw ("The
     corporation has no members."). The Court can take judicial notice of the Fund's articles of
27   incorporation because they are filed with a state agency. *See Horn v. Azusa Pac. Univ.*, 2019 WL
     9044606, at *5 (C.D. Cal. Jan. 14, 2019) (taking judicial notice of nonprofit organization's articles
28   of incorporation filed with the California Secretary of State).

dismissed his claims, holding that he had "no authority to institute legal proceedings in the name of the corporation." *Id.* at 498. The court observed that such a lawsuit could be brought by a limited set of persons, including the Attorney General, "[b]ut other persons, *even including donors*, cannot maintain such actions." *Id.* (emphasis added). Pinkert's decision to donate money to the Fund years ago does not enable him now to pursue litigation on the Fund's behalf to recover certain fees paid by it indirectly to CS&Co.

Pinkert's reliance on *Fairbairn v. Fidelity Investments Charitable Gift Fund*, 2018 WL 6199684 (N.D. Cal. Nov. 28, 2018), is misplaced. In *Fairbairn*, donors to a DAF asserted breach of contract and negligence claims against a DAF's sponsoring organization—a Massachusetts trust—for selling shares plaintiffs donated in a manner contrary to promises allegedly made to the plaintiffs in soliciting their donation. *Id.* at *2. *Fairbairn* said nothing about whether those same donors would have standing to assert claims against *a third party* for aiding and abetting. In fact, *Fairbairn* contains no discussion whatsoever of whether donors may sue on a charity's behalf, as Pinkert attempts to do here.[8]

### 4.   Even If Donors Could Seek To Assert Derivative Claims On Behalf Of The Fund, Pinkert Fails To Meet The Statutory Prerequisites For Asserting His Derivative Claims Against CS&Co.

Even if donors could assert a derivative claim on behalf of a nonprofit public benefit corporation, Pinkert's claims against CS&Co. still would be fatally flawed because Pinkert has not followed any of the procedural requirements for asserting a derivative claim.

To bring a derivative claim on behalf of a nonprofit public benefit corporation, Pinkert must allege "with particularity" the following: "plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and . . . that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the amended complaint

---

[8] For the reasons set forth in the Charitable Defendants' motion, *Fairbairn* should not be read to provide any basis for concluding that Pinkert has standing to assert any claim against the Charitable Defendants. But even if this Court concludes that standing does exist for Pinkert to sue the Charitable Defendants, this Court still can and should conclude that standing does not exist to assert claims that belong to the Fund against CS&Co.

which plaintiff proposes to file." Cal. Corp. Code § 5710(b)(2). Similarly, Federal Rule of Civil Procedure 23.1 requires a plaintiff asserting a derivative action to plead, among other things, that he was a "shareholder or member" of the corporation at the time of suit and allege "with particularity" "any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and . . . the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b).

Pinkert fails to allege that he made any effort to convince the directors of the Fund to pursue any claim against CS&Co. He further fails to identify any reason he was unable to do so or any basis for believing that such efforts would have been futile. Courts routinely dismiss derivative claims where, as here, the plaintiff fails to meet the demand requirements of the Corporations Code and Rule 23.1. *See, e.g.*, *Ind. Elec. Workers Pension Tr. Fund, IBEW v. Dunn*, 352 F. App'x 157, 161 (9th Cir. 2009) (affirming district court's dismissal of derivative claim where plaintiff failed to allege such demand would be futile); *accord Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008); *In re Paypal Holdings, Inc. S'holder Derivative Litig.*, 2018 WL 466527, at *2, *7 (N.D. Cal. Jan. 18, 2018); *Henry v. Tyler*, 2020 WL 353483, at *5 (N.D. Cal. Jan. 21, 2020).

**C.      Even If Pinkert Could Assert A Claim On The Fund's Behalf, He Fails Adequately To Allege Aiding and Abetting Breach of Fiduciary Duty.**

Pinkert's aiding-and-abetting claim is merely a crude reformulation of his defunct, insufficient claim for "contribution." *Compare* FAC ¶¶ 128-32, *with* Complaint, ¶¶ 124-27, ECF No. 1. And, as the original complaint did, the FAC simply ignores the relevant law, failing even to make a "[t]hreadbare recital[] of the elements of" aiding and abetting. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be dismissed.

