David C. Marcus (SBN 158704)
david.marcus@wilmerhale.com
Christopher T. Casamassima (SBN 211280)
chris.casamassima@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: +1 213 443 5300
Facsimile: +1 213 443 5400

Alan E. Schoenfeld (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
Telephone: +1 212 937 7294
Facsimile: +1 212 230 8888

Andrew S. Dulberg (*pro hac vice*)
andrew.dulberg@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone: +1 617 526 6000
Facsimile: +1 617 526 5000

*Attorneys for Defendants Schwab Charitable
Fund, Schwab Charitable Board of Directors, and
Schwab Charitable Investment Oversight
Committee*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PHILIP PINKERT, individually and on behalf of a class of similarly situated individuals, and on behalf of the general public,<br><br>    Plaintiff,<br><br>    v.<br><br>SCHWAB CHARITABLE FUND, CHARLES SCHWAB & CO., SCHWAB CHARITABLE BOARD OF DIRECTORS, and SCHWAB CHARITABLE INVESTMENT OVERSIGHT COMMITTEE,<br><br>    Defendants. | Case No. 3:20-cv-07657-LB<br><br>**SCHWAB CHARITABLE DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>HEARING DATE: May 13, 2021<br>TIME: 9:30 a.m.<br>COURTROOM: B – 15th Floor<br>JUDGE: Hon. Laurel Beeler |

# TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................ 1

I.    Pinkert Lacks Article III Standing ................................................................ 1

    A.    Pinkert Has Not Adequately Pled An Economic Injury ......................... 1

    B.    Pinkert Has Not Adequately Pled Even A Non-Economic
        Injury .................................................................................................. 4

II.   Pinkert Lacks Statutory Standing .................................................................. 5

    A.    Pinkert Lacks Standing Under California Corporations
        Code §5142 ......................................................................................... 5

    B.    Pinkert Cannot Rely On Common-Law "Special Interest"
        Standing ............................................................................................. 6

    C.    Pinkert Lacks Standing To Pursue His UCL Claims .............................. 7

III.  Pinkert Fails To State A Claim ..................................................................... 7

    A.    Pinkert's Claim For Breach Of Common-Law Fiduciary
        Duties Fails ......................................................................................... 7

    B.    Pinkert's UCL Claim Fails ................................................................. 12

        1.    Pinkert fails to overcome the business judgment
            rule ......................................................................................... 12

        2.    Pinkert fails to adequately allege any breach of a
            fiduciary duty ........................................................................ 15

IV.   CONCLUSION ........................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................................4

*Barbera v. WMC Mortgage Corp.,*
    2006 WL 167632 (N.D. Cal. Jan. 19, 2006) ...........................................................13

*Benjamin v. United States Department of State,*
    2018 WL 1142124 (N.D. Cal. Mar. 2, 2018) ............................................................4

*Blantz v. California Department of Corrections & Rehabilitation,*
    727 F.3d 917 (9th Cir. 2013) ...................................................................................5

*Fairbairn v. Fidelity Investments Charitable Gift Fund,*
    2018 WL 6199684 (N.D. Cal. Nov. 28, 2018) ........................................................7

*Johnson v. Fujitsu Technology & Business of America, Inc.,*
    250 F. Supp. 3d 460 (N.D. Cal. 2017) ...................................................................15

*In re Lau Capital Funding, Inc.,*
    321 B.R. 287 (Bankr. C.D. Cal. 2005)....................................................................3

*Linder v. Golden Gate Bridge, Highway & Transportation District,*
    2015 WL 4623710 (N.D. Cal. Aug. 3, 2015) .....................................................4, 8

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)..................................................................................................4

*Main v. American Airlines Inc.,*
    248 F. Supp. 3d 786 (N.D. Tex. 2017) ..................................................................15

*Scouler & Co. v. Schwartz,*
    2012 WL 12897963 (N.D. Cal. Aug. 23, 2012) ....................................................14

*Sessions v. Morales-Santana,*
    137 S. Ct. 1678 (2017)..............................................................................................4

*Viralam v. Commissioner of Internal Revenue,*
    136 T.C. 151 (2011)..................................................................................................1

**State Cases**

*Berg & Berg Enterprises, LLC v. Boyle,*
    178 Cal. App. 4th 1020 (2009) ...............................................................................14

*California Chamber of Commerce v. State Air Resources Board*,
   10 Cal. App. 5th 604 (2017) ............................................................................................2

*Estate of Sigourney*,
   93 Cal. App. 4th 593 (2001) ..........................................................................................3

*Everest Investors 8 v. McNeil Partners*,
   114 Cal. App. 4th 411 (2003) .................................................................................13, 14

*Frances T. v. Village Green Owners Association*,
   42 Cal. 3d 490 (1986) ..................................................................................................11

*Habenicht v. Lissak*,
   78 Cal. 351 (1889) .....................................................................................................2, 3

*Holt v. College of Osteopathic Physicians & Surgeons*,
   61 Cal. 2d 750 (1964) ....................................................................................................6

*I.E. Associates v. Safeco Title Insurance Co.*,
   39 Cal. 3d 281 (1985) ....................................................................................................8

*Katz v. Chevron Corp.*,
   22 Cal. App. 4th 1352 (1994) ......................................................................................13

*Kingoschu Family Partners, LLC v. Public Storage*,
   2014 WL 787830 (Cal. Ct. App. Feb. 27, 2014) (unpublished) ...............................14

*Kruss v. Booth*,
   185 Cal. App. 4th 699 (2010) ......................................................................................14

*L.B. Research & Education Foundation v. UCLA Foundation*,
   130 Cal. App. 4th 171 (2005) ........................................................................................7

