1  JOSHUA D. N. HESS (SBN 244115)
   joshua.hess@dechert.com
2  BRIAN RAPHEL (SBN 293788)
   brian.raphel@dechert.com
3  DECHERT LLP
   One Bush Street, Suite 1600
4  San Francisco, CA 94111-3513
   Telephone: (415) 262-4500
5  Facsimile: (415) 262-4555

6  DAVID A. KOTLER*
   david.kotler@dechert.com
7  SAMANTHA ROSA*
   samantha.rosa@dechert.com
8  DECHERT LLP
   1095 Avenue of the Americas
9  New York, NY 10036
   Telephone: (212) 698-3500
10 Facsimile: (212) 698-3599

11 *admitted *pro hac vice*

12 Attorneys for Defendant Charles Schwab & Co., Inc.

13                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
14                      SAN FRANCISCO DIVISION

15 | | |
|---|---|
16 Philip Pinkert, individually and on behalf of a Class of similarly situated individuals, and on behalf of the general public, | Case No. 20-7657 |
| | **DEFENDANT CHARLES SCHWAB & CO., INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
17 Plaintiff, | |
18 v. | Amended Complaint Filed: February 5, 2021 |
19 Schwab Charitable Fund, Charles Schwab & Co., Schwab Charitable Board of Directors, and Schwab Charitable Investment Oversight Committee, | Hearing Date: May 13, 2021 Time: 9:30 a.m. Courtroom: B Judge: Hon. Laurel Beeler |
20 | |
21 | |
22 Defendants. | |

23
24
25
26
27
28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION........................................................................................... 1

II.  ARGUMENT................................................................................................. 2

    A.   Pinkert Lacks Standing To Assert A Claim Derivatively On Behalf Of The Fund.................................................................................................. 2

        1.   Pinkert's Claims Are Derivative, Notwithstanding Any Unique Injuries He May Allege............................................................... 3

        2.   Pinkert's Reliance On Section 5142 Has No Support............................ 5

        3.   Pinkert Concedes The Inapplicability Of The Common Law. ................. 7

    B.   Pinkert Fails To State An Aiding-And-Abetting Claim Against CS&Co............. 8

        1.   Pinkert Fails To Allege CS&Co. Had Actual Knowledge Of Any Breach....................................................................................... 8

        2.   Pinkert Fails To Allege CS&Co. Substantially Assisted In Any Breach..................................................................................... 11

        3.   Pinkert's Claim For Aiding And Abetting Is Time-Barred.................... 12

    C.   Pinkert Fails To State A UCL Claim Against CS&Co. .................................. 13

III. CONCLUSION........................................................................................... 15

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
225 Cal. App. 4th 1451 (2014) ....................................................................... 12

6

*AngioScore, Inc. v. TriReme Med.*,
7     LLC, 70 F. Supp. 3d 951 (N.D. Cal. 2014) ..................................................... 11

8

*Avikian v. WTC Fin. Corp.*,
9     98 Cal App. 4th 1108 (2002) ............................................................................ 3

10

*Bader v. Anderson*,
    179 Cal. App. 4th 775 (2009) .................................................................. 3, 4, 5

11

*Beaver v. Tarsadia Hotels*,
12     29 F. Supp. 3d 1294 (S.D. Cal. 2014) ............................................................ 14

13

*Casey v. U.S. Bank Nat'l Ass'n*,
14     127 Cal. App. 4th 1138 (2005) ............................................................. 8, 9, 10

15

*Cent. Bank of Denver v. First Interstate Bank of Denver*,
    511 U.S. 164 (1994) .......................................................................................... 9

16

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
17     68 Cal. App. 4th 445 (1998) ............................................................... 7, 11, 13

18

*Davis v. Salesforce.com, Inc.*,
19     2020 WL 5893405 (N.D. Cal. Oct. 5, 2020) .................................................. 11

*Fairbairn v. Fid. Invs. Charitable Gift Fund*,
20     2018 WL 6199684 (N.D. Cal. Nov. 28, 2018) ............................................. 6, 7

21

*Glen K. Jackson Inc. v. Roe*,
22     273 F.3d 1192 (9th Cir. 2001) ........................................................................ 13

23

*Goonewardene v. ADP, LLC*,
    5 Cal. App. 5th 154 (2016) ............................................................................. 12

24

*Hibbs v. Winn*,
25     542 U.S. 88 (2004) ............................................................................................ 7

26

*Hughes v. BCI Int'l Holdings, Inc.*,
27     452 F. Supp. 2d 290 (S.D.N.Y. 2006) .............................................................. 7

28

*Hurtado Lucero v. IRA Servs., Inc.*,
    2020 WL 553941 (N.D. Cal. Feb. 3, 2020) .................................................................8, 10, 11

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ............................................................................................... 14

*L.B. Research & Education Foundation v. UCLA Foundation*,
    130 Cal. App. 4th 171 (2005) ......................................................................................6, 7

*Mayron v. Google LLC*,
    54 Cal. App. 5th 566 (2020) ......................................................................................... 14

*McFall v. Stacy & Witbeck, Inc.*,
    2016 WL 6248882 (N.D. Cal. Oct. 26, 2016) ............................................................... 10

