UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| PHILIP PINKERT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SCHWAB CHARITABLE FUND, et al.,<br><br>Defendants. | Case No. 20-cv-07657-LB<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 54, 55 |

## INTRODUCTION

Schwab Charitable Fund is a nonprofit 501(c)(3) public charity that sponsors a donor-advised fund. The fund allows donors to make tax-deductible charitable donations to the fund and advise how the funds are invested (in investment pools selected by the fund) and distributed to charities. The plaintiff is a donor to the fund. The defendants are Schwab Charitable (and its board of directors and investment-oversight committee) and Charles Schwab & Co. The plaintiff objects to Schwab Charitable's choice of investment pools (because there are cheaper options available) and its payment of excessive fees for custodial and brokerage services to Charles Schwab (because Schwab Charitable could have negotiated better rates).[1] He sued — individually and on behalf of a

---

[1] First Am. Compl. (FAC) – ECF No. 50 at 2 (¶¶ 1–2), 6–9 (¶¶ 16–23), 11 (¶ 30). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 20-cv-07657-LB

1  putative class of all fund accountholders — (1) the charitable defendants for breach of fiduciary
2  duty, (2) Charles Schwab for aiding and abetting the breach of fiduciary duty, and (3) all defendants
3  for violating California's Unfair Competition Law by their acts.[2] The defendants moved to dismiss
4  all claims primarily on the ground that — by contributing to the fund irrevocably in exchange for an
5  immediate tax deduction — the plaintiff relinquished control of his assets, thus did not suffer a
6  concrete injury from the conduct that he challenges, and lacks standing to sue under Article III of
7  the U.S. Constitution and California law.[3] The court dismisses the claims for lack of standing.

## STATEMENT

Schwab Charitable sponsors a donor-advised fund. The Internal Revenue Code defines a donor-advised fund as "a fund or account (i) which is separately identified by reference to contributions of a donor or donors, (ii) which is owned and controlled by a sponsoring organization [here, Schwab Charitable], and (iii) with respect to which a donor . . . has . . . advisory privileges with respect to the distribution or investment of amounts held in such fund or account by reason of the donor's status as a donor."[4] 26 U.S.C. § 4966(d)(2)(A). When a donor contributes to a donor-advised fund, the nonprofit sponsor of the fund (again, Schwab Charitable) takes legal title to the assets. Under the Internal Revenue Code, sponsors like Schwab Charitable maintain a donor's contributions in separately identified accounts, and donors can direct how the funds are invested (from specified investment options offered by the fund) and ultimately distributed to charitable organizations.[5] *Id.*

A donor to a donor-advised fund may claim a tax deduction for the charitable donation that he makes to the fund if he makes a "completed gift" and "relinquishe[s] dominion and control over the donated property." *Id.* § 170(a), (c), (f)(18); *Viralam v. Comm'r*, 136 T.C. 151, 162 (2011).[6] The fund, in other words, must have "exclusive legal control" over the donated assets. 26 U.S.C. §

---

[2] *Id.* at 37–41 (¶¶ 123–47).

[3] Mots. – ECF Nos. 54 at 15–21 & 55 at 14–22.

[4] FAC – ECF No. 50 at 3 (¶ 6) (citing 26 U.S.C. § 4966(d)(2)).

[5] *Id.* at 3 (¶ 5).

[6] *Id.* (¶ 4).

170(f)(18)(B). Schwab Charitable advises its donors in writing that (1) their donations to the fund are "irrevocable and unconditional," (2) the donations are "subject to the exclusive legal authority and control of [the fund] as to their use and distribution," (3) donors cannot make donations subject to any material restrictions or conditions (such as reserving a right to control or direct distributions or "any other condition that prevents Schwab Charitable from exercising exclusive legal control over the use of contributed assets to further its exempt purposes"), and (4) "Schwab Charitable retains final authority over the distribution of all grants and may decline or modify a grant recommendation that is inconsistent with these *Program Policies*, or for any other reason."[7] When a donor makes a contribution, Schwab Charitable provides the donor with a "contemporaneous written acknowledgment" that the fund has assumed "exclusive legal control over the assets contributed" so that the donor can claim a tax deduction for the charitable donation. 26 U.S.C. § 170(f)(18)(B).[8]