California law recognizes two theories of aiding and abetting a breach of fiduciary duty. The FAC does not specify which theory Pinkert invokes or identify the elements of either. The first theory is akin to civil conspiracy, requiring the defendant to owe an independent fiduciary duty to the victim and "concerted action" with a co-fiduciary. *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1477 (2014), *as modified* (May 27, 2014) (citing inter alia *Casey v.*

*U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005)).  The second theory requires no independent fiduciary duty and instead punishes the commission of an independent tort, "a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act."  *Id.* (quoting *Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 823 n.10 (2005)).  Pinkert does not allege CS&Co. owed him any fiduciary duty.  So, if he is to recover, it must be through the second theory.

To survive a motion to dismiss under this theory, Pinkert must allege that CS&Co. (1) knew of the Charitable Defendants' breach of the duty, and (2) with that knowledge, gave "substantial assistance or encouragement to the [Charitable Defendants] to so act."  *Hurtado Lucero*, 2020 WL 553941, at *4 (quoting *Casey*, 127 Cal. App. 4th at 1144); *see also id.* at *7 (dismissing with prejudice a claim for aiding and abetting a breach of fiduciary duty).  As to the knowledge requirement, the claim fails unless "the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted."  *Id.* (quoting *Casey*, 127 Cal. App. 4th at 1145).  This standard is not met by mere "suspicion" or "surmise" or even by knowledge the principal was involved generally in illegal or wrongful conduct.  *Id.* (quoting *Casey*, 127 Cal. App. 4th at 1147, 1152).  Instead, it requires specific knowledge of the "precisely" identified breach.  *Id.* (quoting *Casey*, 127 Cal. App. 4th at 1149).  As to the second requirement, Pinkert also must show "intentional participation *with knowledge of the object to be attained*."  *Id.* (quoting *Casey*, 127 Cal. App. 4th at 1146) (emphasis in original).  This participation must have been "a substantial factor in causing the harm suffered."  *Goonewardene v. ADP, LLC*, 5 Cal. App. 5th 154, 189 (2016), *as modified on denial of reh'g* (Nov. 29, 2016), *rev'd on other grounds and remanded,* 434 P.3d 124 (2019).

Pinkert does not satisfy these standards.  And even if he did, his claim is time-barred.

### 1.   Pinkert Fails To Allege Adequately That Charitable Defendants Breached Their Fiduciary Duty.

At the outset, Pinkert's aiding-and-abetting claim fails because he does not adequately allege an underlying breach of fiduciary duty.  *See supra* Section IV.A.  Without such a breach,

there was nothing for CS&Co. to aid or abet.

## 2.    Pinkert Fails To Allege CS&Co. Knew Of Any Breach.

Even had the Charitable Defendants breached a fiduciary duty, Pinkert fails to allege CS&Co. "had actual knowledge of the specific primary wrong the defendant substantially assisted." *Hurtado Lucero*, 2020 WL 553941, at *4 (quoting *Casey*, 127 Cal. App. 4th at 1145). Pinkert does not allege that CS&Co. knew of any malfeasance. Instead, he alleges only that CS&Co. "was cognizant of the availability of and [the Fund's] eligibility for institutionally priced share classes and superior index and money market fund investments." FAC ¶ 131.[9]  This is legally insufficient for at least two reasons.

First, it is not a breach of fiduciary duty simply to purchase the more expensive of two products. It follows that CS&Co.'s knowledge of the Fund's putative failure to choose cheaper products is not knowledge of any breach. At least three circuit courts—including the Ninth Circuit—have concluded that investing in retail-class mutual funds over comparable institutional-class products is not a breach of fiduciary duty. *Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on unrelated grounds,* 575 U.S. 523 (2015); *Loomis v. Exelon Corp.*, 658 F.3d 667, 672 (7th Cir. 2011); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009). As the Ninth Circuit has recognized, "[t]here are simply too many relevant considerations for a fiduciary, for that type of bright-line approach to prudence to be tenable." *Tibble*, 729 F.3d at 1135.