*Lee v. Interinsurance Exchange*,
   50 Cal. App. 4th 694 (1996) ..........................................................................12, 14, 15

*Leyte-Vidal v. Semel*,
   220 Cal. App. 4th 1001 (2013) ....................................................................................14

*O'Hara v. Grand Lodge Independent Order of Good Templars of California*,
   213 Cal. 131 (1931), *superseded by statute on other grounds, as recognized in*
   *Patton v. Sherwood*, 152 Cal. App. 4th 339 (2007) ..............................................5, 6

*Pacific Gas & Electric Co. v. Hart High-Voltage Apparatus Repair & Testing Co.*,
   18 Cal. App. 5th 415 (2017) ..........................................................................................2

*Patton v. Sherwood*,
   152 Cal. App. 4th 339 (2007) .....................................................................................6, 7

*Ritter & Ritter, Inc. v. Churchill Condominium Association*,
    166 Cal. App. 4th 103 (2008) ................................................................12

*Roth v. Jelley*,
    45 Cal. App. 5th 655 (2020) ...................................................................3

*S&A Biotech Investments, LLC v. Baruch*,
    2003 WL 22222206 (Cal. Ct. App. Sept. 26, 2003) (unpublished) ..........13

*Sprague v. Edwards*,
    48 Cal. 239 (1874) .................................................................................3

**Statutes, Rules, and Regulations**

26 U.S.C. §170(f)(18)(B) ............................................................................1

Cal. Corp. Code
    §5047.5(g) ............................................................................................12
    §5140 .....................................................................................................8
    §5142 ...............................................................................................*passim*
    §5210 .....................................................................................................8
    §5211 .....................................................................................................8
    §5212 .....................................................................................................8
    §5214 .....................................................................................................8
    §5220 .....................................................................................................8
    §5221 .....................................................................................................8
    §5222 .....................................................................................................8
    §5223 ..................................................................................................8, 9
    §5224 .....................................................................................................8
    §5225 .....................................................................................................8
    §5226 .....................................................................................................8
    §5227 .....................................................................................................8
    §5230 ..................................................................................................8, 9
    §5231 .........................................................................................8, 9, 10, 11
    §5232 .....................................................................................................8
    §5233 .........................................................................................8, 9, 10, 11
    §5235 .....................................................................................................9
    §5237 .....................................................................................................9
    §5240 ..................................................................................................8, 9
    §7231 ...................................................................................................11
    §7238 ...................................................................................................10

Cal. Prob. Code
    §§16000-16504 .....................................................................................9
    §16002 .................................................................................................10
    §16004(a) .............................................................................................10
    §16012 .................................................................................................10

Assembly Select Committee on the Revision of the Nonprofit Corporations Code,
  Summary of AB2180 and AB2181, The Proposed Nonprofit Public Benefit, Nonprofit
  Mutual Benefit, and Nonprofit Religious Corporation Law (July 27, 1978)..........................10

California Department of Corporations, Enrolled Bill Report (Sept. 25, 1978).............................8

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)...........................................................6

Restatement (Third) of Trusts (Am. Law Inst. 2012) ...............................................6, 11

Schwab Charitable Fund, *Program Policies* (updated Nov. 2020),
  https://www.schwabcharitable.org/public/file/P-5252372 ....................................1, 2

Pinkert's opposition confirms what his amended complaint already made clear:  that, having irrevocably ceded control over his donations to the Fund, he has no cognizable injury to establish Article III standing; that he does not fall within one of the few, narrow enumerated categories of persons with statutory standing to sue a California charity for breach of a charitable trust; and that his causes of action proceed under inapplicable law and are contrary to the law that does apply.  The Charitable Defendants' motion to dismiss should be granted, and the First Amended Complaint ("FAC") dismissed with prejudice.

## ARGUMENT

## I.    PINKERT LACKS ARTICLE III STANDING

### A.    Pinkert Has Not Adequately Pled An Economic Injury

Pinkert concedes that he gave up "legal title" to the assets that he donated to the Fund.  FAC ¶35.  He contends, however, that property rights include more than just legal title, and that he has standing because the Charitable Defendants' alleged misconduct harms other economic interests he retains in his donated assets.  Opp. 8-12.

Pinkert's argument is contrary to the law governing DAFs as well as the blackletter property law he cites.  In addition to ceding legal title over his donated assets, Pinkert has no legal right to possess any of the Fund's assets, now or in the future—he certainly alleges none.  Nor does he plausibly allege that he has a legal right to control the Fund's assets, like the right to transfer the Fund's assets to another person:  As the Charitable Defendants explained (Mot. 4-5, 7), to claim a charitable deduction, federal tax law requires that a DAF donor give up all "dominion and control" over donated assets, *Viralam v. Commissioner of Internal Revenue*, 136 T.C. 151, 162 (2011), and requires a DAF to assume "exclusive legal control" over donated assets, 26 U.S.C. §170(f)(18)(B).  Consistent with this governing tax law, the Fund's *Program Policies* explicitly provide that all assets contributed to the Fund are "subject to [the Fund's] exclusive legal authority and control," Schwab Charitable Fund, *Program Policies* 9 (updated Nov. 2020) ("*Program Policies*").

That should resolve the matter; Pinkert has no legal basis to claim any legally enforceable property interest in the Fund's assets, including any funds he donated.  Pinkert does not dispute

the Charitable Defendants' description of federal tax law, nor does he contest that the *Program Policies* govern his donations to the Fund. He argues only that federal tax law does not determine a party's property rights as a matter of state law, and that courts do not look at the "labels" parties use to describe the rights created by an agreement but instead look to the substance of the agreement. Opp. 9-10. Both points are irrelevant. Federal tax law doesn't dictate the status of Pinkert's donations for purposes of state property law. It does, however, corroborate that Pinkert ceded legal title to and control over the assets he contributed to the Fund—a fact that deprives him of any property interest under *state* law. And the *Program Policies* don't "label" anything; they constitute the *substance* of the agreement between Pinkert and the Fund and make clear that Pinkert has no legal authority or control over the assets he contributed to the Fund. *Program Policies* 9.