*Navarrete v. Meyer*,
    237 Cal. App. 4th 1276 (2015) ..................................................................................... 11

*Neilson v. Union Bank*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .......................................................................8, 9

*Nelson v. Anderson*,
    72 Cal. App. 4th 111 (1999) ........................................................................................... 4

*O'Hara v. Grand Lodge of the Indep. Ord. of Good Templars*,
    213 Cal. 131 (1931) ................................................................................................11, 13

*Oakland Raiders v. Nat'l Football League*,
    131 Cal. App. 4th 621 (2005) ........................................................................................ 5

*Pareto v. F.D.I.C.*,
    139 F.3d 696 (9th Cir. 1998) ......................................................................................... 3

*RK Ventures, Inc. v. City of Seattle*,
    307 F.3d 1045 (9th Cir. 2002) ....................................................................................... 4

*Schmid v. City & Cnty. of San Francisco*,
    60 Cal. App. 5th 470 (2021) .......................................................................................... 7

*Schuster v. Gardner*,
    127 Cal. App. 4th 305 (2005) ........................................................................................ 4

*Terraza v. Safeway Inc.*,
    241 F. Supp. 3d 1057 (N.D. Cal. 2017) ....................................................................... 13

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ............................................................................................ 3

*WA Sw. 2, LLC v. First Am. Title Ins. Co.*,
    240 Cal. App. 4th 148 (2015) ...................................................................................... 13

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008) ............................................................................ 13

**Statutes**

Cal. Bus. & Prof. Code § 17204 ............................................................................ 14

Cal. Corp. Code § 5142 ............................................................................ 1, 2, 3, 5, 6, 7

## I.    INTRODUCTION

Despite now having multiple opportunities to salvage his claims, Pinkert still cannot maintain a cause of action against CS&Co. Pinkert's oppositions to Defendants' motions to dismiss reveal his effort to import irrelevant ERISA and common-law trust concepts concerning duties owed to *beneficiaries* of such trusts and impose them on a California nonprofit public-benefit corporation, which is a creature of California state corporations law. But Pinkert does not bring his claims as a beneficiary of a common-law or ERISA trust. He is a donor to a nonprofit public-benefit corporation and he concededly has relinquished legal title to his donations. Thus, the purported injury he seeks to vindicate is an alleged diminution of the assets to which the Schwab Charitable Fund (the "Fund") has unfettered and uncontested legal title. The remedy he seeks is a disgorgement of fees paid *by the Fund* to CS&Co. and their return *to the Fund*. Under California law, this claim, to the extent it exists, belongs to the Fund and the Fund is the proper party to bring it. Pinkert makes no effort to satisfy the legal requirements necessary to bring such a claim in the Fund's name, nor could he.

Pinkert's concession that he has no standing to assert claims derivatively on the Fund's behalf is coupled with his abandonment of any contention that the common law provides him standing to do so either. Instead, Pinkert must pin his ability to assert claims against CS&Co. solely on Section 5142 of the Corporations Code, to which he dedicates but a single page of his Opposition. Yet Section 5142 never has been applied to a suit brought by a donor to a nonprofit public-benefit corporation against a third party based upon a purported breach of duty by the corporation's directors. And for good reason. As an initial matter, Pinkert cannot establish that he is one of the types of potential plaintiffs enumerated in Section 5142 because he has not alleged a property or contractual interest in the Fund's assets. Additionally, his interpretation of that provision would nullify the derivative standing provisions that apply to public-benefit corporations. Pinkert's interpretation would mean virtually any contractual right a party may have with a public-benefit corporation can be converted by Section 5142 into a freewheeling grant of standing to bring any fiduciary breach claim, whether it belongs to him or not, against any party, and regardless of

1   whether it is even related to the purported contractual right he has.  Unsurprisingly, Pinkert offers

2   no legal authority to support this expansive theory, as none exists.

3        Pinkert's claims against CS&Co. also fail on their merits.  Pinkert ignores the extensive,

4   controlling authority that CS&Co. invoked in its opening brief and attempts to define down the

5   pleading standard for an aiding-and-abetting claim, substituting a "general knowledge" standard

6   for the required "actual knowledge" under California law.  Pinkert's legal sleight of hand is not

7   surprising, given that he fails to identify any allegation from the FAC that demonstrates CS&Co.'s

8   actual knowledge of tortious conduct or substantial assistance in it.  Pinkert's *ipse dixit* assertion

9   that CS&Co. has "general knowledge" of breaches of fiduciary duty through its normal-course-of-

10  business dealings with the Fund is insufficient to state a claim under California law.  Additionally,

11  to elude the statute of limitations, Pinkert again misconstrues his own complaint as an ERISA duty-

12  to-monitor claim.  ERISA does not apply to his claims, and Pinkert does not allege that the Fund's

13  investments became imprudent over time.  Instead, he alleges that they were disloyal from Day

14  One, which was well past the four-year statute of limitations.

15       Finally, Pinkert provides no real defense for his UCL claims.  He relies yet again on vague

16  "reputational" harms, but the UCL requires actual economic injury for standing.  Furthermore, he

17  does not dispute that the remedy he seeks from CS&Co.—non-restitutionary disgorgement—is

18  unavailable under the UCL.