Schwab Charitable has a seven-person board of directors and an investment-oversight board (with at least three directors) that reviews and selects investment options.[9] There are fourteen investment options (including five index funds, a money-market fund, and several asset-allocation pools).[10] Consistent with tax regulations, donors can make non-binding recommendations about how funds can be invested in the fourteen investment options.[11] *Id.* § 4966(d)(2)(A). Schwab Charitable pays Charles Schwab & Co., which is legally independent from Schwab Charitable, fees for custodial and brokerage services that Charles Schwab provides for the donor-advised fund.[12]

The plaintiff alleges that there are cheaper alternatives available for the index funds and the

---

[7] Schwab Charitable Program Policies 4, 12, 22, https://www.schwabcharitable.org/public/file/P-5252372. Because the plaintiff cites the policies in the complaint, *see* FAC – ECF No. 50 at 17–20 (¶¶ 53–54, 60–61, 64), the court considers the policies under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[8] Mot. – ECF No. 55 at 12; FAC – ECF No. 50 at 3 (¶¶ 4–5), 12–13 (¶ 35).

[9] FAC – ECF No. 50 at 11–12 (¶¶ 31–32).

[10] *Id.* at 18 (¶¶ 56–57).

[11] *Id.* at 20 (¶ 62); Schwab Charitable Program Policies 16, *supra* n.7.

[12] FAC – ECF No. 50 at 4 (¶ 8), 12 (¶ 34).

ORDER – No. 20-cv-07657-LB         3

money-market fund.[13] (For example, Vanguard has a cheaper money-market fund.[14]) Also, investment funds have classes of shares that are more expensive for smaller investors with less bargaining power (akin to a retail price) and less expensive for institutional investors (a wholesale price). Schwab Charitable allegedly selected the retail shares of some funds when it could have qualified for the wholesale shares.[15] In a similar vein, Schwab Charitable could have used its market power to negotiate better rates for the custodial and brokerage services that Charles Schwab provides it.[16] The idea is that Schwab Charitable has benefited Charles Schwab to the detriment of the fund, leaving fewer dollars in donor accounts, including the plaintiff's account, that can be donated to charitable organizations.[17]

The plaintiff uses the funds in his account to "advance his own philanthropic goals, support organizations that are personally meaningful to him and his family, and to cultivate the family value of charitable giving. And because all donations are made under the Pinkert Family Trust name, each donation confers recognition from his community and peers."[18]

Schwab Charitable and Charles Schwab moved to dismiss the case.[19] The court held a hearing on June 17, 2021. All parties consented to magistrate jurisdiction.[20]

**STANDARD OF REVIEW**

A complaint must contain a short and plain statement of the ground for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1). The plaintiff has the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990). Standing pertains to the court's subject-matter

---

[13] *Id.* at 7 (¶ 18), 24 (¶ 75), 25–26 (¶¶ 81, 84–85).

[14] *Id.* at 25 (¶ 81).

[15] *Id.* at 27–29 (¶¶ 88–97).

[16] *Id.* at 6–8 (¶¶ 16, 18–20), 32 (¶ 104), 37 (¶ 126).

[17] *Id.* at 7 (¶ 16), 10–11 (¶ 29).

[18] *Id.* at 10 (¶ 28).

[19] Mots. – ECF No. 54 & 55.

[20] Consents – ECF Nos. 7, 22, 25.

ORDER – No. 20-cv-07657-LB            4

jurisdiction and thus is raised in a Rule 12(b)(1) motion. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010).