This Court recently affirmed this principle at least twice. *See Davis v. Salesforce.com, Inc.*, 2020 WL 5893405 (N.D. Cal. Oct. 5, 2020) (dismissing allegations that defendants breached their fiduciary duty to 401(k) plan participants by failing to offer lower-cost classes of certain mutual funds); *Dorman v. Charles Schwab Corp.*, 2018 WL 6803738, at *3 (N.D. Cal. Sept. 20, 2018)

---

[9] No doubt aware of its thinness, Pinkert repeats this allegation several times, albeit with slightly different verbiage. *See* FAC ¶ 106 ("Schwab & Co. had knowledge that superior alternatives existed to its proprietary money market and index funds. Schwab & Co. is aware of these alternative options . . . ."); *id.* ¶ 107 ("Schwab & Co. also had knowledge of the excess administrative fees paid by [the Fund] given that it was a party to the custodial services contract. Further, given its industry status, Schwab & Co. had knowledge that [the Fund] was paying many times above marketplace rates."); *id.* ¶ 108 ("Schwab & Co. was also aware that [the Fund] failed to obtain the lowest-cost share class for its investment options."); *id.* ¶ 110 ("Schwab & Co. knew that the Schwab DAF was eligible for these lower-cost share classes . . . .").

("[I]n choosing funds, a fiduciary considers not only modest differences in price and performance, but also other relevant factors, such as strategy, security lending practices, economic cycles, and market fluctuations."). While it is true that "retail-class mutual funds . . . generally have higher expense ratios than their institutional-class counterparts," a fiduciary need not "scour the market to find and offer the cheapest possible fund." *Tibble*, 729 F.3d at 1135 (citations omitted). It follows that CS&Co.'s mere knowledge that Charitable Defendants did not select investment options with the lowest fees is not knowledge of a breach of fiduciary duty. And that is the only knowledge Pinkert alleges.

Second, even if the Fund's choice of such investment options could constitute a breach of fiduciary duty, CS&Co.'s knowledge of the availability of cheaper products does not rise to knowledge of the Fund's alleged breach. California courts have gone to great pains to make clear that "knowledge" in this context does not merely mean familiarity with the principal defendant's business—or even familiarity with generally illicit activities. Instead, the complaint must allege "knowledge of the *object* to be attained," *i.e.*, the tortious nature of the scheme as a whole and the *goal* of the scheme. *Casey*, 127 Cal. App. 4th at 1146 (quoting *Lomita Land & Water Co. v. Robinson*, 97 P. 10, 15 (1908)) (emphasis added); *accord id.* ("[A] defendant can only aid and abet another's tort if the defendant knows what 'that tort' is."). It is not enough that CS&Co. knew of the activities that allegedly constituted a breach. Instead, it must have known of the breach as a whole and of its aims, such that it could "reach a conscious decision to participate in" it. *Id.* at 1146 (citation omitted); *accord Hurtado Lucero*, 2020 WL 553941, at *6-7 (applying *Casey* to dismiss aiding-and-abetting claim when plaintiff pleaded only that defendant knew fiduciary paid less for certain securities than plaintiff investor); *McFall v. Stacy & Witbeck, Inc.*, 2016 WL 6248882, at *6 (N.D. Cal. Oct. 26, 2016) (dismissing aiding-and-abetting claim against valuation firm because it lacked knowledge that fiduciary was attempting to manipulate valuation).