Pinkert cites a handful of cases purportedly addressing "analogous circumstances" and confirming his property interests in the assets he donated. None does. *Pacific Gas & Electric Co. v. Hart High-Voltage Apparatus Repair & Testing Co.*, 18 Cal. App. 5th 415 (2017), considered a contract denominating the Merced Irrigation District (MID) as the "sole owner (under Federal Power Commission License) of" a project cosponsored with PG&E. The court concluded that despite that language, PG&E could potentially establish that it was a partial owner of an electric transformer that was part of the project because the contract between MID and PG&E granted PG&E substantial legal rights—including rights "to all electricity generated by the project" and "to enter upon, operate and maintain any part of the power plant in the event … MID fail[s] to operate and maintain the project in accordance with the … contract." *Id.* at 421. Pinkert cannot claim any remotely comparable rights with respect to the Fund's assets.

In *California Chamber of Commerce v. State Air Resources Board*, 10 Cal. App. 5th 604 (2017), the court considered whether the revenue generated by California's cap-and-trade program auctions amounts to a tax, and observed that payors obtain "valuable property interest[s]," namely, "the privilege to pollute California's air," which can be "freely sold or traded" in a secondary market. *Id.* at 634. There's no such interest here; Pinkert cannot claim, for example, a valuable interest in the Fund's assets that he can sell or trade in a secondary market.

Finally, in *Habenicht v. Lissak*, 78 Cal. 351 (1889), the court concluded that a debtor's

1   seats on two exchanges constituted property that could be seized and sold to pay off debts.  *Id.* at

2   357.  Although exchange seats were generally encumbered with restrictions, the seats were still

3   property that could be transferred and sold to others.  *Id.* at 355-357.  Pinkert, once more, can claim

4   no such interest in the Fund's assets.

5           Next, drawing upon cases recognizing contingent property interests, *see* Opp. 10-11 (citing

6   *Roth v. Jelley*, 45 Cal. App. 5th 655, 669 (2020), and *Estate of Sigourney*, 93 Cal. App. 4th 593,

7   604 (2001)), Pinkert argues that he has a legal right to control the Fund's assets that is merely

8   subject to a condition precedent (namely, the Fund's approval of his recommendations).  This

9   again misses the point, both about the nature of DAFs and the case law.  Pinkert and the Fund do

10  not share legal control over the Fund's assets; as the Fund explicitly informs donors, the Fund has

11  *exclusive* legal control over the assets donors contribute.  Mot. 4-5.  And there is no future event

12  or contingency that might someday vest Pinkert with a right to own or control the Fund's assets.[1]

13          Pinkert alternatively appears to claim a property interest not in the Fund's assets but in his

14  advisory privileges.  Opp. 11.  But he cites no cases recognizing a property interest in "advisory"

15  privileges or any analogous privilege to provide non-binding recommendations.  Moreover, even

16  assuming Pinkert could have a property interest in his advisory privileges, he does not at all claim

17  that the Charitable Defendants' alleged misconduct has extinguished that interest or denied him

18  the ability to exercise that interest.  And he includes no allegations (or authority) suggesting that

19  his advisory privileges have economic value.

20          Pinkert also argues, in a single sentence, that he has suffered economic injury "because in

21  order to achieve his philanthropic goals, [he] must now contribute more money to his Schwab

22  Charitable account to make up for the excessive fees that Schwab Charitable caused to be paid out

23  of his account."  Opp. 12.  Pinkert offers no citations to support this theory.  He also offers no

---

[1] The other cases Pinkert cites on this point are also inapposite.  *In re Lau Capital Funding, Inc.*, 321 B.R. 287 (Bankr. C.D. Cal. 2005), held that a contract's inclusion of a condition subsequent that was never triggered did not void the contract and prevent the value of the contract from becoming part of a bankruptcy estate, *id.* at 295-296.  The case has absolutely nothing to do with the facts and issues here.  And *Sprague v. Edwards*, 48 Cal. 239 (1874), held that a trustee who could sell and convey land subject to the beneficiary's approval had failed to validly convey the land to another because he failed to obtain the beneficiary's approval, *id.* at 245-249.  The court did not discuss the nature of the trustee's property interest.  It is again unclear how the case has any relevance here.

1   response to the Charitable Defendants' showing (Mot. 8) that he failed to adequately plead such

2   an injury, having failed to allege that he had a specific charitable goal when he donated to the Fund

3   or that he had a "legally protected interest" in achieving such goal, *Lujan v. Defenders of Wildlife*,

4   504 U.S. 555, 560 (1992).  This lack of response is reason enough to reject this theory of injury.

5   *See Linder v. Golden Gate Bridge, Highway & Transportation District*, 2015 WL 4623710, at *3

6   (N.D. Cal. Aug. 3, 2015).  But it is also clear that Pinkert cannot cure the deficiency.  He gave up

7   all legal right to control the distribution of the assets that he donated to the Fund, and so cannot

8   claim any "legally protected interest" in donating to the charities of his choice, let alone in

9   achieving any particular level of giving to the charities of his choice.  *See* Mot. 8 n.7; *Benjamin v.