19       Pinkert's First Amended Complaint ("FAC") should be dismissed with prejudice.

20  **II.   ARGUMENT**

21       **A.   Pinkert Lacks Standing To Assert A Claim Derivatively On Behalf Of The**
22            **Fund.**

23       Pinkert's claims are derivative of the Fund and its interests.  He makes no argument that he

24  can assert a claim on the Fund's behalf and abandons any argument that the common law provides

25  him with standing to do so.  Instead, Pinkert relies entirely on Section 5142 of the Corporations

26  Code to support his standing to bring claims against CS&Co.  But he has no contractual or property

27

28

interest in his DAF contributions, as Section 5142 requires.  He therefore lacks standing, and the FAC should be dismissed.[1]

### 1. Pinkert's Claims Are Derivative, Notwithstanding Any Unique Injuries He May Allege.

As CS&Co. established in its opening brief, Pinkert's claims are derivative in nature.  *See* Def. CS&Co. Mem., ECF 54 ("CS&Co. Br.") at 10-13.  When addressing the difference between direct and derivative claims, the questions courts must answer are "[w]ho suffered the alleged harm" and "who would receive the benefit of the recovery or other remedy?"  *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004).  Moreover, to maintain a direct claim, the plaintiff's "claimed direct injury *must be independent of any alleged injury to the corporation*" and "that he or she can prevail without showing an injury to the corporation."  *Id.* at 1039 (emphasis added).  Applying these principles to Pinkert's claims, they are clearly derivative.

First, the gravamen of the FAC is an injury to *the Fund* in the first instance.  Specifically, the FAC alleges that the Fund's directors and CS&Co. mismanaged the Fund's assets by investing the assets in a manner that incurred excessive costs and fees.  *See* CS&Co. Br. at 12.  Claims alleging the mismanagement of corporate assets are paradigmatically derivative in nature.  *See, e.g.*, *Avikian v. WTC Fin. Corp.*, 98 Cal App. 4th 1108, 1115 (2002) (affirming dismissal of derivative claims where "appellants' core claim is that defendants mismanaged [the company], and entered into self-serving deals to sell [corporate] assets to third parties"); *see also Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998) (allegations that bank's directors were "mismanaging its operation . . . describe a direct injury to the bank").

Second, the sole remedy Pinkert seeks on his aiding-and-abetting claim is disgorgement of monies paid by *the Fund* to CS&Co., which would be returned not to him or members of his purported class, but to *the Fund*.  *See id.* at 12 (citing FAC ¶ 132).  A claim seeking recovery of assets for a corporation is, by definition, a derivative claim.  *See Bader v. Anderson*, 179 Cal. App.

---

[1] As argued more fully in the Charitable Defendants' motion to dismiss and reply, *see* Schwab Charitable Defendants' Reply in Support of Their Motion to Dismiss ("Charitable Defendants' Reply") at 1-5, Pinkert also does not have standing under Article III to assert any claims presented.

4th 775, 793 (2009) ("a derivative suit is one in which the shareholder seeks redress of the wrong to the corporation" (citation and internal quotation marks omitted)); *see also RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002) ("[i]njury to the corporation is not cognizable as injury to the shareholders, for purposes of the standing requirements" (citation and internal quotation marks omitted)).

Pinkert's attempts to sidestep these principles are not persuasive.  For instance, Pinkert argues that his claims are not derivative because they are unique to himself.  Pl. Mem. in Opp'n to CS&Co., ECF 58 ("CS&Co. Opp.") at 8.  But the supposed "uniqueness" of a plaintiff's injury is irrelevant to whether a claim is direct or derivative.  Instead, the test is whether the plaintiff's alleged injury was suffered *directly*, or whether the injury *derives* from an injury suffered by the corporation in the first instance.  This rule is clearly articulated in *Nelson v. Anderson*, 72 Cal. App. 4th 111, 124 (1999).  The plaintiff in *Nelson* was a minority shareholder who sued the company's majority shareholder for a breach of fiduciary duty.  She alleged the breach diminished her stock value, but argued "a derivative action was not her exclusive remedy," as she suffered damages that were unique to her, including lost employment opportunities, reputational damage, emotional distress, and out-of-pocket expenses.  *Id.*  Despite these individualized, unique harms, the court held the claims were derivative, explaining that "[t]he test is not whether Nelson's damages were unique, as Nelson's argument suggests," but rather whether "the damages were . . . *incidental* to an injury to the corporation."  *Id.* (emphasis in original); *accord Bader*, 179 Cal. App. 4th at 793 (explaining that a direct action "is maintainable 'only if the damages [are] not incidental to an injury to the corporation'" (quoting *Nelson*, 72 Cal. App. 4th at 124)); *Schuster v. Gardner*, 127 Cal. App. 4th 305, 313 (2005) ("An individual cause of action exists only if damages to the shareholders were not *incidental* to damages to the corporation." (emphasis in original)).  As *Nelson* demonstrates, Pinkert's putatively unique injuries do not make his claims direct.  Pinkert's alleged reputational harm and a claimed need to donate additional money to meet his charitable goals, *see* CS&Co. Opp.

at 16, are necessarily incidental to the alleged diminution in value of *the Fund's* assets.  In other words, Pinkert's purported injuries rely upon an injury to the Fund's assets in the first instance.