A defendant's Rule 12(b)(1) jurisdictional attack can be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). This is a facial attack. The court thus "accept[s] all allegations of fact in the complaint as true and construe[s] them in the light most favorable to the plaintiffs." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Dismissal of a complaint without leave to amend should be granted only if the jurisdictional defect cannot be cured by amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## ANALYSIS

The defendants moved to dismiss primarily on the ground that the plaintiff lacks standing under Article III standing and California law because he gave up legal control of his assets. Because he ceded control of his assets, the plaintiff does not have Article III standing. He also does not have statutory standing under California law.

**1. Article III Standing**

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly allege facts demonstrating' each element." *Id.* (cleaned up) (quoting *Warth v. Seldin*,

1   422 U.S. 490, 518 (1975)). "[S]tanding in federal court is a question of federal law, not state law."

2   *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013).

3   The defendants argue only that the plaintiff has not plausibly pleaded injury in fact.[21] "To

4   establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally

5   protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

6   hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be

7   'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*,

8   504 U.S. at 560 n.1). For an injury to be concrete, it "must be 'de facto'; that is, it must actually

9   exist. . . . [and be] 'real,' and not 'abstract.'" *Id.* (citing dictionaries). "'Concrete' is not . . .

10  necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to

11  recognize, . . . intangible injuries can nevertheless be concrete." *Id.* at 1549 (citations omitted).

12  The plaintiff lacks Article III standing because — as the statutory framework for donor-

13  exchanged funds provides — he gave up title to and control of his donation in exchange for an

14  immediate tax deduction. 26 U.S.C. § 170(f)(18)(B); *Viralam*, 136 T.C. at 162. The fund controls

15  the donation, not the plaintiff. The plaintiff nonetheless contends that he has standing because he

16  advises the fund on investments and directs donations, the excess administrative fees reduce the

17  value of his donation, and his reputation suffers by the reduced funds available for donations.

18  These contentions do not change the outcome.

19  First, the plaintiff contends that he has contractual and property interests that convey standing

20  because he directs the donations and recommends how the assets are invested.[22] But the cases he

21  cites — which hold that contracts can convey property interests despite disavowing that they are

22  "not property interests" — do not compel this conclusion. *Pac. Gas & Elec. Co. v. Hart High-*

23  *Voltage Apparatus Repair & Testing Co., Inc.*, 18 Cal. App. 5th 415, 420 (2017).

24  For example, in the *PG&E* case, the court considered a contract that named the Merced

25  Irrigation District the "sole owner" of a project cosponsored with PG&E. The court concluded that

---

[21] Mots. – ECF Nos. 54 at 15–21 & 55 at 14–22.

[22] Opp'n – ECF No. 57 at 15–18.

PG&E potentially could establish that it was a part owner of a transformer that was part of the project because the contract gave PG&E legal rights, including the right to all electricity generated by the project and the right to maintain the power plant if the District did not. *Id.* at 437. That concrete right to the power is not analogous to directing investments in pre-selected funds or donations, given the fund's exclusive legal control over the donations.

*California Chamber of Commerce v. State Air Resources Board* does not change the outcome either. 10 Cal. App. 5th 604 (2017). There, purchasers of carbon-trading credits from California's cap-and-trade program had a "valuable property interest" — "the privilege to pollute California's air" — that could be traded on a secondary market. *Id.* at 634. Similarly, the seats on the two stock exchanges at issue in *Habenicht v. Lissak*, while encumbered with restrictions, could be sold to others. 78 Cal. 351, 357 (1889). The interest here is not analogous.

No case supports the conclusion that the right to designate investments (in pre-selected funds) and donations in a donor-advised fund is a contractual or contingent property interest that gives a donor Article III standing to challenge the fund's choice of investment funds or administrative fees. The result might be different if the fund broke specific promises that it made about — for example — how it would liquidate a donation of stock that resulted in a smaller charitable donation and a larger tax bill to the donor. *Cf. Fairbairn v. Fid. Invs. Charitable Gift Fund*, No. 18-cv-04881-JSC, 2018 WL 6199684, at *5–6 (N.D. Cal. Nov. 28, 2018). But there are no allegations here that the fund broke its promises to the plaintiff about — or otherwise harmed — his advisory privileges.