In *Casey*, the court affirmed the dismissal of an aiding-and-abetting claim and described this distinction by looking to *In re Sharp International Corp.*, 281 B.R. 506 (Bankr. E.D.N.Y. 2002). In *Sharp*, the principal tortfeasors, who were officers in a corporation, fraudulently raised

capital from investors and lenders and diverted it to their own interests. The corporation sued one such lender on an aiding-and-abetting theory. The corporation alleged the lender "reviewed certain reports that revealed [the principals] were fraudulently inflating [the plaintiff's] receivables." *Casey*, 127 Cal. App. 4th at 1147 (citing *Sharp*, 281 B.R. at 514-15). The *Sharp* court held that this allegation failed to "establish[] actual knowledge of the diversion." *Id.* (citation omitted). Most importantly, although the lender had knowledge of a bad act, it lacked knowledge of the *reason* for the bad act. *Id.* ("The fact that a company is inflating its receivables does not necessarily mean that the company's principals are looting it." (quoting *Sharp*, 281 B.R. at 515)). Here, as in *Sharp*, the most Pinkert alleges is knowledge of the putative "bad act"—the failure to purchase institutional-class shares and other investment products for which there were purported alternatives with lower fees. Of course, that is not a bad act at all. But even if it were, the FAC fails to allege knowledge of the *object* of that act. Pinkert failed to allege knowledge of the breach's tortious nature or of its object, such that CS&Co. could "reach a conscious decision to participate in" it. *Id.* at 1146 (citation omitted).[10]

### 3.  Pinkert Fails To Allege CS&Co. Substantially Assisted In Any Breach.

Pinkert similarly fails to allege that CS&Co. provided the Charitable Defendants "substantial assistance." *Hurtado Lucero*, 2020 WL 553941, at *4 (quoting *Casey*, 127 Cal. App. 4th at 1144). Nor does he allege CS&Co. "intentional[ly] participat[ed] with knowledge of the object to be attained," *id.* (quoting *Casey*, 127 Cal. App. 4th at 1146), or that any such assistance "was a substantial factor in causing the harm suffered," *Goonewardene*, 5 Cal. App. 5th at 189.

At most, Pinkert alleges that CS&Co. contracted with the Fund to administer the relevant investments.[11] But CS&Co.'s purported efforts to obtain terms favorable to it through arm's-length

---

[10] Elsewhere, Pinkert alleges the Fund "was established with the support of" CS&Co. and that the two entities share employees. FAC ¶ 105. But he does not identify a single specific shared employee or specifically allege that any employees knew of the breach. Nor does he allege that CS&Co.'s support of the Fund entailed any specific knowledge of any specific breach. *See Hurtado Lucero*, 2020 WL 553941, at *4 (defendant must have actual, specific knowledge, of the "precisely" identified breach (quoting *Casey*, 127 Cal. App. 4th at 1147)).

[11] *See, e.g.*, FAC ¶ 105 (alleging CS&Co. "played an active role in [the Fund's] breach by processing the transactions within the Schwab DAF associated with the at-issue investment pools and receiving and retaining the extra fees"); *id.* ¶ 107 (alleging CS&Co. "facilitated this fiduciary breach by leveraging its close relationship with [the Fund] to secure this contract").

negotiations is normal business practice. *See AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951, 960 (N.D. Cal. 2014) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001), for proposition that a bidder's attempt to reduce sales price through arm's-length negotiations does not create liability for aiding and abetting). Aiding and abetting "necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Navarrete v. Meyer*, 237 Cal. App. 4th 1276, 1287 n.3 (2015), *as modified* (July 22, 2015) (quoting *Howard v. Superior Court*, 2 Cal.App.4th 745, 749 (1992)). Pinkert identifies no such decision and no such purpose.

Pinkert similarly fails to allege that CS&Co.'s actions were "a substantial factor in causing the harm suffered." *Goonewardene*, 5 Cal. App. 5th at 189 (citation omitted); *see also id.* (dismissing aiding and abetting claim because complaint did not "contain[] specific allegations" regarding causation). California courts have made clear that "causation is an essential element of an aiding-and-abetting claim," such that a complaint must "contain[] specific allegations describing how" the defendant caused the harm in question. *Id.* But the FAC contains not even a threadbare allegation of causation. *See* FAC ¶¶ 128-32. Moreover, it does not allege the simple act of administering a portion of the Fund's investments was a "substantial factor" in any harm the Fund effected.