10  United States Department of State*, 2018 WL 1142124 (N.D. Cal. Mar. 2, 2018).

11          Finally, even if Pinkert could establish a cognizable economic injury based on having a

12  property interest in his advisory privileges or based on having to contribute more money to achieve

13  his charitable goals, his claim to Article III standing would still fail.  As previously explained (Mot.

14  8), a bedrock Article III limitation is that a party generally "must assert his own legal rights and

15  cannot rest his claim to relief on the legal rights of third parties."  *Sessions v. Morales-Santana*,

16  137 S. Ct. 1678, 1689 (2017) (quotation marks and alteration omitted).  Pinkert is not a beneficiary

17  of the Fund, and the Fund's directors do not owe him any fiduciary duties in managing the

18  corporation's assets; their duties run only to the Fund and its charitable purposes and beneficiaries.

19  *See* Mot. 8, 18.  Pinkert's reply brief is silent on this critical issue, again offering no basis to avoid

20  dismissal.  *See Linder*, 2015 WL 4623710, at *3.

21          **B.      Pinkert Has Not Adequately Pled Even A Non-Economic Injury**

22          As the Charitable Defendants showed, Pinkert's professed reputational injury is

23  insufficiently concrete to establish Article III standing.  Mot. 9.  Pinkert attempts to make up for

24  this deficiency by claiming for the first time in his opposition that the "value of [his] …

25  reputational interest in his DAF account [is] directly proportional to the size and number of grants

26  he can recommend."  Opp. 12.  This allegation is nowhere in the complaint, and in any event it is

27  not enough.  While a court must accept a plaintiff's "well-pleaded factual allegations," *Ashcroft v.

28  Iqbal*, 556 U.S. 662, 679 (2009), it "need not accept as true factual allegations that are not plausible

1    on their face," *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 922, 927 (9th Cir. 2013).

2    And it is not plausible that Pinkert will suffer a concrete reputational harm if, instead of being able

3    to recommend that, for example, $1,001 be distributed to a particular charity, he is instead only

4    able to recommend that $1,000 be distributed to that charity.   As for Pinkert's claim that the

5    Charitable Defendants have harmed his "expressive interests," he cites no cases finding Article III

6    standing based on similar claims.   Pinkert is thus also unable to establish a non-economic injury

7    to support his claim to standing here.

8    **II.      PINKERT LACKS STATUTORY STANDING**

9         **A.      Pinkert Lacks Standing Under California Corporations Code §5142**

10        Pinkert contends that he has standing under §5142(a)(4) because he has a contractual or

11   property interest in the Fund's assets.  Opp. 13-14.  For the reasons just discussed, however, Pinkert

12   cannot claim a property interest in the Fund's assets:  He does not have legal title to the Fund's

13   assets, he cannot claim any right to possess the Fund's assets, and he cannot claim any right to

14   transfer or otherwise control the Fund's assets.  The Fund has total and exclusive ownership and

15   control over the assets.  *Supra* pp. 1-2; *see also* Mot. 4-5, 7.

16        Nor does Pinkert have any contractual interest in the Fund's assets.   As previously

17   explained (Mot. 12), whatever rights Pinkert has under his agreement with the Fund—for example,

18   to receive statements confirming his contributions or to make nonbinding recommendations

19   regarding distributions—he has no contractual rights to *the Fund's assets*.  It is not enough for him

20   to merely claim a contractual relationship with the Fund.  *See* Cal. Corp. Code §5142(a) (granting

21   standing to "[a] person with a reversionary, contractual, or property interest *in the assets* subject

22   to [the] charitable trust").   The reason the common law—and later the legislature—granted

23   standing to persons with reversionary, contractual, or property interests in a charitable trust's assets

24   or "corpus" is that such individuals, by virtue of their interests in the trust's assets, are potential

25   beneficiaries of the trust and can therefore be heard to complain if the trustees or directors fail to

26   properly manage the trust assets.  *See O'Hara v. Grand Lodge Independent Order of Good*

27   *Templars of California*, 213 Cal. 131, 139-140 (1931) (noting that "the only person who can object

28   to the disposition of the trust property is one having some definite interest *in the property*" and

1   that a party who had "no right, title or interest *in the property*" lacked standing to challenge the

2   disposition of the trust property) (emphases added), *superseded by statute on other grounds, as*

3   *recognized in Patton v. Sherwood*, 152 Cal. App. 4th 339 (2007).  Pinkert thus lacks standing under

4   California Corporations Code §5142(a).

5       **B.      Pinkert Cannot Rely On Common-Law "Special Interest" Standing**

6       With nothing in the statute to rely on for standing, Pinkert resorts to the common law,

7   which he says permits him to sue because he has a sufficiently "special interest" in the management

8   of the Fund's assets.  Opp. 14-15.  That is incorrect.

9       California Corporations Code §5142(a) specifies who can sue for breach of a charitable

10  trust, and there is no indication that the legislature left any space for the common law to fill on this

11  question.  *See infra* p. 8.  But even if the common law remains in force, Pinkert cannot establish

12  "special interest" standing.  In California, the common law restricted standing to seek redress for

13  breaches of charitable trusts in order to protect charitable trusts and charitable corporations from

14  costly litigation (Mot. 10-11), and it provided that donors lacked standing to sue for breaches, with

15  one exception—donors could sue if they retained reversionary or property interests in the trust

16  assets.  *See, e.g.*, *O'Hara*, 213 Cal. at 139-140 ("[T]he only person who can object to the

17  disposition of the trust property is one having some definite interest in the property—he must be a

18  trustee, or a *cestui*, or have some reversionary interest in the trust property.");[2] *Holt v. College of*

19  *Osteopathic Physicians & Surgeons*, 61 Cal. 2d 750, 753 (1964) (same).  In that instance, the

20  donors were themselves beneficiaries of the trust and could thus be heard to complain about the

21  trustees' (or directors') management of trust assets.  *See O'Hara*, 213 Cal. at 139-140; *see also*

22  Restatement (Third) of Trusts §94 cmt. g(2) (Am. Law Inst. 2012).  Donors, however, who "parted

23  with [their] interest in" and "control over" donated assets did not "belong[] to the class intended

24  to be benefited" and so had no standing to complain.  *O'Hara*, 213 Cal. at 139-140.  Pinkert cannot

25  claim to have a reversionary or property interest in the Fund's assets; he gave up all legal interest

26  in the assets he transferred to the Fund.  *See supra* at pp. 1-2.