Equally insufficient is Pinkert's assertion that the FAC does not allege "an injury to Schwab Charitable" or to "the whole body" of Schwab Charitable's property.  CS&Co. Opp. at 8.  This assertion is belied by the FAC itself.  The gravamen of Pinkert's FAC is that Pinkert was injured by a breach of a duty the Charitable Defendants owed *to the Fund*, which led to the diminution in assets *held by the Fund*, to which he has no legal title, reversionary right, or independent right to determine how they are invested.[2]  Moreover, most telling, the FAC seeks the return of money *to the Fund*, not to Pinkert or anyone else.  *See* FAC ¶ 132.  The law is clear that a claim is derivative of a corporation's harm where "the gravamen of the complaint is injury to the corporation" and the suit "seeks to recover assets for the corporation."  *Bader*, 179 Cal. App. 4th at 793; *see id.* (listing factors in the disjunctive).[3]

In short, Pinkert offers no response to the argument that all his alleged injuries are *incidental to* harm to the Fund.  Because Pinkert has no standing to bring derivative claims—which he concedes by failing to argue otherwise—his claims must be dismissed.

## 2.   Pinkert's Reliance On Section 5142 Has No Support.

Concededly unable to assert a claim on the Fund's behalf, Pinkert's attempt to hang his claim entirely on Corporations Code Section 5142 also fails.  As he argues in opposition to the Charitable Defendants' motion to dismiss, Pinkert contends that "the laws provide a cause of action to donors with property or contractual interests to sue for breach of charitable trust."  CS&CO.

---

[2] Pinkert does not allege that he holds legal title to the funds in "his" accounts, and any other interest he has in those funds is secondary to the Fund's interest.  *See Oakland Raiders v. Nat'l Football League*, 131 Cal. App. 4th 621, 651 (2005) ("Since '[s]hareholders own neither the property nor the earnings of the corporation,' any damages that the plaintiff alleged that resulted from such loss of corporate profits 'were incidental to the injury to the corporation.'" (quoting *Nelson*, 72 Cal. App. 4th at 126)).  Indeed, even the "property interest" Pinkert purports to have—*i.e.*, advisory privileges on donations—is far less concrete and direct than the property interest *shareholders* have in a corporation.

[3] As explained more fully in the Charitable Defendants' Reply, Pinkert fails to offer any support for any fiduciary duty the Fund or its directors owed to him.  Rather, the Fund's directors owe duties to the Fund, so any breach of those duties necessary works an injury on it.  *See* Charitable Defendants' Reply at 7-8.

1   Opp. at 9 (citation and internal quotation marks omitted).  Pinkert's reliance on this provision is

2   misplaced as a matter of law for numerous reasons.

3        *First*, as the Charitable Defendants have established, Pinkert has no property or contractual

4   interest in the Fund's assets.  *See* Charitable Defendants' Reply at 5-6.  Thus, this provision does

5   not even apply to this case.

6        *Second*, even assuming Pinkert had such an interest, interpreting Section 5142 to apply to

7   claims against a third party is unprecedented and unsupported because it would (1) allow any

8   contractual counterparty to a public-benefit corporation to bring any breach of trust claim against

9   any party for any conduct, no matter how attenuated any such claim might be to the contractual

10  "right," and (2) nullify derivative standing provisions with respect to public-benefit corporations.

11  There is simply no case where a court has recognized that a donor, such as Pinkert, has standing to

12  bring a claim against a third party based on a breach of trust to a public-benefit corporation.  This

13  Court should not be the first to do so.

14       Indeed, Pinkert's unsupported interpretation of Section 5142 has no limiting principle.

15  Pinkert's only "right" with respect to the Fund is to offer *noncompulsory* advice on how his

16  donations are invested and where they ultimately go.  But Pinkert alleges no impairment to those

17  privileges.  Instead, he claims the Fund was charged excessive fees.  This is what distinguishes his

18  claims from *Fairbairn*, where the plaintiffs alleged Fidelity Charitable violated contractual

19  promises that it would manage the plaintiffs' donations in a specific way.  *Fairbairn v. Fid. Invs.*

20  *Charitable Gift Fund*, 2018 WL 6199684, at *5 (N.D. Cal. Nov. 28, 2018).  The same is true of

21  *L.B. Research & Education Foundation v. UCLA Foundation*, 130 Cal. App. 4th 171 (2005), in

22  which the plaintiff had an express reversionary interest in the subject donation, which was triggered

23  if conditions of the donation were not met.  *See* Pl. Mem. In Opp'n to Charitable Defendants, ECF

24  57 ("Charitable Defendants Opp.") at 15; Charitable Defendants' Reply at 6-7.  Here, there is no

25  such relationship between Pinkert's advisory privileges and the claims he brings now.  Allowing

26  his claims to proceed therefore would open the door to any future party to a contract with a public-

27  benefit corporation to sue *any other party* for any alleged wrongdoing to the corporation.  Pinkert

28  offers no authority for that nonsensical proposition.