Second, the plaintiff contends that the excessive fees reduce the money that is donated to his charity, thereby lessening the value of the assets. As a result, he must contribute more to his account to achieve his charitable goals. This, he says, is a diminution in the value of his donation that establishes standing.[23] Lost money can establish injury and standing. *Reed v. Fed. Nat'l Mortg. Ass'n*, No. EDCV 13-00940-VAP (SPx), 2015 WL 12911617, at *4 (C.D. Cal. Aug. 24, 2015). But again, the plaintiff ceded control of the donation (in return for an immediate tax

---

[23] *Id.* at 18–19 (citing *Reed v. Fed. Nat'l Mortg. Ass'n*, No. EDCV 13-00940-VAP (SPx), 2015 WL 12911617, at *4 (C.D. Cal. Aug. 24, 2015) and *Cimini v. Jaspan Schlesinger Hoffman LLP*, No. 05-CV-5952 (JFB) (AKT), 2007 WL 173893, at *4 (E.D.N.Y. Jan. 19, 2007)).

ORDER – No. 20-cv-07657-LB                    7

deduction). He has no property interest that establishes standing. A related point is that a plaintiff must assert injury to his own legal rights, not the legal rights of others. *Session v. Moralez-Santana*, 137 S. Ct. 1678, 1689 (2017). The plaintiff is not a beneficiary of the fund. *Cf. Cimini v. Jaspan Schlesinger Hoffman LLP*, No. 05-CV-5952 (JFB) (AKT), 2007 WL 173893, at *4 (E.D.N.Y. Jan. 19, 2007) (a party to a trust agreement has standing to challenge the trustees' dissipation of the trust's sole asset, an insurance policy).

Third, the plaintiff contends that the defendants injured his "reputational and expressive interests" in his account. He uses the account to advance his philanthropic goals, support charities that are meaningful to his family, and cultivate the family value of charitable giving. The excess fees reduce his ability to advance those interests.[24] He cites no analogous case to support this argument. Instead, he cites *Friends of the Earth* and *Spokeo*. The interests that establish standing in an environmental case (recreational, aesthetic, and economic) or a data-privacy case (harm to reputation) are not analogous. For one, standing is contextual, and the harm to a plaintiff-donor's advisory or reputational interest is not injury in fact commensurate with the industrial pollution reducing recreational opportunities in *Friends of the Earth* or the inaccurate information in a consumer report that was injury in *Spokeo*. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181–84 (2000); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017).

## 2. Standing Under California Law

The plaintiff also lacks standing under California law. By statute, California limits the persons who can sue for mismanagement of a charitable corporation's assets, and a donor like the plaintiff is not among them. Moreover, he does not have a special interest that conveys common-law standing.

---

[24] *Id.* at 19–22 (citing FAC – ECF No. 50).

1    A California public-benefits corporation like Schwab Charitable holds its assets in a charitable

2 trust, and its directors must manage the assets to further its charitable purpose.[25] The claims here —

3 for breach of a fiduciary duty for mismanagement of assets — are for breach of a charitable trust.[26]

4    California law establishes who can file a lawsuit for breach of a charitable trust. The state

5 Attorney General has "[t]he primary responsibility for supervising charitable trusts in California,

6 for ensuring compliance with trusts and articles of incorporation, and for protection of assets held

7 by charitable trusts and public benefit corporations. . . ." Cal. Gov't Code § 12598(a); *see also* Cal.

8 Corp. Code § 5250. In addition to the AG and persons granted relator status by the AG, the statute

9 confers standing to file an action to "enjoin, correct, obtain damages for or to otherwise remedy a

10 breach of a charitable trust" involving a public-benefit corporation only to (1) the corporation, (2)

11 a member of the corporation acting in the name of the corporation, (3) a director or officer of the

12 corporation, or (4) a "person with a reversionary, contractual, or property interest in the assets

13 subject to [the] charitable trust." Cal. Corp. Code § 5142(a); *Holt v. Coll. of Osteopathic*

14 *Physicians & Surgeons*, 61 Cal. 2d 750, 753 (1964).