Finally, consistent with his misuse of *Atascadero* elsewhere, *see supra* Sections IV.B.1 and IV.B.5, Pinkert cites that case for the proposition that CS&Co. "is a third party who 'received and retained trust property from the trustee in knowing breach of trust.'" FAC ¶ 110 (quoting *Atascadero*, 68 Cal. App. 4th at 462). The context of this language, however, makes clear that it has nothing to do with the present case:

> Thus, under long-established trust law, trust beneficiaries retain the right to bring claims directly against third parties who have induced the trustee to commit a breach of trust, aided or abetted such a breach by the trustee, or received and retained trust property from the trustee in knowing breach of trust.

*Atascadero*, 68 Cal. App. 4th at 462. This passage—in a case that has nothing to do with the conduct of a public benefit corporation—addresses *standing* to sue on behalf of a trust. It does not address the parameters of aiding-and-abetting liability, and it has nothing to do with Pinkert, who

1    is not a beneficiary of the Fund.

2              **4.      Pinkert's Claim For Aiding And Abetting Is Time-Barred.**

3              Even if it were valid, Pinkert's aiding-and-abetting claim is time-barred.  According to the

4    FAC, the alleged malfeasance has spanned at least "seven consecutive calendar years," FAC ¶ 87,

5    and Pinkert's donations have flowed to the objected-to fund "[f]or at least the past five years," *id.*

6    ¶ 27.  But the statute of limitations is, at most, four years.

7              The statute of limitations for aiding and abetting "is the same as the underlying tort."  *Am.*

8    *Master Lease*, 225 Cal. App. 4th at 1478 (citations omitted).  "The statute of limitations for breach

9    of fiduciary duty is three years or four years, depending on whether the breach is fraudulent or

10   nonfraudulent."   *Id.* at 1479 (citation omitted).  Here, it does not matter which period applies, as

11   the cause of action accrued over four years ago, in 2007, when Pinkert's donation was first invested

12   in the Schwab Treasury Inflation Protected Securities Index Fund, one of the fourteen offered

13   investment pools, and the product of which he now complains.  *See* FAC ¶ 27.

14             A claim for aiding and abetting a breach of fiduciary duty accrues when "under the

15   substantive law, the wrongful act is done, or the wrongful result occurs, and the consequent liability

16   arises."  *McFall*, 2016 WL 6248882, at *3 (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397

17   (1999)).  The act of which Pinkert complains began at least seven years ago.  And, according to the

18   FAC, that act first harmed Pinkert at least five years ago, when donations of his were first used to

19   purchase shares of the Schwab Treasury Inflation Protected Securities Index Fund.  FAC ¶ 27.  At

20   that point, Pinkert knew or should have known of all elements of the breach of fiduciary duty of

21   which he complains.  *Cf. WA Sw. 2, LLC v. First Am. Title Ins. Co.*, 240 Cal. App. 4th 148, 156

22   (2015) (claim accrued "when plaintiffs made what they now deem to be unsuitable investments");

23   *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 418-19 (S.D.N.Y. 2008) (disclosures

24   in a prospectus sufficed to commence statute of limitations),  *aff'd,* 325 F. App'x 31 (2d Cir. 2009).

25   For example, a 2014 prospectus contains all relevant fees associated with the Schwab Treasury

26   Inflation Protected Securities Index Fund.  *Prospectus, Schwab Bond Funds*, SEC.gov (Dec. 16,

27   2014), https://bit.ly/2NfYWL9.   Pinkert alleges that "[a] prudent review of the marketplace of

28

similar index funds would have revealed options" with lower fees. FAC ¶ 84. But he was just as capable of that review when he donated to the Fund well before the limitations period.

### D.    Pinkert Fails To State A UCL Claim Against CS&Co.

#### 1.    Pinkert Fails To Allege Any Predicate Claim Against CS&Co.

Pinkert's UCL claim is equally unavailing. The UCL authorizes injured consumers to "borrow" violations of other laws for purposes of establishing UCL liability, but the underlying claim must be cognizable for the UCL claim to survive a motion to dismiss. *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 920 (N.D. Cal. 2013); *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). In other words, the UCL cannot be invoked to create a cause of action where the underlying cause of action would fail. *See Glen K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) ("[B]readth of § 17200 does not give a plaintiff license to 'plead around' the absolute bars to relief contained in other possible causes of action by recasting those causes of action . . . for unfair competition.").