27

28      [2] A "cestui que trust" is a person "who possesses equitable rights in property, usu. receiving the rents, issues, and profits from it."  Black's Law Dictionary (11th ed. 2019).

Pinkert's citations to *L.B. Research & Education Foundation v. UCLA Foundation*, 130 Cal. App. 4th 171 (2005), and *Fairbairn v. Fidelity Investments Charitable Gift Fund*, 2018 WL 6199684 (N.D. Cal. Nov. 28, 2018), do not help him—and he offers no response to the showing that those cases are inapposite, Mot. 12-13. *L.B. Research* involved a donor who gave a restricted gift and sought to enforce the restriction via claims for specific performance and breach of contract. Mot. 13 n.10. As California courts have noted, *L.B. Research*'s discussion about donors' common-law standing to sue for breaches of charitable trusts is also "dicta," *Patton*, 152 Cal. App. 4th at 343. And in *Fairbairn*, unlike here, DAF donors alleged that Fidelity Charitable disregarded promises specifically made to them about how it would sell stock that they donated, and the donors asserted tort and contract claims to enforce those specific promises; they did not sue for general mismanagement of the DAF's assets. *See Fairbairn*, 2018 WL 6199684, at *5-7 ("Plaintiffs' claim is not a general claim that Fidelity Charity mismanages its DAF accounts."); Mot. 12-13.

Pinkert thus fares no better under common-law standing doctrine.

### C.     Pinkert Lacks Standing To Pursue His UCL Claims

Pinkert lacks standing to sue the Charitable Defendants under California Corporations Code §5142, and he cannot evade those standing restrictions by repackaging his claims under the UCL. The Charitable Defendants made this point in their motion to dismiss (Mot. 14-15), and Pinkert does not dispute it. His UCL claim accordingly should be dismissed. Moreover, his UCL claim fails for the additional reason that he fails to adequately plead that the Charitable Defendants' alleged misconduct has caused him economic injury. *See supra* p. 1-4; Mot. 15.

## III.     PINKERT FAILS TO STATE A CLAIM

### A.     Pinkert's Claim For Breach Of Common-Law Fiduciary Duties Fails

Pinkert's opposition fails to save his common-law breach-of-fiduciary-duty claim. Notwithstanding statutory provisions expressly subjecting the Fund's directors to a corporate-law standard in managing the Fund and its affairs, Pinkert contends the Fund's directors are still subject to trust-law standards. Opp. 15-21. As an initial matter, Pinkert never responds to the showing (Mot. 18) that even under the common law, the directors would not have owed any common-law fiduciary duties to *him* in managing the Fund's assets. And Pinkert does not at all address the

Charitable Defendants' argument (Mot. 18 n.12) that his common-law fiduciary-duty claim fails because he does not and cannot claim to be entitled to damages.  His failure to respond to these points is reason enough to dismiss Count I.  *See Linder* 2015 WL 4623710, at *3.

But Count I also fails because the Fund's directors are not subject to common-law trust standards; with the enactment of the 1980 Nonprofit Corporation Law, the California legislature preempted any common-law trust duties once applied to charitable corporations' directors.

"[G]eneral and comprehensive legislation, where course of conduct, parties, things affected, limitations and exceptions are minutely described, indicates a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter." *I.E. Associates v. Safeco Title Insurance Co.*, 39 Cal. 3d 281, 285 (1985) (quotation marks omitted). The 1980 Nonprofit Corporation Law reflects the legislature's intent to "occupy the field," *id.*, by providing a "comprehensive" and "self-contained" code governing public benefit corporations, California Department of Corporations, Enrolled Bill Report 1 (Sept. 25, 1978); *see also, e.g.*, *id.* at 2 (the legislation "sets forth a comprehensive and 'self-contained' statute for regulating the many types of nonprofit corporations").  The code provisions carefully describe—among many other things—the powers of the corporations, including the directors' powers during emergencies, *id.* §5140, the selection, powers, and duties of directors, *e.g.*, *id.* §5210, §5212, §5214, §§5220-5222, §5224, §5226, §§5230-5233, §5240, the conduct of board meetings, *id.* §5211, and the ability of parties to seek court intervention to, e.g., remove a director, appoint a provisional director, enforce restrictions on the number of "interested" directors, enforce the directors' duties with respect to the management of the organization and its charitable assets, and enforce restrictions on directors' self-dealing transactions, *id.* §5142, §5223, §5225, §5227.  They leave no room for interposition of common-law obligations.