Additionally, Pinkert's interpretation of Section 5142 is unsound because it would nullify the derivative standing provisions in the Corporations Code relating to public-benefit corporations. Under Pinkert's interpretation, any counterparty to a contract with a public-benefit corporation would be able to sue for harms against the corporation itself. Such counterparties could include employees, vendors, members, donors—an innumerable list of potential plaintiffs. If such a wide swath of individuals could bring suit for injuries to a public-benefit corporation without meeting any of the prerequisites of the derivative standing statutes, those provisions would have no practical effect. Because Pinkert's broad reading of Section 5142 conflicts with other provisions of the Corporations Code that specifically prescribe who may bring a claim on a public-benefit corporation's behalf and under what circumstances, it should be rejected. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .").

Unsurprisingly, Pinkert identifies no case expanding Section 5142 in this illogical manner. In fact, the only California authority he identifies affirmatively *rejects* his interpretation. *See Schmid v. City & Cnty. of San Francisco*, 60 Cal. App. 5th 470, 494 (2021) (rejecting application of Section 5142 to give taxpayer standing, as he held no reversionary, contractual, or property interest in the assets subject to a charitable trust). And the only other case he identifies does not involve California law or donors with alleged property interests in a charitable corporation. *See Hughes v. BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290, 307-08 (S.D.N.Y. 2006).

### 3. Pinkert Concedes The Inapplicability Of The Common Law.

As CS&Co. established in its motion, the common law provides no standing for a donor to assert aiding-and-abetting claims against a third party. *See* CS&Co. Opp. at 7-9 (distinguishing *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445 (1998), *Fairbairn*, and *L.B. Research*, cited in FAC). Pinkert offers no response to this argument, conceding the inapplicability of the common law to support standing against CS&Co. In any case,

1   for the reasons set forth in the Charitable Defendants' Reply, the Corporations Code has preempted

2   the common law in this space.  *See* Charitable Defendants' Reply at 6-7.

3          **B.**      **Pinkert Fails To State An Aiding-And-Abetting Claim Against CS&Co.**

4         Pinkert's argument on the merits of his aiding-and-abetting claim fares no better.  He fails

5   to cope with the overwhelming case law against his position, and he misapplies and attempts to

6   define down the legal standards for the elements of his claim to survive dismissal.  Pinkert's

7   arguments are unavailing.[4]

8             **1.**      **Pinkert Fails To Allege CS&Co. Had Actual Knowledge Of Any Breach.**

9         Pinkert argues that he need only allege CS&Co.'s "general knowledge" or "general

10  awareness" of the alleged breach by the Charitable Defendants.  CS&Co. Opp. at 10-13.  This is

11  legally incorrect, and Pinkert's allegations do not survive application of the correct standard.  As

12  CS&Co. identified in its opening brief, California law requires "*actual knowledge* of the specific

13  primary wrong the defendant substantially assisted."  *Hurtado Lucero v. IRA Servs., Inc.,* 2020 WL

14  553941, at *4 (N.D. Cal. Feb. 3, 2020) (quoting *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th

15  1138, 1145 (2005)) (emphasis added).  Pinkert alleges no such "actual knowledge" here.

16        Pinkert relies almost exclusively on one case—*Neilson v. Union Bank*, 290 F. Supp. 2d

17  1101 (C.D. Cal. 2003)—to support his position that he need allege only "general knowledge." *See*

18  CS&Co. Opp. at 10-12.  *Neilson* is inapposite.  As an initial matter, that case relied on authorities

19  outside of California, applying laws of other states, so it has no precedential weight here.  Moreover,

20  more recent cases confine *Neilson* to its facts and make clear that aiding-and-abetting requires

21  specific, actual knowledge.  For example, in *Casey*, the court affirmed the dismissal of an aiding-

22  and-abetting claim, rejecting the plaintiff's argument that *Neilson* excused it from pleading actual

23  knowledge.  127 Cal. App. 4th at 1152.  Just as Pinkert does now, the plaintiff in *Casey* claimed it

24  was sufficient to allege the defendants "knew that the [principal fiduciaries] were engaged in

25  wrongful or illegal conduct in breach of their fiduciary duties to the [plaintiff.]"  *Id.* (internal

26

---

27  [4] Pinkert fails to allege an underlying breach of fiduciary duty against the Fund, and his aiding-and-
28  abetting claim fails for that reason, too.  *See* Charitable Defendants' Reply at 7-11.

quotation marks omitted). The *Casey* court rejected this "attempt[] to plead around this hole in the complaint," holding instead that "the complaint must allege the defendant's actual knowledge of the specific breach of fiduciary duty for which it seeks to hold the defendant liable." *Id.* Notwithstanding the fact that the plaintiff in *Casey* offered "ample details of the banks' improper conduct," the court dismissed the complaint because plaintiff had failed to "establish that the banks had *actual knowledge*" of the breach. *Id.* at 1148 (emphasis added). *Neilson* cannot stand for the opposite proposition, as Pinkert would have it.

The other authorities Pinkert identifies are equally unhelpful. *Simi Management Corp. v. Bank of America Corp.* acknowledges that the defendant must "have *actual knowledge* of the *specific primary wrong* the defendant substantially assisted." 2012 WL 1997232, at *5 (N.D. Cal. June 4, 2012) (emphases in original) (quoting *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir.2006), and citing *Casey*, 127 Cal. App. 4th at 1152); *accord id.* ("Mere allegations that a defendant had 'vague suspicion of wrongdoing' or knew of 'wrongful or illegal conduct do not constitute sufficient pleading' that the defendant had 'actual knowledge.'" (alterations omitted) (quoting *First Alliance*, 471 F.3d at 993 n.4)).