15    As discussed in the last section, the plaintiff does not have a reversionary, contractual, or

16 property interest in the assets. Instead, Schwab Charitable has exclusive legal control. The only

17 person who can complain is someone with a "definite interest in the property."[27] *Holt*, 61 Cal. 2d

18 at 753. The plaintiff does not have an interest in the property and thus lacks statutory standing.

19    The plaintiff also contends that he has a "special interest" in the charitable trust that conveys

20 standing under California common law. To support this argument, he cites *Fairbairn* and *L.B.*

21 *Research and Education Foundation v. UCLA Foundation*.[28] *Fairbairn*, 2018 WL 6199684, at *5–

---

[25] FAC – ECF No. 50 at 5 (¶ 10).

[26] Opp'n – ECF No. 57 at 24.

[27] Reply – ECF No. 61 at 11–12.

[28] Opp'n – ECF No. 57 at 21–22; *see* Reply – ECF No. 61 at 12 (addressed issue on the merits but noted that "California Corporations Code § 5142(a) specifies who can sue for breach of a charitable trust, and there is no indication that the legislature left any space [in the California statute] for the common law to fill on this question.").

1  6; *L.B. Research & Educ. Found. v. UCLA Found.*, 130 Cal. App. 4th 171, 180–81 (2005). The
2  cases do not change the outcome.

3  First, again, only a person with a definite interest in the property (a trustee or someone with a
4  reversionary interest in the property) has standing. *Holt*, 61 Cal. 2d at 753. Donors who "parted with
5  their interest in" and "control over" their donated assets have no standing to complain. *O'Hara v.
6  Grand Lodge, Indep. Ord. of Good Templars of State of Cal.*, 213 Cal. 131, 139–40 (1931). As
7  Schwab Charitable contends, the common law restricted standing to protect charitable trusts from
8  costly litigation and allowed standing only for someone with a definite interest in the property.[29]

9  Second, *Fairbairn* and *L.B. Research* are distinguishable. As discussed in the last section, the
10  fund in *Fairbairn* broke specific promises that it made to the plaintiffs about how it would sell
11  stock that they donated. The plaintiffs sued to enforce those promises (through claims for
12  misrepresentation and breach of contract) and did not sue for general mismanagement of the
13  donor-advised fund. 2018 WL 6199684, at *5–7 ("Plaintiffs' claim is not a general claim that
14  Fidelity Charitable mismanages its [donor-advised] accounts."). By contrast, here there are no
15  broken promises, and the plaintiff is claiming a breach of fiduciary duty from the mismanagement
16  of the fund. *L.B. Research* involved a donor who gave a restricted gift and sued to enforce the
17  restriction. 130 Cal. App. 4th at 175–76. There is no restriction or conditional donation here.

18  　　　　　　　　　　　*　　*　　*

19  This analysis means that the plaintiff lacks standing under Article III and California law to sue
20  Schwab Charitable for breach of its fiduciary duty and, by extension, Charles Schwab for aiding and
21  abetting that breach. It disposes of the UCL claim too because it is predicated on the other claims.

---

[29] Reply – ECF No. 61 at 12 (citing Mot. – ECF No. 55 at 17–18).

ORDER – No. 20-cv-07657-LB          10

**CONCLUSION**

The court grants the motions to dismiss with leave to amend within 21 days. If the plaintiff does not file an amended complaint, the court will enter judgment in favor of the defendants to allow an appeal. Any amended complaint must attach a blackline comparison between the current complaint and the amended complaint. This disposes of ECF Nos. 54 and 55.

**IT IS SO ORDERED.**

Dated: June 17, 2021

_____
LAUREL BEELER
United States Magistrate Judge