Here, the only predicate claim pleaded against CS&Co. is the facially deficient claim for aiding and abetting. *See supra* Section IV.C. The UCL claim against CS&Co must also fail.[12]

#### 2.    Pinkert Fails To Allege Any Personal Loss Of Money Or Property To Support His UCL Claim.

Pinkert's UCL claim also warrants dismissal given another glaring deficiency of the FAC— his failure to allege any personal loss of money or property. To state a UCL claim, a plaintiff must allege that he, personally, "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. This injury requirement is substantially narrower than the injury requirement for Article III standing. *See, e.g.*, *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 324 (2011); *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 576 (2020) ("federal Article III standing is far broader than the standing requirement contained in section

---

[12] The same arguments apply with equal force to Pinkert's allegation that CS&Co. aided and abetted a violation of UPMIFA, Cal. Prob. Code § 18501 *et seq. See* FAC ¶¶ 146-47. There is no legal authority for the proposition that a violation of UPMIFA gives rise to a freestanding cause of action or can otherwise serve as a predicate to a UCL claim. And even if there were, for the reasons discussed above, the Fund did not violate its fiduciary duty, *supra* Section IV.A, and CS&Co. did not aid and abet any such violation, *supra* Section IV.C.

1    17200, which expressly requires a financial loss caused by the defendant's conduct."). Instead of

2    nontangible, dignitary, or reputational harms, "the relevant inquiry . . . is whether a defendant's

3    [alleged] unlawful conduct caused the plaintiff to part with money." *Mayron*, 54 Cal. App. 5th at

4    575.

5           Pinkert plainly does not allege that any breach of fiduciary duty caused him to "part with

6    money." The funds at issue in the FAC did not belong to Pinkert at the time of the alleged breach

7    and Pinkert does not allege that he *personally* lost even a single cent as a result of the alleged breach

8    of fiduciary duty. *Kwikset Corp.*, 51 Cal. 4th at 323 ("a private plaintiff filing suit . . . must establish

9    that he or she has *personally* suffered [economic] harm" (emphasis added)). Upon donation, legal

10   title to Pinkert's contribution passed to the Fund. FAC ¶¶ 5, 90. All Pinkert maintained thereafter

11   was the mere ability to make non-binding suggestions as to how his donation should be invested.

12   *Id.* ¶¶ 49-50. Pinkert alleges that "[a]s money is taken from his Schwab DAF to pay for

13   administrative and investment fees, [he] must contribute more to his Schwab DAF to achieve his

14   charitable goals." *Id.* ¶ 29. But regardless of the circumstances in which the donation was made

15   or when such donation was made, the result is the same—as soon as Pinkert relinquishes his

16   donation to the DAF, his rights in the donation are terminated. Pinkert also fails to allege with any

17   specificity how much of his donated funds went to objectionable fees or how much money he added

18   to his account to make up for such fees. Indeed, he fails to identify a single, specific donation he

19   made for this purpose. At best, Pinkert's alleged harm boils down to a harm against the Fund—

20   that Pinkert needs to put more money into his account to help build the Fund's assets to make up

21   for the money the Fund lost through these expenses. Because the economic harm alleged must be

22   personal to Pinkert, his claim fails.

23          Pinkert's attempts to circumvent this clear pleading requirement are unavailing. Pinkert

24   stresses that he retains advisory privileges, but he does not allege any interference with those

25   privileges. His noncompulsory advisory privileges continue to exist regardless of the amount of

26   money in his account. Pinkert is still able to make recommendations and the Fund is still free to

27   accept or reject them. The normal operation of the Fund does not diminish his advisory privileges

28

1    in any way.