At a minimum, it is clear the legislature intended to "occupy the field" with respect to the standards of care and loyalty governing directors and that it intended to displace any common-law trust duties that might once have applied.  Contrary to Pinkert's suggestion (Opp. 16), the Code *does* describe the duties, powers, and liabilities of directors—minutely.  For instance, §5231 spells out that directors must perform their duties "in good faith, in a manner that [they] believe[] to be

in the best interests of the corporation," and "with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances."  Cal. Corp. Code §5231(a).  It further provides that in performing their duties, directors can "rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by" specified individuals. *Id.* §5231(b).  Other provisions detail directors' duties, powers, and liabilities with respect to a range of issues, including directors' obligations and liabilities with respect to approving self-dealing transactions, directors' powers to set directors' compensation, directors' liabilities with respect to improper distributions, and—perhaps most importantly for present purposes—directors' duties in investing assets. *Id.* §§5233, 5235, 5237, 5240.  On the last point, the Code specifies that directors must "[a]void speculation," that they must *abide by the standard of care set forth in §5231*, that they can rely on others as specified in §5231, and that they can delegate their investment powers to committees. *Id.* §5240. Contrary to Pinkert's suggestion (Mot. 16), the Code also specifies the claims that may be brought against directors, including claims for breach of a charitable trust, violations of the restrictions on self-dealing, improper distributions, and removal for fraudulent or dishonest acts or gross abuses of authority and discretion. *Id.* §§5142, 5233(c), 5237(c), §5223.

The legislature explicitly indicated that it intended directors' conduct to be governed by the standards set forth in the Code and not any common-law trust standards.  It provided that, except as provided in the provision on self-dealing, directors who perform their duties in accordance with the standard of care set forth in §5231(a) "shall have no liability based upon any alleged failure to discharge [their] obligations" as directors, including no liability for "any actions or omissions which exceed or defeat a public or charitable purpose to which a corporation, or assets held by it, are dedicated." Cal. Corp. Code §5231(c).  It also expressly exempted directors from the standards applicable to trustees. *See id.* §5230 (providing that California Probate Code §§16000-16504 do not apply to directors); Cal. Prob. Code §§16000-16504 (laying out the duties, obligations, and liabilities of trustees).

The legislature also clearly indicated its intent to subject directors only to corporate-law standards and not trust-law standards by adopting standards that conflict with the standards

1   imposed on trustees.  For example, directors are required to act in the "best interests of the

2   corporation," Cal. Corp. Code §5231(a), while trustees must act in the "sole[]" interest of the trust,

3   Cal. Prob. Code §16002.  Relatedly, directors can enter into transactions in which they have a

4   material financial interest so long as certain requirements are met, Cal. Corp. Code §5233, while

5   trustees are prohibited from doing so, Cal. Prob. Code §16004(a).  And to take one more example,

6   directors can rely on others in carrying out their obligations, Cal. Corp. Code §5231, while trustees'

7   ability to do so is more circumscribed, Cal. Prob. Code §16012.[3]

8          Finally, the legislative history underscores that the legislature intended to subject charitable

9   corporations' directors to corporate-law standards and to preempt any common-law trust duties

10  that might have previously been thought applicable.  As the legislative history explains, at the time,

11  "California law governing the duty of care owed by directors of nonprofit corporations [wa]s in a

12  state of confusion"; some believed the General Corporations Law (GCL) standard (i.e., the

13  corporate-law standard) applied, while others felt the "trustee's standard" applied.  Assembly

14  Select Committee on the Revision of the Nonprofit Corporations Code, Summary of AB2180 and

15  AB2181, The Proposed Nonprofit Public Benefit, Nonprofit Mutual Benefit, and Nonprofit

16  Religious Corporation Law 1, 5-6 (July 27, 1978) ("Select Committee Summary").  During the

17  drafting process, concerns were raised about the "trustee standard" and, "[a]fter considering

18  alternatives," the drafting committees opted to follow the "GCL standard of care," i.e., corporate-

19  law standard.  *Id.* at 6.  *See also* Mot. 16-17.  The drafting committees also "spent considerable

20  time on the question of what standards [of self-dealing] should be applied to transactions between

21  nonprofit corporations and their directors or corporations in which their directors ha[ve] a material

22  financial interest."  Select Committee Summary 6.  While it "ha[d] been the Attorney General's

23  position that trust rules apply to public benefit corporations and that no benefit may flow to a

24  director, even if the transaction is fair and reasonable," a majority of the committee "felt that

25  _____

26      [33] California Corporations Code §7238, which governs mutual benefit corporations, also
     evidences the legislature's intent that §5231 and §5233—not the common law of trusts—would
27   provide the standards of care and loyalty for directors' management of charitable trust assets.  That
     provision provides: "Where a [mutual benefit] corporation holds assets in charitable trust, the
28   conduct of its directors … shall, in respect to the assets held in charitable trust, be governed by the
     standards of conduct set forth in [§§5230-5239]."

1   transactions should be valid if the director could prove they were fair and reasonable in regard to

2   the corporation," and it declined to adopt the trust-law standard.  *Id.*; *see also* Cal. Corp. Code

3   §5233.

4   Against all of this, Pinkert points to no post-1980 cases subjecting a public benefit

5   corporation's directors to trustee-like standards and instead relies on cases that have no relevance

6   or that undercut his claims.  For instance, *Frances T. v. Village Green Owners Association*, 42 Cal.

7   3d 490 (1986), held that the existence of California Corporations Code §7231—the parallel

8   provision to §5231 for mutual benefit corporations—did not preclude directors from being held

9   liable by third parties for tortious conduct, writing "a distinction must be made between the

10  director's fiduciary duty to the corporation (and its beneficiaries) and the director's ordinary duty

11  to take care not to injure third parties," *id.* at 506-508.  That holding is irrelevant here—this is not

12  a case in which, for instance, an injured person is seeking to hold the Fund liable in tort for failing

13  to manage its building in a safe manner.  But the case does undermine Pinkert's arguments.  Citing

14  §7231, the court observed that the fiduciary duties of the directors of mutual benefit corporations

15  are "defined by statute."  *Id.* at 506; *accord id.* at 513.  So, too, are the fiduciary duties of the

16  directors of public benefit corporations.