Additionally, Pinkert's further argument that the Court should presume CS&Co.'s knowledge from its financial benefit from the Fund's fees has no legitimate support. *See* CS&Co. Opp. at 11. Pinkert cites only a 40-year-old Third Circuit case and a 30-year-old law review article for this assertion, both analyzing aiding and abetting securities fraud under the Securities Act of 1933. These weak citations underscore the lack of support for his argument. First, Pinkert brings an aiding-and-abetting claim under California law, not the federal securities law. Second, and more damning, it has been black-letter law for over 26 years that there is no civil cause of action for aiding and abetting federal securities fraud. *See Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 191 (1994) (holding federal securities laws provide no civil liability for aiding and abetting securities fraud). No court applying California law has employed the rationale of the stale and nonprecedential authorities upon which Pinkert relies.

Applied to the FAC, Pinkert's allegations that CS&Co. "was cognizant of the availability of and [the Fund's] eligibility for institutionally priced share classes and superior index and money

1   market fund investments," FAC ¶ 131; *accord id.* ¶¶ 106-08, 110, falls well short of pleading actual

2   knowledge of *specific* wrongful conduct and of its tortious nature. For example, the allegations in

3   *Casey* that failed to meet the actual knowledge standard were more specific—and more damning—

4   than the allegations against CS&Co. in the FAC. The plaintiff in *Casey* alleged that the defendant

5   opened accounts for the principals "with invalid tax identification numbers," administered those

6   accounts to defraud investors, "allow[ed] large sums of cash, often in excess of $250,000 at a time

7   and aggregating some $6 million, to be removed from . . . cash vaults (in unmarked duffel bags),"

8   "allow[ed] obviously forged negotiable instruments to be paid," and ignored "not to exceed" limits,

9   127 Cal. App. 4th at 1142, and that the defendant "knew the [principals'] unauthorized cash

10  withdrawals . . . were in breach of their fiduciary duties," *id.* at 1153 (internal quotation marks

11  omitted). That knowledge, coupled with that behavior, was not enough to save the complaint.

12  Pinkert's less specific and less defined allegations certainly deserve the same fate.

13          Pinkert makes no attempt to distinguish the other cases cited by CS&Co. *See* CS&Co. Br.

14  at 18-19 (citing *Hurtado Lucero*, 2020 WL 553941, and *McFall v. Stacy & Witbeck, Inc.*, 2016 WL

15  6248882 (N.D. Cal. Oct. 26, 2016)). Pinkert completely ignores *McFall* and argues only that

16  *Hurtado Lucero* and *Casey* stand for the proposition that a defendant must have "knowledge that

17  the trust fiduciaries were investing in inferior, more expensive investment options that benefited"

18  CS&Co. CS&Co. Opp. at 12 (citation and internal quotation mark omitted). But none of those

19  cases stands for that proposition. Indeed, only one of those cases involved allegations that a

20  fiduciary overpaid for a security, but in that case, this Court held precisely the *opposite* of what

21  Pinkert cites it for: it dismissed the complaint, holding that knowledge of such overpayment *does*

22  *not* constitute "knowledge of the object to be attained." *Hurtado Lucero*, 2020 WL 553941, at *6

23  (quoting *Casey*, 127 Cal. App. 4th at 1152).

24          Finally, Pinkert fails to establish that simply purchasing the more expensive of two products

25  is a breach of fiduciary duty. *See* CS&Co. Br. at 17-18; CS&Co. Opp. at 10-13. In its opening

26  brief, CS&Co. cited five cases—including controlling precedent from the Ninth Circuit and two

27  decisions from this Court—holding that purchasing retail-class products over comparable

28  institutional-class products is not a breach of fiduciary duty. CS&Co. Br. at 17-18 (collecting

cases).  Pinkert addresses only one of these cases, in his opposition to the Charitable Defendants'
motion.  *See* Charitable Defendants' Opp. at 21 (citing *Davis v. Salesforce.com, Inc.*, 2020 WL
5893405 (N.D. Cal. Oct. 5, 2020)).  Although he seeks to distinguish *Davis* on the ground that the
higher fees paid in that case were used to pay for administrative services, *Davis*'s holding did not
turn on that arrangement; rather, the court specifically rejected the plaintiff's "bright-line approach
to prudence"—identical to Pinkert's proposal—that choosing retail-class funds over institutional
products was a *per se* breach of fiduciary duty.  *Id*. at *5.  The cases upon which Pinkert relies to
argue for this same bright-line rule all arise under the specific and reticulated duties imposed under
ERISA to plan beneficiaries.  But here, ERISA's unique requirements are inapplicable and Pinkert
is not a beneficiary of the Fund to whom the Fund or CS&Co. owes *any* fiduciary duty at all.  *See*
*Atascadero*, 68 Cal. App. 4th at 467; *O'Hara v. Grand Lodge of the Indep. Ord. of Good Templars*,
213 Cal. 131, 139-40 (1931); *see also* Charitable Defendants' Reply at 7-12.