2            More importantly, even if he had alleged interference with his advisory privileges, he does

3    not—and cannot—explain how any interference with his ability to "provide *noncompulsory*

4    recommendations, suggestions or consultative advice" about the use of funds he donated to the

5    Fund could be viewed as causing him a personal loss of money. *Id*. ¶ 7 (emphasis added).

6            Reduced advisory rights are not a cognizable injury to "money or property" under the UCL.

7    *See Kwikset Corp.*, 51 Cal. 4th at 323 (listing cognizable injuries). Pinkert attaches no economic

8    value to these "rights" to make non-binding suggestions to the Fund. Absent economic value,

9    diminution of such rights—which did not occur—cannot be considered any form of economic

10   harm. *See Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1554-55 (2011) (affirming

11   dismissal of UCL claim where alleged economic injury was "conjectural or hypothetical," rather

12   than "concrete and particularized").

13           The UCL's strict requirement that Pinkert allege an actual *financial* loss caused by the

14   purported misconduct is further reinforced by the limited remedies available to a litigant under the

15   UCL, which generally include *only* "injunctive relief and restitution." *Korea Supply Co. v.*

16   *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). A "nonrestitutionary disgorgement of

17   profits is not an available remedy in an individual action under the UCL." *Id*. at 1152. The

18   California Supreme Court prohibited the plaintiff in *Korea Supply Co.* from seeking such relief

19   "because plaintiff does not have an ownership interest in the money it seeks to recover from

20   defendants." *Id*. at 1149. The same is true here. Although Pinkert had no ownership interest in

21   any money used to pay fees to CS&Co., directly or indirectly, he nevertheless seeks

22   nonrestitutionary disgorgement of such fees that were paid *by the Fund*. *See* FAC ¶ 132; Prayer

23   for Relief G. Such relief is not available under the UCL. *Korea Supply Co.*, 29 Cal. 4th at 1148

24   ("This court has never approved of nonrestitutionary disgorgement of profits as a remedy under the

25   UCL."). Accordingly, any damages here would be limited only to restitution for the diminished

26   value of Pinkert's advisory rights, which are not alleged to have any economic value whatsoever.

27   Moreover, the fact that Pinkert seeks the disgorgement of fees *that belonged to the Fund* further

28

1   demonstrates that Pinkert is seeking to assert claims that do not belong to him.

2   **3.   Pinkert's UCL Claim Is Time-Barred.**

3   Pinkert's UCL claim also fails because it is time-barred, not only because it is predicated

4   on Pinkert's time-barred aiding-and-abetting claim, but also because UCL claims are themselves

5   subject to a four-year limitations period. *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1309

6   (S.D. Cal. 2014), *aff'd*, 816 F.3d 1170 (9th Cir. 2016). The limitations period would have begun

7   when "a reasonable person would have discovered the factual basis for a claim." *Aryeh v. Canon*

8   *Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1195 (2013). As discussed above, Pinkert knew everything he

9   needed to know about the circumstances of his claim over five years ago.

10   **V.    CONCLUSION**

11   The FAC should be dismissed in its entirety with prejudice.

12

13

14   Dated: February 26, 2021                    */s/ Joshua D. N. Hess*
                                                  Joshua D. N. Hess
15                                                Brian Raphel
                                                  DECHERT LLP
16                                                One Bush Street, Suite 1600
                                                  San Francisco, CA 94111-3513
17                                                Telephone: (415) 262-4500
                                                  Facsimile: (415) 262-4555
18                                                joshua.hess@dechert.com
                                                  brian.raphel@dechert.com
19
                                                  David A. Kotler
20                                                Samantha Rosa
                                                  DECHERT LLP
21                                                1095 Avenue of the Americas
                                                  New York, NY 10036
22                                                Telephone: (212) 698-3500
                                                  Facsimile: (212) 698-3599
23                                                david.kotler@dechert.com
                                                  samantha.rosa@dechert.com
24
                                                  *Counsel for Defendant Charles Schwab & Co., Inc.*
25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned certifies that on February 26, 2021, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Northern District of California, using the Court's Electronic Case Filing (ECF) system. The ECF system routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept this notice as service of this document by electronic means. Any party not receiving the Court's electronic notification will be sent a copy of the foregoing document.

Dated: February 26, 2021               DECHERT LLP


                              By:    /s/ *Joshua D. N. Hess*
                                     Joshua D. N. Hess

                              *Counsel for Defendant Charles Schwab & Co., Inc.*