17  Pinkert also argues (Opp. 17) that trustee-like standards must apply because the Code

18  references a cause of action for breach of a charitable trust in §5142 without defining breach of a

19  charitable trust.  But a breach of trust is a cause of action with a settled meaning—namely, a failure

20  to abide by a fiduciary duty owed to the "trust" and its charitable beneficiaries.  *See, e.g.*,

21  Restatement (Third) of Trusts §93.  The California legislature was entitled to rely on that settled

22  meaning while altering the standards of care and loyalty that directors' actions are judged against.

23  Finally, Pinkert argues that even if provisions in the Corporations Code alter the duties of

24  the Fund's directors, nothing in the Code alters the duties of the Fund itself and it remains subject

25  to trust-law duties.  But the Fund can only act through its directors.  Subjecting the Fund itself to

26  trust-law standards in the investment of its assets would necessarily subject the directors to trust-

27  law standards, nullifying the effect of the Corporations Code.  Pinkert cites no authority that would

28  support that absurd result.  The sources he cites recognize only that liability (e.g., for damages)

may attach to an entity in circumstances where directors are shielded from liability. *See Ritter & Ritter, Inc. v. Churchill Condominium Association*, 166 Cal. App. 4th 103, 123 (2008); Cal. Corp. Code §5047.5(g).

### B.      Pinkert's UCL Claim Fails

To the extent Pinkert's UCL claim rests on alleged breaches of common-law trust duties, it fails because the Fund's directors are not subject to such duties. *See supra* p. 7-12; Mot. 15-18. To the extent it rests on alleged breaches of the directors' statutory duties, the claim fares no better.

#### 1.      Pinkert fails to overcome the business judgment rule.

Pinkert does not dispute that the business judgment rule applies to directors of public benefit corporations. He also does not dispute that the rule establishes a presumption that a corporation's directors have acted in good faith, on sound and informed judgment, and that the rule generally "insulates" corporate decisions from "court intervention," *Lee v. Interinsurance Exchange*, 50 Cal. App. 4th 694, 714-715 (1996). Nor does he dispute that the rule's presumption can be overcome only by "affirmative allegations of facts which, if proven, would establish fraud, bad faith, overreaching … an unreasonable failure to investigate material facts," or the existence of an inherent or actual conflict of interest, *id.* at 715. He argues only that he has alleged sufficient facts to overcome the presumption—in particular, he claims that he has sufficiently alleged inherent or actual conflicts of interest and facts from which to infer that the directors unreasonably failed to investigate material facts. Neither argument has merit.

*First*, Pinkert has not adequately alleged that a majority of the Fund's directors acted under actual or inherent conflicts of interest such that the Court should dispense with the business judgment rule. Pinkert's principal allegation is that "several" of the directors previously worked at or are presently "affiliated with" CS&Co. FAC ¶15. In addition to being untrue (CS&Co. Mot. 6 & n.4), the Charitable Defendants explained in their first motion to dismiss that this conclusory assertion is insufficient to infer conflicts because Pinkert offers no reason to believe that prior employment relationships would give any director a financial or other reason to favor CS&Co.'s interests over the Fund's, and because the bare allegation that a director is "affiliated" with CS&Co., without any explanation regarding the nature of the affiliation, is likewise not enough to

infer that the director would have reason to preference CS&Co.'s interests over the Fund's.  *See* ECF No. 48, at 17-18.  Despite having an opportunity to elaborate in his amended complaint, Pinkert did not.  Instead, in his opposition, he claims only that the chair of the Schwab Charitable Board is also a senior vice president of CS&Co and is otherwise silent about the other six directors.  Opp. 22.  Pinkert, of course, cannot remedy deficiencies in his complaint by making additional factual assertions in his opposition brief.  *See Barbera v. WMC Mortgage Corp.*, 2006 WL 167632, at *2 n.4 (N.D. Cal. Jan. 19, 2006).  But regardless, the affiliation between a single director of the Fund and CS&Co. is insufficient to overcome the business judgment rule.  *See S&A Biotech Investments, LLC v. Baruch*, 2003 WL 22222206, at *5 (Cal. Ct. App. Sept. 26, 2003) (unpublished) (business judgment rule applied where majority of disinterested directors approved transaction); *cf. Katz v. Chevron Corp.*, 22 Cal. App. 4th 1352, 1367 (1994) (presumption of good faith and reasonable business judgment is even stronger where board composed of majority of independent directors approves relevant transactions).

Pinkert also attempts to circumvent the business judgment rule with suggestions that "[t]he entire relationship between Schwab Charitable and [CS&Co.] is fraught with conflicts."  Opp. 23.  He points to his allegations that: (1) CS&Co. provided the initial investments to establish the Fund in 1999, FAC ¶¶13-14; (2) CS&Co. permits Schwab Charitable to use its trademarks, FAC ¶15; (3) CS&Co. provides "administrative and back-office services as necessary" to administer DAF accounts, FAC ¶45; and all Schwab Charitable employees are employees of CS&Co., FAC ¶45.  None of these allegations suggests that a majority of the current directors have acted under a conflict of interest in selecting the Fund's investment pools or negotiating for services.  For instance, the allegation that Schwab Charitable employees are employed by CS&Co. has no bearing on whether the Fund's directors have actual or potential conflicts of interest.  Pinkert notably cites no case that has dispensed with the business judgment rule based on similar circumstances.