       **2.**       **Pinkert Fails To Allege CS&Co. Substantially Assisted In Any Breach.**

Pinkert similarly fails to allege that CS&Co. substantially assisted the Fund's alleged breach.  As
CS&Co. argued in its opening brief, Pinkert's allegations, taken as true, would demonstrate only
that CS&Co. created the Fund and performs certain administrative and investment services for the
Fund at its direction.  None of these actions goes beyond ordinary, arm's-length business practice.
*See AngioScore, Inc. v. TriReme Med*., LLC, 70 F. Supp. 3d 951, 960 (N.D. Cal. 2014) (citing
*Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001)).  And none of these actions demonstrates
tortious intent or even knowledge of tortious conduct.  *See Hurtado Lucero*, 2020 WL 553941, at
*4 (quoting Casey, 127 Cal. App. 4th at 1146); *accord Navarrete v. Meyer*, 237 Cal. App. 4th 1276,
1287 n.3 (2015), *as modified* (July 22, 2015) (aiding and abetting "necessarily requires a defendant
to reach a conscious decision to participate in tortious activity for the purpose of assisting another
in performing a wrongful act" (quoting *Howard v. Superior Court*, 2 Cal. App. 4th 745, 749
(1992)).

       Pinkert's opposition ignores this settled legal requirement, claiming instead without support
that substantial assistance need not "be unlawful or improper."  CS&Co. Opp. at 14.  But the cases
he cites—all of which CS&Co. cited in its opening brief, *compare* CS&Co. Br. at 19-21 *with*

1  CS&Co. Opp. at 13-14—acknowledge that the substantial assistance must be "done *with knowledge*
2  *that the action will further a breach of fiduciary duty*." CS&Co. Opp. at 14 (quoting *AngioScore*,
3  70 F. Supp. 3d at 960) (emphasis added). Pinkert's argument would subject any third-party service
4  provider to liability when it simply performs lawful, contractually mandated services. That is not
5  the law.

6      Pinkert similarly fails to identify allegations sufficient to show any of CS&Co.'s actions
7  was "a substantial factor in causing the harm suffered." *Goonewardene v. ADP, LLC*, 5 Cal. App.
8  5th 154, 189 (2016); *see also id*. (dismissing aiding-and-abetting claim that did not "contain[]
9  specific allegations" regarding causation). The allegations that he does identify have to do with
10  CS&Co.'s creation of the Fund, CS&Co. Opp. at 13-14, which, if sufficient, would improperly
11  make CS&Co. continuously liable for aiding and abetting any and every alleged breach of duty by
12  the Fund and its directors for all time. While he also points to his general allegations that CS&Co.
13  administers aspects of the Fund and receives fees for those services, *id*. at 14, not a single one of
14  these actions is alleged to be outside the ordinary course of business, and not a single one is alleged
15  to have been taken with knowledge of tortious conduct or an intent to aid in it.

16      Pinkert attempts to elide this fact, arguing that the very creation of the Fund and the service
17  agreements between the Fund and CS&Co. were only "to exploit conflicts of interest." CS&Co.
18  Opp. at 14 (citation and internal quotation marks omitted). But he identifies no such conflict.
19  Judicially noticeable facts demonstrate that only *one* of the Fund's seven directors is employed by
20  or "affiliated with" CS&Co. *See* CS&Co. Br. at 6-7 & n.4 (citing, *inter alia*, *In re Eventbrite, Inc.*
21  *Sec. Litig*., 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020)). Pinkert makes no effort to address
22  this critical deficiency to allege an actual conflict of interest on the part of the Fund's directors,
23  which is both central to all his claims and demonstrably false.

### 3.    Pinkert's Claim For Aiding And Abetting Is Time-Barred.

25      Pinkert alleges CS&Co.'s malfeasance has spanned at least "seven consecutive calendar
26  years," FAC ¶ 87, and Pinkert's donations have flowed to the objected-to fund "[f]or at least the
27  past five years," *id*. ¶ 27. The statute of limitations, however, is, at most, four years. *Am. Master*
28  *Lease LLC v. Idanta Partners, Ltd*., 225 Cal. App. 4th 1451, 1478-79 (2014), *as modified* (May 27,

1  2014); *cf. WA Sw. 2, LLC v. First Am. Title Ins. Co*., 240 Cal. App. 4th 148, 156 (2015) (claim

2  accrued "when plaintiffs made what they now deem to be unsuitable investments"); *Young v. Gen.*

3  *Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 418-19 (S.D.N.Y. 2008) (disclosures in a prospectus

4  sufficed to commence statute of limitations), *aff'd*, 325 F. App'x 31 (2d Cir. 2009).