Each of the cases Pinkert does cite (Opp. 22-23) is distinguishable.  In *Everest Investors 8 v. McNeil Partners*, 114 Cal. App. 4th 411 (2003), the court held that the business judgment rule did not preclude inquiry into a general partner's handling of a merger and liquidation of limited

partners' interests where the general partner had an adverse financial interest in the merger, *id.* at 418, 430.   In *Kruss v. Booth*, 185 Cal. App. 4th 699 (2010), the court held that the business judgment rule did not preclude inquiry into four directors' conduct where the directors were alleged to have used a reverse merger to benefit entities owned and controlled by three of the four directors, *id.* at 726-28.   Contrary to Pinkert's assertions (Opp. 23), the court's holding there was not about inferring conflicts of interest based on a party having paid for "assets or services" at "an inflated price."   Next, *Kingoschu Family Partners, LLC v. Public Storage*, 2014 WL 787830 (Cal. Ct. App. Feb. 27, 2014) (unpublished), held that the business judgment rule did not preclude inquiry into majority partners' conduct in liquidating partnerships where the majority partners had an admitted conflict with the limited partners' interests, *id.* at *1-2, *5.   And *Leyte-Vidal v. Semel*, 220 Cal. App. 4th 1001 (2013), applied Delaware law to sustain a dismissal where the plaintiff alleged that an interested director dominated and controlled the independent directors, because the plaintiff failed to allege that the interested director and the others had personal or business relationships that would suggest the others were subject to his control, *id.* at 1005, 1015-1017.[4]

*Second*, Pinkert has not adequately alleged facts from which to infer, on the part of the directors, "an unreasonable failure to investigate material facts," *Lee*, 50 Cal. App. 4th at 714-715. To do so, he must allege facts that would have made the directors' decisions "'irrational, unsound, or unreasonable'" had they conducted a reasonable investigation.  *Scouler & Co. v. Schwartz*, 2012 WL 12897963, at *4 (N.D. Cal. Aug. 23, 2012) (quoting *Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App. 4th 1020, 1047 (2009)) (holding plaintiff overcame business judgment rule where it alleged defendant directors failed to conduct reasonable inquiry into alternatives to complying with share-purchase agreement when directors were aware corporation was insolvent, had a critical cash position, and proposed transfer was "potentially fatal" and management had warned directors against the transfer).

Pinkert emphasizes his allegations that the directors have: selected funds on CS&Co.'s OneSource platform; selected index funds and a money market fund for which there are at least

---

[4] Pinkert references IRS guidance on DAFs.  Opp. 24.  That guidance neither mentions the Fund nor address the circumstances in which a conflict of interest may be found for purposes of overcoming the business judgment rule under California law.

1  some cheaper and comparable or better alternatives available; and invested in some "retail" share

2  classes when the Fund could qualify for cheaper "institutional" share classes.  Opp. at 24-25.  But

3  these allegations do not rise to the level of suggesting that the directors have made any decisions

4  that are so "irrational, unsound, or unreasonable" that the directors must have unreasonably failed

5  to investigate material facts.  *See* Mot. 20-23.  For instance, directors may reasonably (and indeed

6  should) consider factors other than price in selecting investment options, and they may select more

7  expensive share classes for legitimate reasons, such as to pay for services.  *See id.*

8      Unable to overcome the business judgment rule, Count III must also be dismissed.[5]

9          **2.      Pinkert fails to adequately allege any breach of a fiduciary duty.**

10     Even disregarding the business judgment rule, Pinkert has not adequately alleged a breach

11  of UPMIFA's requirements—even if one were to assume UPMIFA imposes trustee-like standards

12  (though it does not).  The law does not even require *trustees* to find and use the cheapest possible

13  funds, share classes, or services.  Mot. 21-23.  As that is essentially what Pinkert challenges, he

14  has failed to adequately allege a breach of fiduciary duty.  Mot. 21-23.  Several of the cases he

15  cites are also factually distinguishable.  *See, e.g.*, *Johnson v. Fujitsu Technology & Business of*

16  *America, Inc.*, 250 F. Supp. 3d 460, 463, 465-467 (N.D. Cal. 2017) (plaintiffs alleged employee-

17  benefit plan had expenses that were three times higher than average for similarly sized plans,

18  recordkeeping expenses that were five to ten times higher than fees for similarly sized plans, and

19  mutual funds in the plan that were up to thirty-five times more expensive than "comparable funds

20  in the same investment style"); *Main v. American Airlines Inc.*, 248 F. Supp. 3d 786, 790, 793-794

21  (N.D. Tex. 2017) (plaintiffs alleged plan sponsor included more expensive and underperforming

22  funds that were initially created by the plan sponsor's parent company and in which the parent

23  company later retained an equity interest).

24  **IV.    CONCLUSION**

25     The FAC should be dismissed in its entirety with prejudice.

26

27  [5] Pinkert asserts (Opp. 22 n.9) that the business judgment rule would not shield *the Fund* from scrutiny, but he offers no authority.  And to consider claims against the Fund would require judicial second-guessing of the directors' decisions.  The business judgment rule precludes such

28  second-guessing absent allegations sufficient to overcome it.  *See Lee*, 50 Cal. App. 4th at 713-714.

1

2   DATED: April 23, 2021                Respectfully submitted,

3                                        WILMER CUTLER PICKERING HALE
                                            AND DORR LLP
4

5                                        By: */s/ David C. Marcus*
                                         DAVID C. MARCUS
6                                        CHRISTOPHER T. CASAMASSIMA
                                         ALAN E. SCHOENFELD (*pro hac vice*)
7                                        ANDREW S. DULBERG (*pro hac vice*)

8                                        *Attorneys for Defendants Schwab Charitable*
                                         *Fund, Schwab Charitable Board of*
9                                        *Directors, and Schwab Charitable*
                                         *Investment Oversight Committee*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28