5        Pinkert ignores these principles and instead, for the first time, frames his principal claim as

6  a duty-to-monitor claim instead of as a breach-of-fiduciary-duty claim. CS&Co. Opp. at 15-16.  In

7  so doing, Pinkert again borrows liberally from inapplicable ERISA and trust law.  *See Atascadero*,

8  68 Cal. App. 4th at 467; *O'Hara*, 213 Cal. at 139-40.  Moreover, the cases Pinkert invokes

9  demonstrate that even under ERISA and trust principles, a failure-to-monitor claim is separate from

10  the failure to select prudent investments.  *See Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1076

11  (N.D. Cal. 2017) ("[A] fiduciary also 'has a continuing duty of some kind to monitor investments

12  and remove imprudent ones' that 'exists separate and apart from the trustee's duty to exercise

13  prudence in selecting investments at the outset.'" (quoting *Tibble v. Edison Int'l*, 575 U.S. 523,

14  529-30 (2015))).  But, in Pinkert's own words, the "gravamen" of his complaint is that the service

15  agreements entered into by the Fund with CS&Co. well outside the statute of limitations "were . . .

16  *entered into* to exploit conflicts of interest."  CS&Co. Opp. at 14 (emphasis added; citation and

17  internal quotation marks omitted).  In other words, Pinkert alleges that from its inception, the

18  Fund's decision to pay CS&Co. allegedly excessive fees for administrative and custodial services

19  and its selection of Fund investments *ab initio* were disloyal.  Pinkert's claims are not that these

20  decisions were appropriate at the outset and then later became improper.  According to Pinkert,

21  they were improper from the beginning.  It therefore follows that Pinkert's claims all accrued long

22  ago, and therefore they are all now time-barred.  *Cf. WA Sw. 2*, 240 Cal. App. 4th at 156 (claim

23  accrued "when plaintiffs made what they now deem to be unsuitable investments").

24        **C.        Pinkert Fails To State A UCL Claim Against CS&Co.**

25        Pinkert's UCL claim fails as well.  As Pinkert does not contest, the UCL cannot be invoked

26  to create a cause of action where the underlying cause of action would fail.  *See Glen K. Jackson*

27  *Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001).  Pinkert's aiding-and-abetting claim fails, *see*

28  *supra* Section II.B, and so, too, fails his UCL claim.

1    Furthermore, Pinkert does not respond to CS&Co.'s argument that the UCL authorizes only

2    "injunctive relief and restitution." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134,

3    1144 (2003); *compare* CS&Co. Br. at 24-25 *with* CS&Co. Opp. at 16.   The only remedy Pinkert

4    seeks—nonrestitutionary disgorgement, *see* FAC ¶ 132, Prayer for Relief G—"is not an available

5    remedy in an individual action under the UCL." *Korea Supply*, 29 Cal. 4th at 1152.

6    Pinkert also fails to allege he "suffered injury in fact and has lost money or property as a

7    result of the unfair competition," Cal. Bus. & Prof. Code § 17204, in other words, that he "part[ed]

8    with money," *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 575 (2020).   He claims he has

9    "suffer[ed] a diminution in his property interests in his Schwab DAF account assets." CS&Co.

10   Opp. at 16.   As described at length above and in CS&Co.'s opening brief, CS&Co. Br. at 22-24,

11   and the Charitable Defendants' Reply, however, Pinkert has no property interest in his DAF

12   account.   Nor does the FAC allege that his privileges to advise the disposition of the DAF carries

13   with it any economic value.   That is why he received the tax advantage of donating to a DAF.

14   Finally, left with nothing more, Pinkert again falls back on "charitable goals and expressive and

15   reputational interests," which, again, Pinkert does not allege has any economic value. CS&Co.

16   Opp. at 16; *see* Charitable Defendants' Reply at 3-5.

17   Finally, Pinkert's UCL claim is time-barred for the same reason his aiding-and-abetting

18   claim is.   *See Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1309 (S.D. Cal. 2014), *aff'd*, 816

19   F.3d 1170 (9th Cir. 2016).

20

21

22

23

24

25

26

27

28

1    **III.    CONCLUSION**

2          The FAC should be dismissed in its entirety with prejudice.

3    Dated:  April 23, 2021                    */s/ Joshua D. N. Hess*
                                               Joshua D. N. Hess
4                                              Brian Raphel
                                               DECHERT LLP
5                                              One Bush Street, Suite 1600
                                               San Francisco, CA 94111-3513
6                                              Telephone:  (415) 262-4500
                                               Facsimile:  (415) 262-4555
7                                              joshua.hess@dechert.com
                                               brian.raphel@dechert.com
8
                                               David A. Kotler
9                                              Samantha Rosa
                                               DECHERT LLP
10                                             1095 Avenue of the Americas
                                               New York, NY 10036
11                                             Telephone:  (212) 698-3500
                                               Facsimile:  (212) 698-3599
12                                             david.kotler@dechert.com
                                               samantha.rosa@dechert.com
13
                                               *Counsel for Defendant Charles Schwab & Co., Inc.*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2          The undersigned certifies that on April 23, 2021, the foregoing document was electronically

3   filed with the Clerk of the Court for the United States District Court, Northern District of California,

4   using the Court's Electronic Case Filing (ECF) system.  The ECF system routinely sends a "Notice

5   of Electronic Filing" to all attorneys of record who have consented to accept this notice as service

6   of this document by electronic means.  Any party not receiving the Court's electronic notification

7   will be sent a copy of the foregoing document.

8   Dated:  April 23, 2021                    DECHERT LLP

9

10                                            By:     /s/ *Joshua D. N. Hess*
                                                      Joshua D. N. Hess

11                                            *Counsel for Defendant Charles Schwab & Co., Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28